**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

|  |  |
|---|---|
| STATE OF ILLINOIS; DISTRICT OF COLUMBIA; STATE OF CALIFORNIA; COMMONWEALTH OF VIRGINIA; STATE OF ARIZONA; STATE OF COLORADO; STATE OF CONNECTICUT; STATE OF DELAWARE; STATE OF HAWAI'I; STATE OF MAINE; STATE OF MARYLAND; COMMONWEALTH OF MASSACHUSETTS; STATE OF MICHIGAN; STATE OF MINNESOTA; STATE OF NEVADA; STATE OF NEW JERSEY; STATE OF NEW MEXICO; STATE OF NEW YORK; STATE OF OREGON; Governor of the COMMONWEALTH OF PENNSYLVANIA; STATE OF VERMONT; STATE OF WASHINGTON; STATE OF WISCONSIN; | No. 1:26-mc-19 |

*Movants*,

v.

UNITED STATES DEPARTMENT OF HOMELAND
SECURITY,

*Respondent*.

**DECLARATION OF KEVIN DUESTERHAUS**

I, Kevin Duesterhaus, declare under penalty of perjury pursuant to 28 U.S.C. § 1746, as follows:

1.   I am a resident of the State of Illinois. I am over the age of 18, competent to testify as to the facts herein, and I testify based on personal knowledge, records kept in the ordinary course of business at the Illinois Secretary of State's Office, and information I learned from the Illinois Secretary of State's Office personnel whose work I rely upon and who have assisted me in gathering this information from our institution.

2.   I am currently employed by the Illinois Secretary of State's Office as Director of Driver Services and have held the position since January 16, 2020. From August 2008 until January 16, 2020, I was manager of Driver Analysis, which included the CDL/Safe Ride, CDL Medical, Records, and Medical Review Sections.  From June 2004 to August 2008, I was a manager at an SOS driver's license facility in Springfield, Illinois.  My employment with the Secretary of State began on March 10, 2003, as a Safety Officer.

3.   In my current role at the Illinois Secretary of State's Office, I am responsible for the oversight of over 130 driver's license facilities located throughout Illinois that issue both commercial driver's licenses (CDLs) and non-commercial driver's licenses. I also oversee a central "back office" location in Springfield Illinois consisting of multiple divisions and units, including Central Services, Court Liaison, DUI, Fraud, Safety & Financial Responsibility, Traffic Violations, CDL/Safe Ride, Records, Medical Review, and Commercial Driver Training.  As the Director of Driver Services of the Illinois Secretary of State's Office, I am responsible for implementation of federal and state statutes and regulations, communication with external parties, including federal and state agencies, on all aspects of driver's license issuance, including CDLs, and frequently visit the Secretary of State driver's license facilities to ensure they are operating efficiently and effectively.  I communicate with the Federal Motor Carrier Safety Administration (FMCSA). I work closely with the Driver Service Department's Commercial Driving Training Section, which oversees all entities that provide driver training for a fee. This includes entities that appear on the federal Training Provider Registry as qualified to provide Entry Level Driver Training, which is required to be completed before a CDL can be issued.

DECLARATION OF KEVIN DUESTERHAUS

4. In Illinois, the Illinois Secretary of State's Office is the state driver licensing agency (SDLA) and has powers and duties relating to issuing and renewing both commercial drivers' licenses (CDLs) and personal driver's licenses (PDLs). *See, e.g.*, 625 ILCS 5/2-101, 625 ILCS 5/6-100.5, 625 ILCS 5/6-110, 625 ILCS 5/6-513. Among other things, the Illinois Secretary of State's Office is responsible for verifying each drivers' license applicant's legal eligibility and medical fitness, identifying and disciplining problem drivers, and protecting the privacy of drivers' personal information.

### Illinois's Management of Driver Licensing

5. The Illinois Secretary of State's Office is responsible for issuing and renewing CDLs and PDLs to residents of Illinois.

