**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

|  |  |
|---|---|
| STATE OF ILLINOIS; DISTRICT OF COLUMBIA; STATE OF CALIFORNIA; COMMONWEALTH OF VIRGINIA; STATE OF ARIZONA; STATE OF COLORADO; STATE OF CONNECTICUT; STATE OF DELAWARE; STATE OF HAWAI'I; STATE OF MAINE; STATE OF MARYLAND; COMMONWEALTH OF MASSACHUSETTS; STATE OF MICHIGAN; STATE OF MINNESOTA; STATE OF NEVADA; STATE OF NEW JERSEY; STATE OF NEW MEXICO; STATE OF NEW YORK; STATE OF OREGON; Governor of the COMMONWEALTH OF PENNSYLVANIA; STATE OF VERMONT; STATE OF WASHINGTON; STATE OF WISCONSIN; | No. 1:26-mc-19 |
| *Movants*, v. | |
| UNITED STATES DEPARTMENT OF HOMELAND SECURITY, | |
| *Respondent*. | |

**DECLARATION OF MARQUIS MILES**

I, Marquis Miles, declare under penalty of perjury pursuant to 28 U.S.C. § 1746, as follows:

1. I am a resident of the State of Virginia. I am over the age of 18, competent to testify as to the facts herein, and I testify based on personal knowledge, records kept in the ordinary course of business at the District of Columbia Department of Motor Vehicles (DMV), and information I learned from DMV personnel whose work I rely upon and who have assisted me in gathering this information from our institution.

2. I am currently employed by DMV as Driver Services Administrator and have been employed by DMV since November 18, 2013.

3. In my current role at DMV, I am responsible for overseeing programs and operations related to the issuance of identity and driving credentials, testing and evaluation, medical compliance, and driver record maintenance. As the Driver Services Administrator of DMV, I am responsible for providing management oversight, staff development, and training to ensure employees uphold identity verification standards, regulatory requirements, and policies essential to proper credential issuance and public safety. This includes overseeing the operation of customer service centers and programs related to commercial driver licenses, driver pointer verification, driver history maintenance, driver improvement, and medical compliance.

4. In the District of Columbia, DMV is the state driver licensing agency (SDLA) and has powers and duties relating to issuing and renewing both commercial drivers' licenses (CDLs) and non-commercial drivers' licenses. *See, e.g.*, D.C. Code §§ 59-902, 50-904. Among other things, DMV is responsible for verifying each drivers' license applicant's legal eligibility and medical fitness, identifying and disciplining problem drivers, and protecting the privacy of drivers' personal information.

### DC DMV's Management of Driver Licensing

5. DMV is responsible for issuing and renewing commercial driver's licenses (CDLs) and personal driver's licenses (PDLs) to residents of the District of Columbia.

6. As part of the District of Columbia's commitment to traffic safety, DMV follows stringent procedures to ensure that drivers do not receive a license unless they can safely operate a vehicle and observe all traffic laws. In pursuit of that goal, and in accordance with state and federal

1

laws and regulations, DMV administers driving tests, assesses applicants' medical fitness, checks to ensure that each applicant is not the holder of a driver's license from any other state, and checks each applicant's driving history to ensure that the applicant is not subject to a pending disciplinary action or had their license revoked. For CDLs, DMV also verifies the applicant's immigration status.

7.      To comply with our legal obligations and ensure that each driver has a clean record, it is necessary for DMV to have a means of checking each driver's history, not only in the District of Columbia, but also in other jurisdictions where the applicant may have held a license.

8.      For CDLs, this check is conducted through a database called the Commercial Driver's License Information System (CDLIS).

## The Commercial Driver's License Information System (CDLIS)

9.      CDLIS is a database that contains driver records owned and maintained by the states. It operates as a clearinghouse where states can assist one another in verifying the identity and history of individual CDL applicants. CDLIS is operated on behalf of the states as a cooperative endeavor by the American Association of Motor Vehicle Administrators (AAMVA), a trade association for SDLAs, of which all states and some foreign jurisdictions are members.