6. As part of Illinois' commitment to traffic safety, the Illinois Secretary of State's Office follows stringent procedures to ensure that drivers do not receive a license unless they can safely operate a vehicle and observe all traffic laws. In pursuit of that goal, and in accordance with state and federal laws and regulations, the Illinois Secretary of State's Office administers driving tests, assesses applicants' medical fitness, has checks in place to ensure that each applicant is not the holder of a driver's license from any other state, and for CDLs checks each applicant's driving history to ensure that the applicant does not have a license that is currently withdrawn (including a revoked, suspended, cancelled or disqualified license) in any other state. For CDLs, the Illinois Secretary of State's Office also verifies the applicant's immigration status.

7. To comply with our legal obligations and ensure that each driver is eligible for licensure it is necessary for the Illinois Secretary of State's Office to have a means of checking each driver's licensing history, not only in Illinois, but in other states where the applicant may have held a license.

8. For CDLs, this check is conducted through a database called the Commercial Driver's License Information System (CDLIS).

### The Commercial Driver's License Information System (CDLIS)

9. CDLIS is a database that contains limited data on individuals issued a CDL. The data is owned and maintained by the states. It operates as a clearinghouse where states can assist one

another in verifying the identity and history of individual CDL applicants. CDLIS is operated for the benefit of the states as a cooperative endeavor by the American Association of Motor Vehicle Administrators (AAMVA), a trade association for SDLAs, of which all states and some foreign jurisdictions are members.

10.     CDLIS does not contain a driver's full record. Rather, CDLIS contains a "Master Pointer Record" (MPR) for each CDL holder in the United States, which consists of each driver's: state of record, driver license number, name, date of birth, social security number (SSN), sex, the date and time the driver was added to CDLIS, the date and time the record was last updated, and indicators showing whether a change in the state of record is in progress, and whether the number in the SSN field is an SSN, a substitute SSN, or a pseudo SSN.

11.     If the Illinois Secretary of State's Office queries CDLIS and finds that an applicant has a Master Pointer Record, the Illinois Secretary of State's Office would then send the identified state of record for that driver a request for the driver's full history, called a "driver record" or "Driver History Record" (DHR) which the state of record would provide directly to the requesting state. Similarly, if another state queries CDLIS and finds a Master Pointer Record for a driver licensed in Illinois, the Illinois Secretary of State's Office would send that driver's record to the requesting state.

12.     To query CDLIS, a user must know either the driver's name and date of birth, the driver's license number, or the driver's SSN. Users cannot conduct indiscriminate batch searches, such as searching for all drivers born in 1987, or all drivers with the last name "Smith."

13.     As stated above, the data in CDLIS is owned and maintained by the states. the Illinois Secretary of State's Office has the power to add, delete, or change its own records maintained in CDLIS—and regularly does so, to ensure that our data remains accurate and up-to-date. Neither AAMVA nor the FMCSA, on the other hand, has any power to make additions, deletions, or changes to Illinois's CDLIS data.

14.     Before issuing a CDL, Illinois, like all states, is required to use CDLIS to determine whether an applicant for a CDL already holds one, whether his or her license has been disqualified, and whether the applicant is disqualified from operating a motor vehicle. The Illinois Secretary of State's Office usually queries CDLIS multiple times per day.

DECLARATION OF KEVIN DUESTERHAUS

15. The Illinois Secretary of State's Office has participated in and relied on CDLIS to operate its CDL program since 1990. Even if we were not legally required to use CDLIS, we would need CDLIS or some other system like it in order to serve our public safety mission: the Illinois Secretary of State's Office needs to know whether an applicant has a history of dangerous or unlawful driving in order to fulfill its public safety mission. If CDLIS were to shut down, particularly on short notice, it would be a major impediment to the operation of our CDL program.