10.     CDLIS does not contain a driver's full record. Rather, CDLIS contains a "Master Pointer Record" (MPR) for each CDL holder in the United States, which consists of each driver's state of record, driver license number, name, date of birth, Social Security number (SSN), sex, the date and time the driver was added to CDLIS, the date and time the record was last updated, and indicators showing whether a change in the state of record is in progress, and whether the number in the SSN field is an SSN, a substitute SSN, or a pseudo SSN.

11.     If DMV queries CDLIS and finds that an applicant has a Master Pointer Record, DMV would then send the identified state of record for that driver a request for the driver's full history, called a "driver record" or "Driver History Record" (DHR), which the state of record would provide directly to the requesting state. Similarly, if another state queries CDLIS and finds a Master Pointer Record for a driver licensed in District of Columbia, DMV would send that driver's record to the requesting state.

DECLARATION OF MARQUIS MILES

12. To query CDLIS, a user must know either the driver's name and date of birth, the driver's license number, or the driver's SSN. Users cannot conduct indiscriminate batch searches, such as searching for all drivers born in 1987, or all drivers with the last name "Smith."

13. As stated above, the data in CDLIS is owned and maintained by the states. DMV has the power to add, delete, or change its own records maintained in CDLIS—and regularly does so, to ensure that our data remains accurate and up-to-date. To my knowledge, neither AAMVA nor the Federal Motor Carrier Safety Administration (FMCSA) has any power to make additions, deletions, or changes to the District of Columbia's CDLIS data.

14. Before issuing a CDL, the District of Columbia, like all states, is required to use CDLIS to determine whether an applicant for a CDL already holds one, whether his or her license has been disqualified, and whether the applicant is disqualified from operating a motor vehicle. 49 CFR 383.73(b)(3)(ii). When CDL issuance is proceeding normally, DMV usually queries CDLIS multiple times per day.

15. DMV has participated in and relied on CDLIS to operate its CDL program since April 1, 1992. Even if we were not legally required to use CDLIS, we would need CDLIS or some other system like it in order to serve our public safety mission: DMV needs to know whether an applicant has a history of dangerous or unlawful driving in order to fulfill its public safety mission. If CDLIS were to shut down, particularly on short notice, it would be a major impediment to the operation of our CDL program.

16. DMV participates in CDLIS pursuant to a contract with AAMVA.

17. In addition to CDLIS, AAMVA also operates other critical programs that the District of Columbia is required to use. For example, AAMVA operates the Problem Driver Pointer System ("PDPS"). PDPS allows states to search the National Driver Registry ("NDR"), which contains information on problem drivers. By carrying out a PDPS search, DMV obtains information that directs them to the jurisdiction that has a full record of a driver's history. Based on this information, DMV can determine whether an applicant for a driver's license is eligible.

18. Like CDLIS, PDPS was created by statute and is a function of the National Highway Transportation Safety Administration ("NHTSA").

3

DECLARATION OF MARQUIS MILES

19.    DMV also uses AAMVA's State-to-State (S2S) Verification Service on the State Pointer Exchange Services (SPEXS) platform. S2S is a means for a state to electronically check with all other participating states to determine if the applicant currently holds a driver license or identification card in another state and access non-commercial driver history records.

20.    DMV queries at least one AAMVA system every time an individual applies for a driver's license or identification card.

### FMCSA's Demand for CDLIS Data

21.    On July 27, 2026, DMV learned that FMCSA has demanded that AAMVA turn over to FMCSA the entire contents of CDLIS, including the District of Columbia's records. DMV learned of the demand from an AAMVA letter sent on July 27th.

22.    I am unaware of FMCSA or any other federal agency ever previously requesting or demanding that AAMVA turn over the contents of CDLIS or any other database.

23.    I understand that FMCSA has asserted that it needs this data so that it can verify CDL validity and conduct motor carrier safety assessments. As described above, DMV already carries out those functions, as is typical for state agencies, in accordance with federal and state statutes and regulations.

24.    I also understand that FMCSA has asserted that, once it obtains this data, it could lawfully share it with any other federal agency for use in carrying out that agency's functions. I am not aware that any data-security protections are in place that would ensure the security and confidentiality of this data once it is in the hands of either FMCSA or any other agency.