16. The Illinois Secretary of State's Office participates in CDLIS pursuant to a contract with AAMVA.

17. In addition to CDLIS, AAMVA also operates other critical programs that the Illinois Secretary of State's Office is required to use or is available for Illinois' use. For example, AAMVA operates the Problem Driver Pointer System ("PDPS"). PDPS allows states to search the National Driver Registry ("NDR"), which contains information on problem drivers. By carrying out a PDPS search, the Illinois Secretary of State's Office obtains information that directs them to the jurisdiction that has a full record of a driver's history. Based on information from PDPS, the Illinois Secretary of State's Office can determine whether an applicant for a driver's license is eligible.

18. Like CDLIS, PDPS was created by statute and is a function of the National Highway Transportation Safety Administration ("NHTSA").

19. The Illinois Secretary of State's Office also uses two other AAMVA programs in the issuance of CDLs and PDLs. The Illinois Secretary of State's Office verifies the social security number of each CDL and commercial learner's permit (CLP) applicant, as well as every PDL applicant who has a social security number. This verification is done through the Social Security Online Verification Service (SSOLV), by which Illinois submits a verification request to the Social Security Administration (SSA) through AAMVA. The SSA response is returned to Illinois also through AAMVA. The Illinois Secretary of State's Office also utilizes the Commercial Skills Test Information Management System (CSTIMS), to obtain CDL skills test results administered in another states or by third-party examiners. Illinois third-party examiners also use CSTIMS to schedule CDL skills tests. The Illinois Secretary of State's Office also uses CSTIMS as a secondary method to verify that CDL applicants have completed the required entry-level driver training.

DECLARATION OF KEVIN DUESTERHAUS

20.    The Illinois Secretary of State's Office queries at least one AAMVA system every time an individual applies for a driver's license.

**FMCSA's Demand for CDLIS Data**

21.    On July 24, 2026, the Illinois Secretary of State's Office learned that FMCSA has demanded that AAMVA turn over to FMCSA the entire contents of CDLIS, including Illinois' records from an email sent by AAMVA President and CEO Ian Grossman to AAMVA's International Board of Directors.

22.    I am unaware of FMCSA or any other federal agency ever previously requesting or demanding that AAMVA turn over the contents of CDLIS or any other database.

23.    I understand that FMCSA has asserted that it needs this data so that it can verify CDL validity and conduct motor carrier safety assessments. As described above, the Illinois Secretary of State's Office already verifies the validity of CDLs and I understand that the Illinois State Police conducts motor carrier safety assessments, as is typical for state agencies, in accordance with federal and state statutes and regulations.

24.    I also understand that FMCSA has asserted that, once it obtains this data, it could lawfully share it with any other federal agency for use in carrying out that agency's functions.  I am not aware of any data-security protections that would ensure the security and confidentiality of this data once it is in the hands of either FMCSA or any other agency.

**Irreparable Harm of Disclosure to FMCSA**

25. FMCSA's demand seeks Illinois' proprietary and confidential records and data.

26. Once Illinois' data is in FMCSA's hands, Illinois would lose control and oversight of its confidential records.  To my knowledge, FMCSA has not made any commitments to AAMVA that it will maintain the confidentiality of this data; to the contrary, it has affirmatively stated that it is authorized to redisclose it to any other federal agency.  And even if FMCSA made promises to AAMVA regarding the security and/or privacy of this data, Illinois would not be in a position to enforce those promises, and these new records, which would be federal and not state records, could be used for purposes that violate our state law and regulations regarding the confidentiality of information.

DECLARATION OF KEVIN DUESTERHAUS

27. In particular, the Illinois Secretary of State's Office understands itself to be bound by Illinois laws requiring the safeguarding and disclosure of information highly restricted personal information and personally identifying information provided in connection with an application for a driver's license. This includes a prohibition on the release of or accessibility of, in any manner, highly restricted personal information and personally identifying information to immigration agents. Handing over Illinois's proprietary and confidential information to FMCSA is incompatible with those obligations.