### Irreparable Harm of Disclosure to FMCSA

25. FMCSA's demand seeks the District of Columbia's proprietary and confidential records and data.

26. Once the District of Columbia's data is in FMCSA's hands, the District would lose control and oversight of its confidential records. To my knowledge, FMCSA has not made any commitments to AAMVA that it will maintain the confidentiality of this data; to the contrary, it has affirmatively stated that it is authorized to redisclose it to any other federal agency. And even if FMCSA made promises to AAMVA regarding the security and/or privacy of this data, the District of

4

DECLARATION OF MARQUIS MILES

Columbia would not be in a position to enforce those promises, and these new records, which could be federal and not state records, could be used for purposes that violate our state law and regulations regarding the confidentiality of information.

27. In particular, DMV understands itself to be bound by District laws requiring compliance with the Drivers Privacy Protection Act (DPPA). Handing over the District of Columbia's proprietary and confidential information to FMCSA is incompatible with those obligations.

28. Moreover, if the data were turned over to FMCSA, the District of Columbia would not be able to update the data or ensure that it is accurate, creating the risk that out-of-date or erroneous data attributed to the District of Columbia could form the basis or justification for federal action.

29. Finally, residents of the District of Columbia entrust the state with their personal data when they apply for a commercial driver's license. That trust would be destroyed if the data is turned over to FMCSA without controls and without a clear statement of FMCSA's purpose in seeking it.

30. A readily foreseeable result of this breach of trust is that fewer people will seek CDLs from the District of Columbia. This means that the District will lose revenue, as each applicant for a CDL must pay a $117 fee.

31. There is also an acute risk that some individuals who are concerned about broadly disclosing their personal information to the federal government—such as individuals who are lawfully qualified to obtain a CDL but are part of mixed-status immigration families—may avoid the CDL process entirely and attempt to drive commercial motor vehicles without a license. If that occurs in even a small number of cases, it would pose grave public-safety risks, as states and the District of Columbia would not be able to identify the drivers of those motor vehicles or ensure that they are properly qualified to drive commercial motor vehicles.

**The District of Columbia would be harmed if AAMVA's programs were impaired**

32.    I understand that FMCSA has threatened to terminate all of its funding to and contracts with AAMVA, including the funding that provides for the upkeep of CDLIS.

33.    The District of Columbia would be seriously harmed if FMCSA carried out those threats.

5

34.    As stated above, DMV heavily relies on CDLIS, the PDPS, and other resources and services operated by AAMVA

35.    In particular, without an effective, functioning, and up-to-date CDLIS, DMV would not be able to issue new CDLs or renew existing ones in compliance with federal law and regulations. This would result in termination of DMV's CDL program, adversely impacting the livelihoods of thousands of District residents who drive commercial vehicles for a living.  And even if those laws and regulations did not apply, the District of Columbia would be harmed by losing access to an important public safety resource that keeps unsafe drivers off of the roads of the nation's capital.

**DMV participated in CDLIS on the understanding that its records would be kept secure**

36.    I understand that the District of Columbia's participation in the CDLIS system is a condition to receiving certain federal highway funds.

37.    To my knowledge, it has never been the District of Columbia's understanding that FMCSA or any other federal agency has lawful authority to obtain the contents of CDLIS, nor that granting FMCSA the right to obtain and redisclose District of Columbia records was a condition of participation in CDLIS

38.    DMV has relied on the security and confidentiality of CDLIS records in designing its own information systems, in establishing practices relating to the maintenance of such records, and in notifying applicants for CDLs about how their information would be used and shared.

39.    If FMCSA is able to obtain and redisclose the District of Columbia's records whenever it wishes, the District will need to alter its practices.  Among other things, DMV will need to revise the assurances of confidentiality it provides to CDL applicants, which will require the expenditure of substantial resources.

40.    If DMV had been aware that those funds were conditioned on having to hand over driver data en masse as FMCSA is currently asking it to do, it would not have agreed to participate in CDLIS.

* * *

I declare under penalty of perjury under the laws of the United States that, to the best of my knowledge, the foregoing is true and correct.

6

DECLARATION OF MARQUIS MILES

Executed on August 10, 2026, in Washington, DC.

Marquis Miles
Driver Services Administrator
District of Columbia Department of Motor Vehicles

7

DECLARATION OF MARQUIS MILES