28. Illinois' agreement with AAMVA includes provisions requiring AAMVA to follow Illinois' requirements in regard to data security and confidentiality, but those obligations would not run to FMCSA.

29. Moreover, if the data were turned over to FMCSA, Illinois would not be able to update the data or ensure that it is accurate, creating the risk that out-of-date or erroneous data attributed to Illinois could form the basis or justification for federal action.

30. Finally, residents of Illinois entrust the state with their personal data when they apply for a commercial driver's license.  That trust would be destroyed if the data is turned over to FMCSA without controls and without a clear statement of FMCSA's purpose in seeking it.

31. A readily foreseeable result of this breach of trust is that fewer people will seek CDLs from Illinois. This means Illinois will lose revenue, as each applicant for a CDL must pay a $60 fee.

32. There is also an acute risk that some individuals who are concerned about broadly disclosing their personal information to the federal government—such as individuals who are lawfully qualified to obtain a CDL but are part of mixed-status immigration families—may avoid the CDL process entirely and attempt to drive commercial motor vehicles without a license.  If that occurs in even a small number of cases, it would pose grave public-safety risks, as states would not be able to identify the drivers of those motor vehicles or ensure that they are properly qualified to drive commercial motor vehicles.

### Illinois would be harmed if AAMVA's programs were impaired

33.    I understand that FMCSA has threatened to terminate all of its funding to and contracts with AAMVA, including the funding that provides for the upkeep of CDLIS.

DECLARATION OF KEVIN DUESTERHAUS

34.     Illinois would be seriously harmed if FMCSA carried out those threats.

35.     As stated above, the Illinois Secretary of State's Office heavily relies on CDLIS, the PDPS, and other resources and services operated by AAMVA.

36.     In particular, without an effective, functioning, and up-to-date CDLIS, the Illinois Secretary of State's Office would not be able to issue new CDLs or renew existing ones in compliance with federal law and regulations. This would result in a shortage of CDL holders and would impact the movement of goods throughout Illinois and the United States.  Illinois has a very large agricultural sector which relies on CDL holders for everything from transporting materials to and from farms, transporting crops from fields to grain elevators, and transportation of hazardous farm chemicals and this sector.  Individuals residing in Illinois who need a CDL as part of their employment will likely lose their jobs, causing economic hardship for the CDL holder and their families. With loss of income there will be a decrease in taxes paid to Illinois and may result in an increase in unemployment claims. And even if those laws and regulations did not apply, Illinois would be harmed by losing access to an important public safety resource that keeps unsafe drivers off Illinois' roads.

**The Illinois Secretary of State's Office participated in CDLIS on the understanding that its records would be kept secure**

37.     I understand that Illinois' participation in the CDLIS system is a condition to receiving certain federal highway funds.

38.     It has never been Illinois' understanding that FMCSA or any other federal agency has lawful authority to obtain the contents of CDLIS, nor that granting FMCSA the right to obtain and redisclose Illinois' records was a condition of participation in CDLIS

39.     Illinois has relied on the security and confidentiality of CDLIS records in designing its own information systems, in establishing practices relating to the maintenance of such records, and in notifying applicants for CDLs about how their information would be used and shared. [Please add any detail about how your agency has relied on the confidentiality of the records.]

40.     If the Illinois Secretary of State's Office had been aware that those funds were conditioned on having to hand over driver data en masse as FMCSA is currently asking it to do, it would not have agreed to participate in CDLIS.

DECLARATION OF KEVIN DUESTERHAUS

I declare under penalty of perjury under the laws of the United States that, to the best of my knowledge, the foregoing is true and correct.

Executed on August 9, 2026, in Springfield, Illinois.

_____
Kevin Duesterhaus
Director of Driver Services
Illinois Secretary of State's Office

DECLARATION OF KEVIN DUESTERHAUS