**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| STATE OF ILLINOIS; DISTRICT OF COLUMBIA; STATE OF CALIFORNIA; COMMONWEALTH OF VIRGINIA; STATE OF ARIZONA; STATE OF COLORADO; STATE OF CONNECTICUT; STATE OF DELAWARE; STATE OF HAWAI'I; STATE OF MAINE; STATE OF MARYLAND; COMMONWEALTH OF MASSACHUSETTS; STATE OF MICHIGAN; STATE OF MINNESOTA; STATE OF NEVADA; STATE OF NEW JERSEY; STATE OF NEW MEXICO; STATE OF NEW YORK; STATE OF OREGON; Governor of the COMMONWEALTH OF PENNSYLVANIA; STATE OF VERMONT; STATE OF WASHINGTON; STATE OF WISCONSIN; <br><br> *Movants*, <br> v. <br><br> UNITED STATES DEPARTMENT OF HOMELAND SECURITY, <br><br> *Respondent*. | No. 1:26-mc-19 |

**DECLARATION OF ELECTRA THEODORIDES-BUSTLE**

I, Electra Theodorides-Bustle, declare under penalty of perjury pursuant to 28 U.S.C. § 1746, as follows:

1. I am a resident of the State of Colorado. I am over the age of 18, competent to testify as to the facts herein, and I testify based on personal knowledge, records kept in the ordinary course of business at Colorado Department of Revenue, Division of Motor Vehicles, and information I learned from Colorado Department of Revenue, Division of Motor Vehicles personnel whose work I rely upon and who have assisted me in gathering this information from our institution.

2. I am currently employed by the Colorado Department of Revenue, Division of Motor Vehicles as Senior Director, since June 27, 2022. Prior to this role, I have been employed in the following relevant positions:

- Chief of Staff, CDPS Division of Homeland Security and Emergency Management (2016 – 2019): Led the development of the 2019-2023 Colorado Homeland Security Strategy.
- Executive Director, Florida Department of Highway Safety and Motor Vehicles (DHSMV): Led a department of 4,500 employees, including the Florida Highway Patrol and the Divisions of Driver Licensing and Motor Vehicles.
- Assistant Commissioner, Florida Department of Law Enforcement: Oversaw Florida's Criminal Justice Information Systems and the Capitol Police.
- Sarasota County Sheriff's Office: Held multiple leadership roles, including General Counsel, Captain, and Major.
- Deputy General Counsel, Florida Sheriffs Association: Provided legal counsel for the association.
- Assistant General Counsel, Florida Department of Highway Safety and Motor Vehicles: Managed legal affairs for the department.

3. In my current role at the Colorado Division of Motor Vehicles, I am responsible for overseeing the operations and strategic direction of the state's driver licensing, vehicle registration, and emissions programs. As the Senior Motor Vehicle Director of the Colorado Division of Motor Vehicles, I am responsible for directing the Division's core functions, enforcing state and federal motor vehicle laws, managing our driver license issuance processes, and overseeing the security and modernization of our digital motor vehicle infrastructure. This includes safeguarding the integrity of Colorado's driver licensing system and protecting the personal and sensitive data of our state's drivers from unauthorized access and misuse.

4. In Colorado, Colorado Department of Revenue, Division of Motor Vehicles is the state driver licensing agency (SDLA) and has powers and duties relating to issuing and renewing both

1

DECLARATION OF ELECTRA THEODORIDES-BUSTLE

commercial drivers' licenses (CDLs) and non-commercial drivers' licenses. (See, for example, 42-1-202.) Among other things, Colorado Department of Revenue, Division of Motor Vehicles is responsible for verifying each drivers' license applicant's legal eligibility and medical fitness, identifying and disciplining problem drivers, and protecting the privacy of drivers' personal information.

### Colorado's Management of Driver Licensing

5. Colorado Department of Revenue, Division of Motor Vehicles is responsible for issuing and renewing commercial driver's licenses (CDLs) and non-commercial driver's licenses (NCLs) to residents of Colorado.

6. As part of Colorado's commitment to traffic safety, Colorado Department of Revenue, Division of Motor Vehicles follows stringent procedures to ensure that drivers do not receive a license unless they can safely operate a vehicle and observe all traffic laws. In pursuit of that goal, and in accordance with state and federal laws and regulations, Colorado Department of Revenue, Division of Motor Vehicles administers driving tests, assesses applicants' medical fitness, checks to ensure that each applicant is not the holder of a driver's license from any other state, and checks each applicant's driving history to ensure that the applicant has not been subject to discipline or had their license revoked. For CDLs, Colorado Department of Revenue, Division of Motor Vehicles also verifies the applicant's immigration status.

7. To comply with our legal obligations and ensure that each driver has a clean record, it is necessary for Colorado Department of Revenue, Division of Motor Vehicles to have a means of checking each driver's history, not only in Colorado, but in other states where the applicant may have held a license.

8. For CDLs, this check is conducted through a database called the Commercial Driver's License Information System (CDLIS).

### The Commercial Driver's License Information System (CDLIS)

9. CDLIS is a database that contains driver records owned and maintained by the states. It operates as a clearinghouse where states can assist one another in verifying the identity and history of individual CDL applicants. CDLIS is operated on behalf of the states as a cooperative endeavor by the

DECLARATION OF ELECTRA THEODORIDES-BUSTLE

American Association of Motor Vehicle Administrators (AAMVA), a trade association for SDLAs, of which all states and some foreign jurisdictions are members.

10. CDLIS does not contain a driver's full record. Rather, CDLIS contains a "Master Pointer Record" (MPR) for each CDL holder in the United States, which consists of each driver's: state of record, driver license number, name, date of birth, social security number (SSN), sex, the date and time the driver was added to CDLIS, the date and time the record was last updated, and indicators showing whether a change in the state of record is in progress, and whether the number in the SSN field is an SSN, a substitute SSN, or a pseudo SSN.

11. If Colorado Department of Revenue, Division of Motor Vehicles queries CDLIS and finds that an applicant has a Master Pointer Record, Colorado Department of Revenue, Division of Motor Vehicles would then send the identified state of record for that driver a request for the driver's full history, called a "driver record" or "Driver History Record" (DHR) which the state of record would provide directly to the requesting state. Similarly, if another state queries CDLIS and finds a Master Pointer Record for a driver licensed in Colorado, Colorado Department of Revenue, Division of Motor Vehicles would send that driver's record to the requesting state.

12. To query CDLIS, a user must know either the driver's name and date of birth, the driver's license number, or the driver's SSN. Users cannot conduct indiscriminate batch searches, such as searching for all drivers born in 1987, or all drivers with the last name "Smith."

13. As stated above, the data in CDLIS is owned and maintained by the states. Colorado Department of Revenue, Division of Motor Vehicles has the power to add, delete, or change its own records maintained in CDLIS—and regularly does so, to ensure that our data remains accurate and up-to-date. Neither AAMVA nor the Federal Motor Carrier Safety Administration (FMCSA), on the other hand, has any power to make additions, deletions, or changes to Colorado's CDLIS data.

14. Before issuing a CDL, Colorado, like all states, is required to use CDLIS to determine whether an applicant for a CDL already holds one, whether his or her license has been disqualified, and whether the applicant is disqualified from operating a motor vehicle. 49 CFR 383.73(b)(ii). The Colorado Division of Motor Vehicles usually queries CDLIS continuously throughout the day.

3

DECLARATION OF ELECTRA THEODORIDES-BUSTLE

15. Colorado has participated in and relied on CDLIS to operate its CDL program since 1990. Even if we were not legally required to use CDLIS, we would need CDLIS or some other system like it in order to serve our public safety mission: Colorado Department of Revenue, Division of Motor Vehicles needs to know whether an applicant has a history of dangerous or unlawful driving in order to fulfill its public safety mission. If CDLIS were to shut down, particularly on short notice, it would be a major impediment to the operation of our CDL program.

16. The Colorado Division of Motor Vehicles also queries CDLIS before issuing a non-commercial (NCL) driver's license. Thus, our operation of our NCL program would also be impaired by the loss of CDLIS.

17. Colorado Department of Revenue, Division of Motor Vehicles participates in CDLIS pursuant to a contract with AAMVA. Attached as Exhibit A is a true and correct copy of Colorado's CDLIS contract with AAMVA.

18. In addition to CDLIS, AAMVA also operates other critical programs that Colorado is required to use.  For example, AAMVA operates the Problem Driver Pointer System ("PDPS"). PDPS allows states to search the National Driver Registry ("NDR"), which contains information on problem drivers. By carrying out a PDPS search, Colorado obtains information that directs them to the jurisdiction that has a full record of a driver's history.  Based on this information, Colorado can determine whether an applicant for a driver's license is eligible.

19. Like CDLIS, PDPS was created by statute and is a function of the National Highway Transportation Safety Administration ("NHTSA").

20. Additionally, the Colorado Division of Motor Vehicles utilizes other AAMVA resources including the State Pointer Exchange Services (SPEXS) / State-to-State (S2S), Verification of Lawful Status (VLS), Commercial Skills Test Information Management System (CSTIMS), National Motor Vehicle Title Information System (NMVTIS), Driver's License Data Verification (DLDV), Help America Vote Verification (HAVV), Social Security Online Verification (SSOLV), Selective Service Registration (SSR), Digital Image Access and Exchange (DIAE), and mobile Driver License Digital Trust Service (mDL DTS) to further verify applicant information, ensure regulatory compliance, and prevent fraud.

DECLARATION OF ELECTRA THEODORIDES-BUSTLE

21. Colorado queries at least one AAMVA system, and in most instances, several AAMVA maintained systems, every time an individual applies for a driver's license.

**FMCSA's Demand for CDLIS Data**

22. On July 24, 2026, at the AAMVA Board of Director's meeting, I learned that FMCSA has demanded that AAMVA turn over to FMCSA the entire contents of CDLIS, including Colorado's records.

23. I am unaware of FMCSA or any other federal agency ever previously requesting or demanding that AAMVA turn over the contents, in bulk, of CDLIS or any other database.

24. I understand that FMCSA has asserted that it needs this data so that it can verify CDL validity and conduct motor carrier safety assessments. As described above, Colorado Department of Revenue, Division of Motor Vehicles already carries out those functions, as is typical for state agencies, in accordance with federal and state statutes and regulations.

25. I also understand that FMCSA has asserted that, once it obtains this data, it could lawfully share it with any other federal agency for use in carrying out that agency's functions. I am not aware of any data-security or privacy protections that would ensure the security and confidentiality of this data once it is in the hands of either FMCSA or any other agency.

**Irreparable Harm of Disclosure to FMCSA**

26. FMCSA's demand seeks Colorado's proprietary and confidential records and data.

27. Once Colorado's data is in FMCSA's hands, Colorado would lose control and oversight of its confidential records. To my knowledge, FMCSA has not made any commitments to AAMVA that it will maintain the confidentiality of this data; to the contrary, it has affirmatively stated that it is authorized to redisclose it to any other federal agency. And even if FMCSA made promises to AAMVA regarding the security and/or privacy of this data, Colorado is not in a position to enforce those promises, and these new records, which would be federal and not state records, could be used for purposes that violate our state law and regulations regarding the confidentiality of information.

28. In particular, the Colorado Division of Motor Vehicles understands itself to be bound by Colorado's laws requiring the protection of personal data in accordance with the Colorado Privacy Act and state-level protections governing motor vehicle records (including but not limited to C.R.S.

5

DECLARATION OF ELECTRA THEODORIDES-BUSTLE

§ 6-1-1301 et seq., § 42-1-206, § 42-2-121, § 24-72-204, and § 24-74-105), which strictly restrict the disclosure, sharing, and unauthorized dissemination of residents' personal and sensitive data without direct consent or a valid, specific state statutory exception. Handing over Colorado's proprietary and confidential information, in the manner demanded, to FMCSA is incompatible with those obligations.

29. Colorado's agreement with AAMVA includes provisions requiring AAMVA to follow Colorado's requirements regarding data security and confidentiality, but those obligations would not run to FMCSA.

30. Moreover, if the data were turned over to FMCSA in bulk, Colorado would not be able to update the data or ensure that it is accurate, creating the risk that out-of-date or erroneous data attributed to Colorado could form the basis or justification for federal action.

31. Finally, residents of Colorado entrust the state with their personal data when they apply for a commercial driver's license.  That trust would be destroyed if the data is turned over to FMCSA without state-level controls and without a clear statement of FMCSA's purpose in seeking it that complies with Colorado law

32. A readily foreseeable result of this breach of trust is that fewer people will seek CDLs from Colorado. This means Colorado will lose revenue, as each applicant for a CDL must pay a $35 fee.

33. There is also an acute risk that some individuals who are concerned about broadly disclosing their personal information to the federal government—such as individuals who are lawfully qualified to obtain a CDL but are part of mixed-status immigration families—may avoid the CDL process entirely and attempt to drive commercial motor vehicles without a license.  If that occurs in even a small number of cases, it would pose grave public-safety risks, as states would not be able to identify the drivers of those motor vehicles or ensure that they are properly qualified to drive commercial motor vehicles.

**Colorado would be harmed if AAMVA's programs were impaired**

34. I understand that FMCSA has threatened to terminate all of its funding to and contracts with AAMVA, including the funding that provides for the upkeep of CDLIS.

DECLARATION OF ELECTRA THEODORIDES-BUSTLE

35. Colorado would be seriously harmed if FMCSA carried out those threats.

36. As stated above, Colorado Department of Revenue, Division of Motor Vehicles heavily relies on CDLIS, the PDPS, and other resources and services operated by AAMVA. For example, we rely heavily on these integrated platforms to perform instantaneous identity verification, prevent fraudulent licensing schemes, and securely maintain our modern digital driver records.

37. Without an effective, functioning, and up-to-date CDLIS, Colorado would not be able to issue new CDLs or renew existing ones in compliance with federal law and regulations. This would result in significant disruptions to our state's commercial transportation sector, critical supply chain breakdowns, negative economic impacts on our agricultural and retail industries, and significant losses in state revenue. And even if those laws and regulations did not apply, Colorado would be harmed by losing access to an important public safety resource that keeps unsafe drivers off Colorado's roads.

**Colorado participated in CDLIS on the understanding that its records would be kept secure**

38. I understand that Colorado's participation in the CDLIS system is a condition to receiving certain federal highway funds.

39. It has never been Colorado's understanding that FMCSA nor any other federal agency has lawful authority to obtain the contents of CDLIS driver data en masse, or that granting FMCSA the right to obtain and redisclose Colorado's records in this manner was a condition of participation in CDLIS.

40. Colorado has relied on the security and confidentiality of CDLIS records in designing its own information systems, in establishing practices relating to the maintenance of such records, and in notifying applicants for CDLs about how their information would be used and shared. We have implemented comprehensive digital security upgrades and structured our online customer portals—such as those used for high-risk actions like address changes and driver record requests—on the fundamental premise that AAMVA's systems provide secure, strictly governed endpoints.

41. If FMCSA is able to obtain and redisclose Colorado's records whenever it wishes, Colorado will need to alter its practices.  Among other things, Colorado will need to revise the assurances of confidentiality it provides to CDL applicants, which will require the expenditure of

DECLARATION OF ELECTRA THEODORIDES-BUSTLE

substantial state resources.  Furthermore, Colorado would be forced to conduct a costly and extensive overhaul of our digital security platforms and compliance auditing procedures to attempt to mitigate the sudden vulnerability introduced by redisclosure.

42. Had the Colorado Division of Motor Vehicles been fully aware that these funds were contingent upon the mass surrender of sensitive driver data, as the FMCSA is currently demanding, we would have fundamentally reassessed our position. This condition creates an untenable conflict with our privacy obligations, effectively jeopardizing our ability to participate in the CDLIS program. .

I declare under penalty of perjury under the laws of the United States that, to the best of my knowledge, the foregoing is true and correct.

Executed on August 9, 2026, in Littleton, Colorado.

Electra Bustle, Senior Director
Division of Motor Vehicles
Colorado Department of Revenue

8
DECLARATION OF ELECTRA THEODORIDES-BUSTLE

# Exhibit A

# STATE OF COLORADO CONTRACT

## SIGNATURE AND COVER PAGE

| | |
|---|---|
| **State Agency**<br>Colorado Department of Revenue | **Contract Number**<br>TAA 2017/94779 |
| **Contractor**<br>American Association of Motor Vehicle Administrators (AAMVA) | **Contract Performance Beginning Date**<br>The later of the Effective Date or November 1, 2016 |
| **Contract Maximum Amount**<br>**Initial Term**<br>    State Fiscal Year 2017                                      $307,138.50 | **Initial Contract Expiration Date**<br>October 31, 2017 |
| **Extension Terms**<br>    State Fiscal Year 2018                                      $467,756.18<br>    State Fiscal Year 2019                                      $485,750.54<br>    State Fiscal Year 2020                                      $504,644.91<br>    State Fiscal Year 2021                                      $524,483.79<br>Total for All State Fiscal Years                            $2,289,773.92 | **Contract Description**<br>Provide nationwide access to various services required by the Department of Motor Vehicles. |

## THE PARTIES HERETO HAVE EXECUTED THIS CONTRACT

Each person signing this Contract represents and warrants that he or she is duly authorized to execute this Contract and to bind the Party authorizing his or her signature.

| CONTRACTOR | STATE OF COLORADO |
|---|---|
| American Association of Motor Vehicle Administrators<br><br>*Lynn H. Wasylina*<br>Lynn H. Wasylina, Chief Financial Officer<br>By: Name & Title of Person Signing for Contractor<br><br>Date: **10/4/16** | John W. Hickenlooper, Governor<br>Colorado Department of Revenue<br>Heidi Humphreys, Deputy Director<br><br>*Heidi Humphreys*<br>By: Name & Title of Person Signing for Agency or IHE<br><br>Date: **10.17.16** |
| 2nd State or Contractor Signature if Needed<br><br><br><br>By: Name & Title of Person Signing for Signatory<br><br>Date: _____ | **LEGAL REVIEW**<br>Cynthia H. Coffman, Attorney General<br><br>By:_____<br>Assistant Attorney General<br><br>Date: _____ |

In accordance with §24-30-202 C.R.S., this Contract is not valid until signed and dated below by the State Controller or an authorized delegate.

### STATE CONTROLLER
Robert Jaros, CPA, MBA, JD

By: _____<br>Colorado Department of Revenue

Effective Date: **10/18/16**

## TABLE OF CONTENTS

SIGNATURE AND COVER PAGE..................................................................................................1
1.    PARTIES..............................................................................................................................2
2.    TERM AND EFFECTIVE DATE.......................................................................................2
3.    AUTHORITY.......................................................................................................................4
4.    PURPOSE............................................................................................................................4
5.    DEFINITIONS.....................................................................................................................4
6.    STATEMENT OF WORK...................................................................................................6
7.    PAYMENTS TO CONTRACTOR......................................................................................6
8.    REPORTING - NOTIFICATION........................................................................................7
9.    CONTRACTOR RECORDS................................................................................................8
10.    CONFIDENTIAL INFORMATION-STATE RECORDS....................................................8
11.    CONFLICTS OF INTEREST............................................................................................10
12.    INSURANCE.....................................................................................................................10
13.    BREACH...........................................................................................................................12
14.    REMEDIES.......................................................................................................................12
15.    DISPUTE RESOLUTION.................................................................................................14
16.    NOTICES AND REPRESENTATIVES.............................................................................15
17.    RIGHTS IN WORK PRODUCT AND OTHER INFORMATION.....................................15
18.    GOVERNMENTAL IMMUNITY.....................................................................................16
19.    STATEWIDE CONTRACT MANAGEMENT SYSTEM..................................................16
20.    GENERAL PROVISIONS.................................................................................................17
21.    COLORADO SPECIAL PROVISIONS (COLORADO FISCAL RULE 3-1).......................20
EXHIBIT A - STATEMENT OF WORK.......................................................................................23
EXHIBIT B - PRICES AND RATES.............................................................................................26
EXHIBIT C – OPTION LETTER...................................................................................................27
EXHIBIT D – AAMVA PRODUCTS AND SERVICES CATALOG GOVERNMENT RATE
SCHEDULE..................................................................................................................................29

## 1.    PARTIES

This Contract is entered into by and between Contractor named on the Signature and Cover Page for this Contract (the "Contractor"), and the STATE OF COLORADO acting by and through the State agency named on the Signature and Cover Page for this Contract (the "State" or "DOR"). Contractor and the State agree to the terms and conditions in this Contract.

## 2.    TERM AND EFFECTIVE DATE

A.    Effective Date

This Contract shall not be valid or enforceable until the Effective Date. The State shall not be bound by any provision of this Contract before the Effective Date, and shall have no obligation to pay Contractor for any Work performed or expense incurred before the Effective Date or after the expiration or sooner termination of this Contract.

B.    Initial Term

The Parties' respective performances under this Contract shall commence on the Contract Performance Beginning Date shown on the Signature and Cover Page for this Contract and shall terminate on the Initial Contract Expiration Date shown on the Signature and Cover Page for this Contract (the "Initial Term") unless sooner terminated or further extended in accordance with the terms of this Contract.

C.   Extension Terms - State's Option

The State, at its discretion, shall have the option to extend the performance under this Contract beyond the Initial Term for a period, or for successive periods, of 1 year or less at the same rates and under the same terms specified in the Contract (each such period an "Extension Term"). In order to exercise this option, the State shall provide written notice to Contractor in a form substantially equivalent to Exhibit C. Except as stated in §2.D, the total duration of this Contract, including the exercise of any options to extend, shall not exceed 5 years from its Effective Date absent prior approval from the State Purchasing Director in accordance with the Colorado Procurement Code.

D.   End of Term Extension

If this Contract approaches the end of its Initial Term, or any Extension Term then in place, the State, at its discretion, upon written notice to Contractor as provided in §16, may unilaterally extend such Initial Term or Extension Term for a period not to exceed 2 months (an "End of Term Extension"), regardless of whether additional Extension Terms are available or not. The provisions of this Contract in effect when such notice is given shall remain in effect during the End of Term Extension. The End of Term Extension shall automatically terminate upon execution of a replacement contract or modification extending the total term of the Contract.

E.   Early Termination in the Public Interest

The State is entering into this Contract to serve the public interest of the State of Colorado as determined by its Governor, General Assembly, or Courts. If this Contract ceases to further the public interest of the State, the State, in its discretion, may terminate this Contract in whole or in part. This subsection shall not apply to a termination of this Contract by the State for breach by Contractor, which shall be governed by §14.A.i.

i.   Method and Content

The State shall notify Contractor of such termination in accordance with §16. The notice shall specify the effective date of the termination and whether it affects all or a portion of this Contract.

ii.   Obligations and Rights

Upon receipt of a termination notice for termination in the public interest, Contractor shall be subject to §14.A.i.a.

iii.   Payments

If the State terminates this Contract in the public interest, the State shall pay Contractor an amount equal to the percentage of the total reimbursement payable under this Contract that corresponds to the percentage of Work satisfactorily completed and accepted, as determined by the State, less payments previously made. Additionally, if this Contract is less than 60% completed, as determined by the State, the State may reimburse Contractor for a portion of actual out-of-pocket expenses, not otherwise reimbursed under this Contract, incurred by Contractor which are directly attributable to the uncompleted portion of Contractor's obligations, provided that the sum of any and all reimbursement shall not exceed the maximum amount payable to Contractor hereunder.

3. **AUTHORITY**

   Authority to enter into this Contract exists in 24-35-105 C.R.S.

4. **PURPOSE**

   Contractor shall provide nationwide access to various services required by the Department of Motor Vehicles.

5. **DEFINITIONS**

   The following terms shall be construed and interpreted as follows:

   A.  **"Business Day"** means any day in which the State is open and conducting business, but shall not include Saturday, Sunday or any day on which the State observes one of the holidays listed in §24-11-101(1) C.R.S.

   B.  **"CJI"** means criminal justice information collected by criminal justice agencies needed for the performance of their authorized functions, including, without limitation, all information defined as criminal justice information by the U.S. Department of Justice, Federal Bureau of Investigation, Criminal Justice Information Services Security Policy, as amended and all Criminal Justice Records as defined under 24-72-302 C.R.S.

   C.  **"Contract"** means this agreement, including all attached Exhibits, all documents incorporated by reference, all referenced statutes, rules and cited authorities, and any future modifications thereto.

   D.  **"Contract Funds"** means the funds that have been appropriated, designated, encumbered, or otherwise made available for payment by the State under this Contract.

   E.  **"CORA"** means the Colorado Open Records Act, §§24-72-200.1 *et. seq.*, C.R.S.

   F.  **"End of Term Extension"** means the time period defined in **§2.D**

   G.  **"Effective Date"** means the date on which this Contract is approved and signed by the Colorado State Controller or designee, as shown on the Signature and Cover Page for this Contract.

   H.  **"Exhibits"** means the following exhibits attached to this Contract:

       i.   **Exhibit A,** Statement of Work

       ii.  **Exhibit B,** Prices and Rates

       iii. **Exhibit C,** Sample Option Letter

       iv.  **Exhibit D,** AAMVA Government Rate Schedule

   I.  **"Extension Term"** means the time period defined in **§2.C**

   J.  **"Goods"** means any movable material acquired, produced, or delivered by Contractor as set forth in this Contract and shall include any movable material acquired, produced, or delivered by Contractor in connection with the Services.

   K.  **"Incident"** means any accidental or deliberate event that results in or constitutes an imminent threat of the unauthorized access or disclosure of State Confidential Information or of the unauthorized modification, disruption, or destruction of any State Records.

   L.  **"Initial Term"** means the time period defined in **§2.B**

M.    "**Party**" means the State or Contractor, and "Parties" means both the State and Contractor.

N.    "**PCI**" means payment card information including any data related to credit card holders' names, credit card numbers, or the other credit card information as may be protected by state or federal law.

O.    "**PII**" means personally identifiable information including, without limitation, any information maintained by the State about an individual that can be used to distinguish or trace an individual's identity, such as name, social security number, date and place of birth, mother's maiden name, or biometric records; and any other information that is linked or linkable to an individual, such as medical, educational, financial, and employment information. PII includes, but is not limited to, all information defined as personally identifiable information in §24-72-501 C.R.S.

P.    "**PHI**" means any protected health information, including, without limitation any information whether oral or recorded in any form or medium: (i) that relates to the past, present or future physical or mental condition of an individual; the provision of health care to an individual; or the past, present or future payment for the provision of health care to an individual; and (ii) that identifies the individual or with respect to which there is a reasonable basis to believe the information can be used to identify the individual. PHI includes, but is not limited to, any information defined as Individually Identifiable Health Information by the federal Health Insurance Portability and Accountability Act.

Q.    "**Services**" means the services to be performed by Contractor as set forth in this Contract, and shall include any services to be rendered by Contractor in connection with the Goods.

R.    "**State Confidential Information**" means any and all State Records not subject to disclosure under CORA. State Confidential Information shall include, but is not limited to, PII, PHI, PCI, Tax Information, CJI, and State personnel records not subject to disclosure under CORA.

S.    "**State Fiscal Rules**" means that fiscal rules promulgated by the Colorado State Controller pursuant to §24-30-202(13)(a).

T.    "**State Fiscal Year**" means a 12 month period beginning on July 1 of each calendar year and ending on June 30 of the following calendar year. If a single calendar year follows the term, then it means the State Fiscal Year ending in that calendar year.

U.    "**State Purchasing Director**" means the position described in the Colorado Procurement Code and its implementing regulations.

V.    "**State Records**" means any and all State data, information, and records, regardless of physical form, including, but not limited to, information subject to disclosure under CORA.

W.    "**Subcontractor**" means third-parties, if any, engaged by Contractor to aid in performance of the Work.

X.    "**Tax Information**" means federal and State of Colorado tax information including, without limitation, federal and State tax returns, return information, and such other tax-related information as may be protected by federal and State law and regulation. Tax Information includes, but is not limited to all information defined as federal tax information in Internal Revenue Service Publication 1075.

Y.    "**Work**" means the delivery of the Goods and performance of the Services described in this Contract.

Z.   "**Work Product**" means the tangible and intangible results of the Work, whether finished or unfinished, including drafts. Work Product includes, but is not limited to, documents, text, software (including source code), research, reports, proposals, specifications, plans, notes, studies, data, images, photographs, negatives, pictures, drawings, designs, models, surveys, maps, materials, ideas, concepts, know-how, and any other results of the Work. "Work Product" does not include any material that was developed prior to the Effective Date that is used, without modification, in the performance of the Work.

Any other term used in this Contract that is defined in an Exhibit shall be construed and interpreted as defined in that Exhibit.

## 6.   STATEMENT OF WORK

Contractor shall complete the Work as described in this Contract and in accordance with the provisions of Exhibit A. The State shall have no liability to compensate Contractor for the delivery of any goods or the performance of any services that are not specifically set forth in this Contract.

## 7.   PAYMENTS TO CONTRACTOR

A.   Maximum Amount

Payments to Contractor are limited to the unpaid, obligated balance of the Contract Funds. The State shall not pay Contractor any amount under this Contract that exceeds the Contract Maximum for that State Fiscal Year shown on the Signature and Cover Page for this Contract.

B.   Payment Procedures

i.   Invoices and Payment

a.   The State shall pay Contractor in the amounts and in accordance with the schedule and other conditions set forth in Exhibit A.

b.   Contractor shall initiate payment requests by invoice to the State, in a form and manner approved by the State.

c.   The State shall pay each invoice within 45 days following the State's receipt of that invoice, so long as the amount invoiced correctly represents Work completed by Contractor and previously accepted by the State during the term that the invoice covers. If the State determines that the amount of any invoice is not correct, then Contractor shall make all changes necessary to correct that invoice.

d.   The acceptance of an invoice shall not constitute acceptance of any Work performed or deliverables provided under the Contract.

ii.   Interest

Amounts not paid by the State within 45 days of the State's acceptance of the invoice shall bear interest on the unpaid balance beginning on the 45th day at the rate of 1% per month, as required by §24-30-202(24)(a), C.R.S., until paid in full; provided, however, that interest shall not accrue on unpaid amounts that the State disputes in writing. Contractor shall invoice the State separately for accrued interest on delinquent amounts, and the invoice shall reference the delinquent payment, the number of day's interest to be paid and the interest rate.

iii.   Payment Disputes

If Contractor disputes any calculation, determination or amount of any payment, Contractor shall notify the State in writing of its dispute within 30 days following the earlier to occur of Contractor's receipt of the payment or notification of the determination or calculation of the payment by the State. The State will review the information presented by Contractor and may make changes to its determination based on this review. The calculation, determination or payment amount that results from the State's review shall not be subject to additional dispute under this subsection. No payment subject to a dispute under this subsection shall be due until after the State has concluded its review, and the State shall not pay any interest on any amount during the period it is subject to dispute under this subsection.

iv.   Available Funds-Contingency-Termination

The State is prohibited by law from making commitments beyond the term of the current State Fiscal Year. Payment to Contractor beyond the current State Fiscal Year is contingent on the appropriation and continuing availability of Contract Funds in any subsequent year (as provided in the Colorado Special Provisions). If federal funds or funds from any other non-State funds constitute all or some of the Contract Funds the State's obligation to pay Contractor shall be contingent upon such non-State funding continuing to be made available for payment. Payments to be made pursuant to this Contract shall be made only from Contract Funds, and the State's liability for such payments shall be limited to the amount remaining of such Contract Funds. If State, federal or other funds are not appropriated, or otherwise become unavailable to fund this Contract, the State may, upon written notice, terminate this Contract, in whole or in part, without incurring further liability. The State shall, however, remain obligated to pay for Services and Goods that are delivered and accepted prior to the effective date of notice of termination, and this termination shall otherwise be treated as if this Contract were terminated in the public interest as described in §2.E.

v.   Erroneous Payments

The State may recover, at the State's discretion, payments made to Contractor in error for any reason, including, but not limited to, overpayments or improper payments, and unexpended or excess funds received by Contractor. The State may recover such payments by deduction from subsequent payments under this Contract, deduction from any payment due under any other contracts, grants or agreements between the State and Contractor, or by any other appropriate method for collecting debts owed to the State.

## 8.   REPORTING - NOTIFICATION

A.   Litigation Reporting

If Contractor is served with a pleading or other document in connection with an action before a court or other administrative decision making body, and such pleading or document relates to this Contract or may affect Contractor's ability to perform its obligations under this Contract, Contractor shall, within 10 days after being served, notify the State of such action and deliver copies of such pleading or document to the State's principal representative identified in §16.

B.   Performance Outside the State of Colorado or the United States, §24-102-206 C.R.S.

To the extent not previously disclosed in accordance with §24-102-206, C.R.S., Contractor shall provide written notice to the State, in accordance with **§16**, within 20 days following the earlier to occur of Contractor's decision to perform Services outside of the State of Colorado or the United States, or its execution of an agreement with a Subcontractor to perform Services outside the State of Colorado or the United States. Such notice shall specify the type of Services to be performed outside the State of Colorado or the United States and the reason why it is necessary or advantageous to perform such Services at such location or locations, and such notice shall be a public record. Knowing failure by Contractor to provide notice to the State under this **§8.B** shall constitute a breach of this Contract. This **§8.B** shall not apply if the Contract Funds include any federal funds.

## 9.   CONTRACTOR RECORDS

A.   Maintenance

Contractor shall maintain a file of all documents, records, communications, notes and other materials relating to the Work (the "Contractor Records"). Contractor Records shall include all documents, records, communications, notes and other materials maintained by Contractor that relate to any Work performed by Subcontractors, and Contractor shall maintain all records related to the Work performed by Subcontractors required to ensure proper performance of that Work. Contractor shall maintain Contractor Records until the last to occur of: **(i)** the date 3 years after the date this Contract expires or is terminated, **(ii)** final payment under this Contract is made, **(iii)** the resolution of any pending Contract matters, or **(iv)** if an audit is occurring, or Contractor has received notice that an audit is pending, the date such audit is completed and its findings have been resolved (the "Record Retention Period").

B.   Inspection

Contractor shall permit the State to audit, inspect, examine, excerpt, copy and transcribe Contractor Records during the Record Retention Period. Contractor shall make Contractor Records available during normal business hours at Contractor's office or place of business, or at other mutually agreed upon times or locations, upon no fewer than 2 Business Days' notice from the State, unless the State determines that a shorter period of notice, or no notice, is necessary to protect the interests of the State.

C.   Monitoring

The State, in its discretion, may monitor Contractor's performance of its obligations under this Contract using procedures as determined by the State. The State shall monitor Contractor's performance in a manner that does not unduly interfere with Contractor's performance of the Work.

D.   Final Audit Report

Contractor shall promptly submit to the State a copy of any final audit report of an audit performed on Contractor's records that relates to or affects this Contract or the Work, whether the audit is conducted by Contractor or a third party.

## 10.   CONFIDENTIAL INFORMATION-STATE RECORDS

A.   Confidentiality

Contractor shall hold and maintain, and cause all Subcontractors to hold and maintain, any and all State Records that the State provides or makes available to Contractor for the sole

and exclusive benefit of the State, unless those State Records are otherwise publically available at the time of disclosure. Contractor shall not, without prior written approval of the State, use for Contractor's own benefit, publish, copy, or otherwise disclose to any third party, or permit the use by any third party for its benefit or to the detriment of the State, any State Records, except as otherwise stated in this Contract. Contractor shall provide for the security of all State Confidential Information in accordance with all policies promulgated by the Colorado Office of Information Security and all applicable laws, rules, policies, publications, and guidelines including, without limitation: **(i)** the most recently promulgated IRS Publication 1075 for all Tax Information, **(ii)** the most recently updated PCI Data Security Standard from the PCI Security Standards Council for all PCI, **(iii)** the most recently issued version of the U.S. Department of Justice, Federal Bureau of Investigation, Criminal Justice Information Services Security Policy for all CJI, and **(iv)** the federal Health Insurance Portability and Accountability Act for all PHI and the HIPAA Business Associate Addendum attached to this Contract. Contractor shall immediately forward any request or demand for State Records to the State's principal representative.

B.    Other Entity Access and Nondisclosure Agreements

Contractor may provide State Records to its agents, employees, assigns and Subcontractors as necessary to perform the Work, but shall restrict access to State Confidential Information to those agents, employees, assigns and Subcontractors who require access to perform their obligations under this Contract. Contractor shall ensure all such agents, employees, assigns, and Subcontractors sign nondisclosure agreements at least as protective as this Contract, and that the nondisclosure agreements are in force at all times the agent, employee, assign or Subcontractor has access to any State Confidential Information. Contractor shall provide copies of those signed nondisclosure agreements to the State upon request.

C.    Use, Security, and Retention

Contractor shall use, hold and maintain State Confidential Information in compliance with any and all applicable laws and regulations in facilities located within the United States, and shall maintain a secure environment that ensures confidentiality of all State Confidential Information wherever located. Contractor shall provide the State with access, subject to Contractor's reasonable security requirements, for purposes of inspecting and monitoring access and use of State Confidential Information and evaluating security control effectiveness. Upon the expiration or termination of this Contract, Contractor shall return State Records provided to Contractor or destroy such State Records and certify to the State that it has done so, as directed by the State. If Contractor is prevented by law or regulation from returning or destroying State Confidential Information, Contractor warrants it will guarantee the confidentiality of, and cease to use, such State Confidential Information.

D.    Incident Notice and Remediation

If Contractor becomes aware of any Incident, it shall notify the State immediately and cooperate with the State regarding recovery, remediation, and the necessity to involve law enforcement, as determined by the State. Unless Contractor can establish that none of Contractor or any of its agents, employees, assigns or Subcontractors are the cause or source of the Incident, Contractor shall be responsible for the cost of notifying each person who may have been impacted by the Incident. After an Incident, Contractor shall take steps to reduce the risk of incurring a similar type of Incident in the future as directed by the

State, which may include, but is not limited to, developing and implementing a remediation plan that is approved by the State, at no additional cost to the State.

## 11.  CONFLICTS OF INTEREST

A.   Actual Conflicts of Interest

Contractor shall not engage in any business or activities, or maintain any relationships that conflict in any way with the full performance of the obligations of Contractor under this Contract. Such a conflict of interest would arise when a Contractor or Subcontractor's employee, officer or agent were to offer or provide any tangible personal benefit to an employee of the State, or any member of his or her immediate family or his or her partner, related to the award of, entry into or management or oversight of this Contract.

B.   Apparent Conflicts of Interest

Contractor acknowledges that, with respect to this Contract, even the appearance of a conflict of interest shall be harmful to the State's interests. Absent the State's prior written approval, Contractor shall refrain from any practices, activities or relationships that reasonably appear to be in conflict with the full performance of Contractor's obligations under this Contract.

C.   Disclosure to the State

If a conflict or the appearance of a conflict arises, or if Contractor is uncertain whether a conflict or the appearance of a conflict has arisen, Contractor shall submit to the State a disclosure statement setting forth the relevant details for the State's consideration. Failure to promptly submit a disclosure statement or to follow the State's direction in regard to the actual or apparent conflict constitutes a breach of this Contract.

## 12.  INSURANCE

Contractor shall obtain and maintain, and ensure that each Subcontractor shall obtain and maintain, insurance as specified in this section at all times during the term of this Contract. All insurance policies required by this Contract shall be issued by insurance companies with an AM Best rating of A-VIII or better.

A.   Workers' Compensation

Workers' compensation insurance as required by state statute, and employers' liability insurance covering all Contractor or Subcontractor employees acting within the course and scope of their employment.

B.   General Liability

Commercial general liability insurance written on an Insurance Services Office occurrence form, covering premises operations, fire damage, independent contractors, products and completed operations, blanket contractual liability, personal injury, and advertising liability with minimum limits as follows:

i.   $1,000,000 each occurrence;

ii.   $1,000,000 general aggregate;

iii.   $1,000,000 products and completed operations aggregate; and

iv.   $50,000 any 1 fire.

C.  Automobile Liability

Automobile liability insurance covering any auto (including owned, hired and non-owned autos) with a minimum limit of $1,000,000 each accident combined single limit.

D.  Protected Information

Liability insurance covering all loss of State Confidential Information, such as PII, PHI, PCI, Tax Information, and CJI, and claims based on alleged violations of privacy rights through improper use or disclosure of protected information with minimum limits as follows:

i.  $1,000,000 each occurrence; and

ii.  $2,000,000 general aggregate.

E.  Professional Liability Insurance

Professional liability insurance covering any damages caused by an error, omission or any negligent act with minimum limits as follows:

i.  $1,000,000 each occurrence; and

ii.  $1,000,000 general aggregate.

F.  Crime Insurance

Crime insurance including employee dishonesty coverage with minimum limits as follows:

i.  $1,000,000 each occurrence; and

ii.  $1,000,000 general aggregate.

G.  Additional Insured

The State shall be named as additional insured on all commercial general liability policies (leases and construction contracts require additional insured coverage for completed operations) required of Contractor and Subcontractors.

H.  Primacy of Coverage

Coverage required of Contractor and each Subcontractor shall be primary over any insurance or self-insurance program carried by Contractor or the State.

I.  Cancellation

The above insurance policies shall include provisions preventing cancellation or non-renewal, except for cancellation based on non-payment of premiums, without at least 30 days prior notice to Contractor and Contractor shall forward such notice to the State in accordance with §16 within 7 days of Contractor's receipt of such notice.

J.  Subrogation Waiver

All insurance policies secured or maintained by Contractor or its Subcontractors in relation to this Contract shall include clauses stating that each carrier shall waive all rights of recovery under subrogation or otherwise against Contractor or the State, its agencies, institutions, organizations, officers, agents, employees, and volunteers.

K.    Public Entities

If Contractor is a "public entity" within the meaning of the Colorado Governmental Immunity Act, §24-10-101, *et seq.*, C.R.S. (the "GIA"), Contractor shall maintain, in lieu of the liability insurance requirements stated above, at all times during the term of this Contract such liability insurance, by commercial policy or self-insurance, as is necessary to meet its liabilities under the GIA. If a Subcontractor is a public entity within the meaning of the GIA, Contractor shall ensure that the Subcontractor maintains at all times during the terms of this Contract, in lieu of the liability insurance requirements stated above, such liability insurance, by commercial policy or self-insurance, as is necessary to meet the Subcontractor's obligations under the GIA.

L.    Certificates

Contractor shall provide to the State certificates evidencing Contractor's insurance coverage required in this Contract within 7 Business Days following the Effective Date. Contractor shall provide to the State certificates evidencing Subcontractor insurance coverage required under this Contract within 7 Business Days following the Effective Date, except that, if Contractor's subcontract is not in effect as of the Effective Date, Contractor shall provide to the State certificates showing Subcontractor insurance coverage required under this Contract within 7 Business Days following Contractor's execution of the subcontract. No later than 15 days before the expiration date of Contractor's or any Subcontractor's coverage, Contractor shall deliver to the State certificates of insurance evidencing renewals of coverage. At any other time during the term of this Contract, upon request by the State, Contractor shall, within 7 Business Days following the request by the State, supply to the State evidence satisfactory to the State of compliance with the provisions of this §12.

## 13.  BREACH

A.    Defined

The failure of a Party to perform any of its obligations in accordance with this Contract, in whole or in part or in a timely or satisfactory manner, shall be a breach. The institution of proceedings under any bankruptcy, insolvency, reorganization or similar law, by or against Contractor, or the appointment of a receiver or similar officer for Contractor or any of its property, which is not vacated or fully stayed within 30 days after the institution of such proceeding, shall also constitute a breach.

B.    Notice and Cure Period

In the event of a breach, the aggrieved Party shall give written notice of breach to the other Party. If the notified Party does not cure the breach, at its sole expense, within 30 days after the delivery of written notice, the Party may exercise any of the remedies as described in §14 for that Party. Notwithstanding any provision of this Contract to the contrary, the State, in its discretion, need not provide notice or a cure period and may immediately terminate this Contract in whole or in part or institute any other remedy in the Contract in order to protect the public interest of the State.

## 14.  REMEDIES

A.    State's Remedies

If Contractor is in breach under any provision of this Contract and fails to cure such breach, the State, following the notice and cure period set forth in §13.B., shall have all of the remedies listed in this §14.A. in addition to all other remedies set forth in this Contract or at law. The State may exercise any or all of the remedies available to it, in its discretion, concurrently or consecutively.

i.  Termination for Breach

In the event of Contractor's uncured breach, the State may terminate this entire Contract or any part of this Contract. Contractor shall continue performance of this Contract to the extent not terminated, if any.

a.  Obligations and Rights

To the extent specified in any termination notice, Contractor shall not incur further obligations or render further performance past the effective date of such notice, and shall terminate outstanding orders and subcontracts with third parties. However, Contractor shall complete and deliver to the State all Work not cancelled by the termination notice, and may incur obligations as necessary to do so within this Contract's terms. At the request of the State, Contractor shall assign to the State all of Contractor's rights, title, and interest in and to such terminated orders or subcontracts. Upon termination, Contractor shall take timely, reasonable and necessary action to protect and preserve property in the possession of Contractor but in which the State has an interest. At the State's request, Contractor shall return materials owned by the State in Contractor's possession at the time of any termination. Contractor shall deliver all completed Work Product and all Work Product that was in the process of completion to the State at the State's request.

b.  Payments

Notwithstanding anything to the contrary, the State shall only pay Contractor for accepted Work received as of the date of termination. If, after termination by the State, the State agrees that Contractor was not in breach or that Contractor's action or inaction was excusable, such termination shall be treated as a termination in the public interest, and the rights and obligations of the Parties shall be as if this Contract had been terminated in the public interest under §2.E.

c.  Damages and Withholding

Notwithstanding any other remedial action by the State, Contractor shall remain liable to the State for any damages sustained by the State in connection with any breach by Contractor, and the State may withhold payment to Contractor for the purpose of mitigating the State's damages until such time as the exact amount of damages due to the State from Contractor is determined. The State may withhold any amount that may be due Contractor as the State deems necessary to protect the State against loss including, without limitation, loss as a result of outstanding liens and excess costs incurred by the State in procuring from third parties replacement Work as cover.

ii.  Remedies Not Involving Termination

The State, in its discretion, may exercise one or more of the following additional remedies:

a. Suspend Performance

Suspend Contractor's performance with respect to all or any portion of the Work pending corrective action as specified by the State without entitling Contractor to an adjustment in price or cost or an adjustment in the performance schedule. Contractor shall promptly cease performing Work and incurring costs in accordance with the State's directive, and the State shall not be liable for costs incurred by Contractor after the suspension of performance.

b. Withhold Payment

Withhold payment to Contractor until Contractor corrects its Work.

c. Deny Payment

Deny payment for Work not performed, or that due to Contractor's actions or inactions, cannot be performed or if they were performed are reasonably of no value to the state; provided, that any denial of payment shall be equal to the value of the obligations not performed.

d. Removal

Demand immediate removal of any of Contractor's employees, agents, or Subcontractors from the Work whom the State deems incompetent, careless, insubordinate, unsuitable, or otherwise unacceptable or whose continued relation to this Contract is deemed by the State to be contrary to the public interest or the State's best interest.

e. Intellectual Property

If any Work infringes a patent, copyright, trademark, trade secret or other intellectual property right, Contractor shall, as approved by the State, **(a)** secure that right to use such Work for the State or Contractor; **(b)** replace the Work with noninfringing Work or modify the Work so that it becomes noninfringing; or, **(c)** remove any infringing Work and refund the amount paid for such Work to the State.

B. Contractor's Remedies

If the State is in breach of any provision of this Contract and does not cure such breach, Contractor, following the notice and cure period in §13.B and the dispute resolution process in §15, shall have all remedies available at law and equity.

## 15. DISPUTE RESOLUTION

A. Initial Resolution

Except as herein specifically provided otherwise, disputes concerning the performance of this Contract which cannot be resolved by the designated Contract representatives shall be referred in writing to a senior departmental management staff member designated by the State and a senior manager designated by Contractor for resolution.

B. Resolution of Controversies

If the initial resolution described in §15.A fails to resolve the dispute within 10 Business Days, Contractor shall submit any alleged breach of this Contract by the State to the purchasing director of Colorado Department of Revenue for resolution in accordance with the

provisions of §§24-109-101, 24-109-106, 24-109-107, and 24-109-201 through 24-109-206 C.R.S., (the "Resolution Statutes"), except that if Contractor wishes to challenge any decision rendered by the purchasing director, Contractor's challenge shall be an appeal to the executive director of the Department of Personnel and Administration, or their delegate, under the Resolution Statutes before Contractor pursues any further action as permitted by such statutes. Except as otherwise stated in this Section, all requirements of the Resolution Statutes shall apply including, without limitation, time limitations.

## 16.  NOTICES AND REPRESENTATIVES

Each individual identified below shall be the principal representative of the designating Party. All notices required or permitted to be given under this Contract shall be in writing, and shall be delivered **(i)** by hand with receipt required, **(ii)** by certified or registered mail to such Party's principal representative at the address set forth below or **(iii)** as an email with read receipt requested to the principal representative at the email address, if any, set forth below. If a Party delivers a notice to another through email and the email is undeliverable, then, unless the Party has been provided with an alternate email contact, the Party delivering the notice shall deliver the notice by hand with receipt required or by certified or registered mail to such Party's principal representative at the address set forth below. Either Party may change its principal representative or principal representative contact information by notice submitted in accordance with this **§16** without a formal amendment to this Contract. Unless otherwise provided in this Contract, notices shall be effective upon delivery of the written notice.

| **For the State:** | **For Contractor:** |
|---|---|
| Maren Rubino, Deputy Director | Harold Gollos |
| Department of Revenue | AAMVA |
| Division of Motor Vehicles | 4401 Wilson Blvd. Suite 700 |
| P.O. Box 173350 | Arlington,, VA 22203 |
| Denver, Colorado 80217-3350 | (703) 908-8286 |
| maren.rubino@state.co.us | hgollos@AAMVA.org |

## 17.  RIGHTS IN WORK PRODUCT AND OTHER INFORMATION

A.  Work Product

Contractor assigns to the State and its successors and assigns, the entire right, title, and interest in and to all causes of action, either in law or in equity, for past, present, or future infringement of intellectual property rights related to the Work Product and all works based on, derived from, or incorporating the Work Product. Whether or not Contractor is under contract with the State at the time, Contractor shall execute applications, assignments, and other documents, and shall render all other reasonable assistance requested by the State, to enable the State to secure patents, copyrights, licenses and other intellectual property rights related to the Work Product. The Parties intend the Work Product to be works made for hire.

i.  Copyrights

To the extent that the Work Product (or any portion of the Work Product) would not be considered works made for hire under applicable law, Contractor hereby assigns to the State, the entire right, title, and interest in and to copyrights in all Work Product

and all works based upon, derived from, or incorporating the Work Product; all copyright applications, registrations, extensions, or renewals relating to all Work Product and all works based upon, derived from, or incorporating the Work Product; and all moral rights or similar rights with respect to the Work Product throughout the world. To the extent that Contractor cannot make any of the assignments required by this section, Contractor hereby grants to the State a perpetual, irrevocable, royalty-free license to use, modify, copy, publish, display, perform, transfer, distribute, sell, and create derivative works of the Work Product and all works based upon, derived from, or incorporating the Work Product by all means and methods and in any format now known or invented in the future. The State may assign and license its rights under this license.

ii.    Patents

In addition, Contractor grants to the State (and to recipients of Work Product distributed by or on behalf of the State) a perpetual, worldwide, no-charge, royalty-free, irrevocable patent license to make, have made, use, distribute, sell, offer for sale, import, transfer, and otherwise utilize, operate, modify and propagate the contents of the Work Product. Such license applies only to those patent claims licensable by Contractor that are necessarily infringed by the Work Product alone, or by the combination of the Work Product with anything else used by the State.

B.    Exclusive Property of the State

Except to the extent specifically provided elsewhere in this Contract, any pre-existing State Records, State software, research, reports, studies, photographs, negatives or other documents, drawings, models, materials, data and information shall be the exclusive property of the State (collectively, "State Materials"). Contractor shall not use, willingly allow, cause or permit Work Product or State Materials to be used for any purpose other than the performance of Contractor's obligations in this Contract without the prior written consent of the State. Upon termination of this Contract for any reason, Contractor shall provide all Work Product and State Materials to the State in a form and manner as directed by the State.

## 18.    GOVERNMENTAL IMMUNITY

Liability for claims for injuries to persons or property arising from the negligence of the State, its departments, boards, commissions committees, bureaus, offices, employees and officials shall be controlled and limited by the provisions of the GIA; the Federal Tort Claims Act, 28 U.S.C. Pt. VI, Ch. 171 and 28 U.S.C. 1346(b), and the State's risk management statutes, §§24-30-1501, *et seq.* C.R.S.

## 19.    STATEWIDE CONTRACT MANAGEMENT SYSTEM

If the maximum amount payable to Contractor under this Contract is $100,000 or greater, either on the Effective Date or at anytime thereafter, this **§19** shall apply. Contractor agrees to be governed by and comply with the provisions of §24-102-205, §24-102-206, §24-103-601, §24-103.5-101 and §24-105-102 C.R.S. regarding the monitoring of vendor performance and the reporting of contract performance information in the State's contract management system ("Contract Management System" or "CMS"). Contractor's performance shall be subject to evaluation and review in accordance with the terms and conditions of this Contract, Colorado statutes governing CMS, and State Fiscal Rules and State Controller policies.

## 20. GENERAL PROVISIONS

A. Assignment

Contractor's rights and obligations under this Contract are personal and may not be transferred or assigned without the prior, written consent of the State. Any attempt at assignment or transfer without such consent shall be void. Any assignment or transfer of Contractor's rights and obligations approved by the State shall be subject to the provisions of this Contract

B. Subcontracts

Contractor shall not enter into any subcontract in connection with its obligations under this Contract without the prior, written approval of the State. Contractor shall submit to the State a copy of each such subcontract upon request by the State. All subcontracts entered into by Contractor in connection with this Contract shall comply with all applicable federal and state laws and regulations, shall provide that they are governed by the laws of the State of Colorado, and shall be subject to all provisions of this Contract.

C. Binding Effect

Except as otherwise provided in §20.A., all provisions of this Contract, including the benefits and burdens, shall extend to and be binding upon the Parties' respective successors and assigns.

D. Authority

Each Party represents and warrants to the other that the execution and delivery of this Contract and the performance of such Party's obligations have been duly authorized.

E. Captions and References

The captions and headings in this Contract are for convenience of reference only, and shall not be used to interpret, define, or limit its provisions. All references in this Contract to sections (whether spelled out or using the § symbol), subsections, exhibits or other attachments, are references to sections, subsections, exhibits or other attachments contained herein or incorporated as a part hereof, unless otherwise noted.

F. Counterparts

This Contract may be executed in multiple, identical, original counterparts, each of which shall be deemed to be an original, but all of which, taken together, shall constitute one and the same agreement.

G. Entire Understanding

This Contract represents the complete integration of all understandings between the Parties related to the Work, and all prior representations and understandings related to the Work, oral or written, are merged into this Contract. Prior or contemporaneous additions, deletions, or other changes to this Contract shall not have any force or effect whatsoever, unless embodied herein.

H. Jurisdiction and Venue

All suits or actions related to this Contract shall be filed and proceedings held in the State of Colorado and exclusive venue shall be in the City and County of Denver.

I. Modification

Except as otherwise provided in this Contract, any modification to this Contract shall only be effective if agreed to in a formal amendment to this Contract, properly executed and approved in accordance with applicable Colorado State law and State Fiscal Rules. Modifications permitted under this Contract, other than contract amendments, shall conform to the policies promulgated by the Colorado State Controller.

J.    Statutes, Regulations, Fiscal Rules, and Other Authority.

Any reference in this Contract to a statute, regulation, State Fiscal Rule, fiscal policy or other authority shall be interpreted to refer to such authority then current, as may have been changed or amended since the Effective Date of this Contract.

K.    Order of Precedence

In the event of a conflict or inconsistency between this Contract and any Exhibits or attachments such conflict or inconsistency shall be resolved by reference to the documents in the following order of priority:

i.    Colorado Special Provisions in §21 of the main body of this Contract.

ii.    The provisions of the other sections of the main body of this Contract.

iii.    Exhibit A, Statement of Work.

iv.    Exhibit C, Sample Option Letter.

L.    Severability

The invalidity or unenforceability of any provision of this Contract shall not affect the validity or enforceability of any other provision of this Contract, which shall remain in full force and effect, provided that the Parties can continue to perform their obligations under this Contract in accordance with the intent of the Contract.

M.    Survival of Certain Contract Terms

Any provision of this Contract that imposes an obligation on a Party after termination or expiration of the Contract shall survive the termination or expiration of the Contract and shall be enforceable by the other Party.

N.    Taxes

The State is exempt from federal excise taxes under I.R.C. Chapter 32 (26 U.S.C., Subtitle D, Ch. 32) (Federal Excise Tax Exemption Certificate of Registry No. 84-730123K) and from Colorado state and local government sales and use taxes under §§39-26-704(1), *et seq.* C.R.S. (Colorado Sales Tax Exemption Identification Number 98-02565). The State shall not be liable for the payment of any excise, sales, or use taxes, regardless of whether any political subdivision of the state imposes such taxes on Contractor. Contractor shall be solely responsible for any exemptions from the collection of excise, sales or use taxes that Contractor may wish to have in place in connection with this Contract.

O.    Third Party Beneficiaries

Except for the Parties' respective successors and assigns described in **§20.B.,** this Contract does not and is not intended to confer any rights or remedies upon any person or entity other than the Parties. Enforcement of this Contract and all rights and obligations hereunder are reserved solely to the Parties. Any services or benefits which third parties receive as a

result of this Contract are incidental to the Contract, and do not create any rights for such third parties.

P.    Waiver

A Party's failure or delay in exercising any right, power, or privilege under this Contract, whether explicit or by lack of enforcement, shall not operate as a waiver, nor shall any single or partial exercise of any right, power, or privilege preclude any other or further exercise of such right, power, or privilege.

Q.    CORA Disclosure

To the extent not prohibited by federal law, this Contract and the performance measures and standards required under §24-103.5-101 C.R.S., if any, are subject to public release through the CORA.

R.    Standard and Manner of Performance

Contractor shall perform its obligations under this Contract in accordance with the highest standards of care, skill and diligence in Contractor's industry, trade, or profession.

S.    Licenses, Permits, and Other Authorizations.

Contractor shall secure, prior to the Effective Date, and maintain at all times during the term of this Contract, at its sole expense, all licenses, certifications, permits, and other authorizations required to perform its obligations under this Contract, and shall ensure that all employees, agents and Subcontractors secure and maintain at all times during the term of their employment, agency or subcontract, all license, certifications, permits and other authorizations required to perform their obligations in relation to this Contract.

T.    Indemnification

i.    General Indemnification

Contractor shall indemnify, save, and hold harmless the State, its employees, agents and assignees (the "Indemnified Parties"), against any and all costs, expenses, claims, damages, liabilities, court awards and other amounts (including attorneys' fees and related costs) incurred by any of the Indemnified Parties in relation to any act or omission by Contractor, or its employees, agents, Subcontractors, or assignees in connection with this Contract.

ii.    Confidential Information Indemnification

Disclosure or use of State Confidential Information by Contractor in violation of §10 may be cause for legal action by third parties against Contractor, the State, or their respective agents. Contractor shall indemnify, save, and hold harmless the Indemnified Parties, against any and all claims, damages, liabilities, losses, costs, expenses (including attorneys' fees and costs) incurred by the State in relation to any act or omission by Contractor, or its employees, agents, assigns, or Subcontractors in violation of §10.

iii.    Intellectual Property Indemnification

Contractor shall indemnify, save, and hold harmless the Indemnified Parties, against any and all costs, expenses, claims, damages, liabilities, and other amounts (including attorneys' fees and costs) incurred by the Indemnified Parties in relation to any claim

that any Work infringes a patent, copyright, trademark, trade secret, or any other intellectual property right.

## 21.  COLORADO SPECIAL PROVISIONS (COLORADO FISCAL RULE 3-1)

These Special Provisions apply to all contracts except where noted in italics.

### A.  CONTROLLER'S APPROVAL. §24-30-202(1), C.R.S.

This Contract shall not be valid until it has been approved by the Colorado State Controller or designee.

### B.  FUND AVAILABILITY. §24-30-202(5.5), C.R.S.

Financial obligations of the State payable after the current State Fiscal Year are contingent upon funds for that purpose being appropriated, budgeted, and otherwise made available.

### C.  GOVERNMENTAL IMMUNITY.

No term or condition of this Contract shall be construed or interpreted as a waiver, express or implied, of any of the immunities, rights, benefits, protections, or other provisions, of the Colorado Governmental Immunity Act, §24-10-101 *et seq.* C.R.S., or the Federal Tort Claims Act, 28 U.S.C. Pt. VI, Ch. 171 and 28 U.S.C. 1346(b).

### D.  INDEPENDENT CONTRACTOR

Contractor shall perform its duties hereunder as an independent contractor and not as an employee. Neither Contractor nor any agent or employee of Contractor shall be deemed to be an agent or employee of the State. Contractor and its employees and agents are not entitled to unemployment insurance or workers compensation benefits through the State and the State shall not pay for or otherwise provide such coverage for Contractor or any of its agents or employees. Unemployment insurance benefits will be available to Contractor and its employees and agents only if such coverage is made available by Contractor or a third party. Contractor shall pay when due all applicable employment taxes and income taxes and local head taxes incurred pursuant to this Contract. Contractor shall not have authorization, express or implied, to bind the State to any agreement, liability or understanding, except as expressly set forth herein. Contractor shall (i) provide and keep in force workers' compensation and unemployment compensation insurance in the amounts required by law, (ii) provide proof thereof when requested by the State, and (iii) be solely responsible for its acts and those of its employees and agents.

### E.  COMPLIANCE WITH LAW.

Contractor shall strictly comply with all applicable federal and State laws, rules, and regulations in effect or hereafter established, including, without limitation, laws applicable to discrimination and unfair employment practices.

### F.  CHOICE OF LAW.

Colorado law, and rules and regulations issued pursuant thereto, shall be applied in the interpretation, execution, and enforcement of this Contract. Any provision included or incorporated herein by reference which conflicts with said laws, rules, and regulations shall be null and void. Any provision incorporated herein by reference which purports to negate this or any other Special Provision in whole or in part shall not be valid or enforceable or

available in any action at law, whether by way of complaint, defense, or otherwise. Any provision rendered null and void by the operation of this provision shall not invalidate the remainder of this Contract, to the extent capable of execution.

G.  **BINDING ARBITRATION PROHIBITED.**

The State of Colorado does not agree to binding arbitration by any extra-judicial body or person. Any provision to the contrary in this Contract or incorporated herein by reference shall be null and void.

H.  **SOFTWARE PIRACY PROHIBITION. Governor's Executive Order D 002 00.**

State or other public funds payable under this Contract shall not be used for the acquisition, operation, or maintenance of computer software in violation of federal copyright laws or applicable licensing restrictions. Contractor hereby certifies and warrants that, during the term of this Contract and any extensions, Contractor has and shall maintain in place appropriate systems and controls to prevent such improper use of public funds. If the State determines that Contractor is in violation of this provision, the State may exercise any remedy available at law or in equity or under this Contract, including, without limitation, immediate termination of this Contract and any remedy consistent with federal copyright laws or applicable licensing restrictions.

I.  **EMPLOYEE FINANCIAL INTEREST/CONFLICT OF INTEREST. §§24-18-201 and 24-50-507, C.R.S.**

The signatories aver that to their knowledge, no employee of the State has any personal or beneficial interest whatsoever in the service or property described in this Contract. Contractor has no interest and shall not acquire any interest, direct or indirect, that would conflict in any manner or degree with the performance of Contractor's services and Contractor shall not employ any person having such known interests.

J.  **VENDOR OFFSET. §§24-30-202(1) and 24-30-202.4, C.R.S.**

[*Not applicable to intergovernmental agreements*] Subject to §24-30-202.4(3.5), C.R.S., the State Controller may withhold payment under the State's vendor offset intercept system for debts owed to State agencies for: **(i)** unpaid child support debts or child support arrearages; **(ii)** unpaid balances of tax, accrued interest, or other charges specified in §§39-21-101, *et seq.*, C.R.S.; **(iii)** unpaid loans due to the Student Loan Division of the Department of Higher Education; **(iv)** amounts required to be paid to the Unemployment Compensation Fund; and **(v)** other unpaid debts owing to the State as a result of final agency determination or judicial action.

K.  **PUBLIC CONTRACTS FOR SERVICES. §§8-17.5-101, et seq. C.R.S.**

[*Not applicable to agreements relating to the offer, issuance, or sale of securities, investment advisory services or fund management services, sponsored projects, intergovernmental agreements, or information technology services or products and services*] Contractor certifies, warrants, and agrees that it does not knowingly employ or contract with an illegal alien who will perform work under this Contract and will confirm the employment eligibility of all employees who are newly hired for employment in the United States to perform work under this Contract, through participation in the E-Verify Program established under Pub. L. 104-208 or the State verification program established pursuant to §8-17.5-102(5)(c), C.R.S., Contractor shall not knowingly employ or contract with an illegal alien to perform work under this Contract or enter into a contract with a

Subcontractor that fails to certify to Contractor that the Subcontractor shall not knowingly employ or contract with an illegal alien to perform work under this Contract. Contractor **(i)** shall not use E-Verify Program or State program procedures to undertake pre-employment screening of job applicants while this Contract is being performed, **(ii)** shall notify the Subcontractor and the contracting State agency within 3 days if Contractor has actual knowledge that a Subcontractor is employing or contracting with an illegal alien for work under this Contract, **(iii)** shall terminate the subcontract if a Subcontractor does not stop employing or contracting with the illegal alien within 3 days of receiving the notice, and **(iv)** shall comply with reasonable requests made in the course of an investigation, undertaken pursuant to §8-17.5-102(5), C.R.S., by the Colorado Department of Labor and Employment. If Contractor participates in the State program, Contractor shall deliver to the contracting State agency, Institution of Higher Education or political subdivision, a written, notarized affirmation, affirming that Contractor has examined the legal work status of such employee, and shall comply with all of the other requirements of the State program. If Contractor fails to comply with any requirement of this provision or §§8-17.5-101 *et seq.*, C.R.S., the contracting State agency, institution of higher education or political subdivision may terminate this Contract for breach and, if so terminated, Contractor shall be liable for damages.

L.  **PUBLIC CONTRACTS WITH NATURAL PERSONS. §§24-76.5-101,** *et seq.*, **C.R.S.**

Contractor, if a natural person 18 years of age or older, hereby swears and affirms under penalty of perjury that he or she **(i)** is a citizen or otherwise lawfully present in the United States pursuant to federal law, **(ii)** shall comply with the provisions of §§24-76.5-101 *et seq.*, C.R.S., and **(iii)** has produced one form of identification required by §24-76.5-103, C.R.S. prior to the Effective Date of this Contract.

## EXHIBIT A - STATEMENT OF WORK

### Background

Pursuant to section 202(c)(3) of the Real ID Act of 2005 requiring states to "verify, with the issuing agency, the issuance, the validity, and completeness of each document", Department of Motor Vehicle's (DMV) are designated by the Social Security Administration (SSA) to obtain Social Security Number (SSN) verification; and

Federal law requires the use by states of the Social Security Online Verification System (SSOLV) to verify driver's document information; and

The Contractor is the vendor authorized by the SSA to administer SSOLV. It is therefore necessary for the State to contract with the Contractor to allow the State access to SSOLV and for other services relating to SSOLV the State may require; and

Pursuant to the Commercial Motor Vehicle Safety Act of 1986, the Commercial Drivers License Information System ("CDLIS") was established to communicate commercial driver license information throughout the United States; and

Federal law requires the use by states of CDLIS to access commercial driver license information; and

The Contractor is the vendor authorized by the National Highway Traffic Safety Administration (NHTSA) to administer CDLIS. It is therefore necessary for the State to contract with the Contractor to allow the State access to CDLIS and for other services relating to CDLIS the State may require; and

Federal law requires the use by states of the Problem Driver Pointing System (PDPS) to access drivers license information; and

The Contractor is the vendor authorized by NHTSA to administer PDPS. It is therefore necessary for the State to contract with the Contractor to allow the State access to PDPS and for other services relating to PDPS the State may require; and

Pursuant to the Help Americans Vote Act (HAVA) of 2002 (Public Law 107-252), Section 303 (a)(1)(iv), the State must comply with the mandate to make access to Social Security identification information available to the State's voter registration authority (Colorado Department of State) for expediting the approval of voter registration applications. This is accomplished by providing the Colorado Department of State electronic access to such information through the Drivers License System (DLS); and

Federal law requires verification of voter information through the HAVA system in order to support the federal voting process; and

The Contractor is the vendor authorized by the SSA to administer HAVA. It is therefore necessary for the State to contract with the Contractor to allow the State access to HAVA and for other services relating to HAVA the State may require; and

Drivers convicted of serious moving violations are required by state financial responsibility (FR) laws and the Federal Responsibility Act of 2002 to file an SR 22 with their state DMV. An SR 22 is a certification of future responsibility and is filed by the driver's insurance company with the state as proof that the driver has insurance. Once an SR22 is no longer needed, an SR 26 cancels the SR22. The American Association of Motor Vehicle Administrators' (AAMVA) SR 22/26 application automates the filings from insurance companies, who instead of sending paper copies, can batch records to each evening for acceptance by specific jurisdictions the next day.

**Scope of Work**
The Contractor shall provide the State access to a nationwide telecommunications network connecting the State to various services which the State will use. Searches are accomplished seamlessly using the **Unified Network Interface (UNI)** product that fills an "interface" role between the State's application system and the telecommunications network provided by AAMVA. In this interface role between application and network, UNI provides both application interface functions as well as network interface functions allowing access to national databases as noted in Exhibit D, including but not limited to;

- **SSOLV** – Department of Motor Vehicle's (DMV) are designated by the Social Security Administration (SSA) to obtain Social Security Number (SSN) verification. SSOLV allows jurisdictions to verify a driver's SSN, name and date of birth (DOB) with the SSA. The SSA confirms that all three match and confirm that the person is alive.

- **CDLIS** – Mandated by the Commercial Motor Vehicle Safety Act of 1986, CDLIS supports the issuance of commercial driver licenses (CDLs) by each jurisdiction. The system provides detailed driver history including identification information, license information, and a history of convictions and withdrawals. It also confirms that past CDL records match current DL records, notifies technicians of restraints and transfers CDL records among jurisdictions.

- **PDPS** – In 1999, the Motor Carrier Safety Improvement Act (MCSIA) mandated participation in the National Driver Register (NDR). PDPS is a repository of problem drivers and is used to search the NDR. Results received from the search of NDR will "point" inquiring jurisdictions to the jurisdiction or State of Record (SOR) where the driver's record is stored. Based on information received from the SOR, the issuing jurisdiction is electronically directed to each jurisdiction that maintains a record. PDPS differs from CDLIS in that it can provide several SOR's. CDLIS has only one SOR because as driver's move, the most recent state becomes the SOR.

- **HAVA** – Mandated by the Federal Help Americans Vote Act of 2002 and House Bill 03-1356, required that states develop centralized, computerized voter databases and to verify voter registration. The statute also required the chief state election official and the DMV to enter into agreements to match voter registration with motor vehicle records. HAVA allows jurisdictions to submit queries to SSA to verify if voters are still alive and match that information to voter databases.

- **SR22/26** – Drivers convicted of serious moving violations are required by state financial responsibility (FR) laws to file an SR 22 with their state DMV. An SR 22 is a certification of future responsibility and is filed by the driver's insurance company with the state as proof that the driver has insurance. Once an SR22 is no longer needed, an SR 26 cancels the SR22. AAMVA's SR 22/26 application automates the filings from insurance companies, who instead of sending paper copies, can batch records to each evening for acceptance by specific jurisdictions the next day.

- **NMVTIS** - National Motor Vehicle Title Information System (See page 46 the AAMVA Catalog) The U.S. Department of Justice is responsible for oversight of the implementation and operation of NMVTIS, and works in partnership with the American Association of Motor Vehicle Administrators (AAMVA). AAMVA has been the operator since 1992.

NMVTIS was created to:
- Prevent the introduction or reintroduction of stolen motor vehicles into interstate commerce;
- Protect states and consumers (individual and commercial) from fraud;
- Reduce the use of stolen vehicles for illicit purposes including funding of criminal enterprises; and
- Provide consumers protection from unsafe vehicles.

- **USPVS** – The U.S. Passport Verification Service (See Page 44 of AAMVA Catalog. The USPVS provides the capability to verify a passport using the passport number and date of birth of the applicant. The USPVS connects with CBP-pass and allows the DMV to verify the validity of a U.S Passport presented to prove legal presence, identity, age and name.

The Contractor must be able to adapt to changes in technology, legislation, and business practices throughout the term of the Contract, including any extensions. Modifications to the Contract are subject to Section 20.I.

## EXHIBIT B - PRICES AND RATES

### 1. PRICE/COST

The State shall pay the Contractor for prescribed network access services, as stated in Exhibit A, including but not limited to:

| Item Description | Unit | Rate |
|---|---|---|
| | | |
| **SSOLV Transactions** | | |
| SSN Verification Fee | Per transaction | $.05 |
| | | |
| **CDLIS Reimbursement** | | |
| Verizon Dual 256k PIP connection | Per month | $3,141.94 |
| Verizon Dual 256k PIP CDLIS Reimbursement | Per month | ($3,141.94) |
| AAMVA Programs & Technology Fee | Per CDL Record, per month | $0.03 |
| CDLIS Fees | Per record, per month | $.0275 |
| | | |
| **USPVS** | | |
| USPVS Transaction Fee | Per transaction | $.09 |
| | | |
| **Help American Vote Verification (HAVA) System** | | |
| AAMVA Maintenance Fee | Fixed Quarterly | $1,100.00 |
| SSA HAVA Transaction Fee | Fixed, per year | $2,974.33 |
| | | |
| **NMVTIS** | | |
| NMVTIS FY16 State Fees | Per month | $4,418.50 |
| NMVTIS FY17 State Fees | Per month | $6,448.42 |
| | | |
| **Electronic SR22/26 Filing and Fees** | | |
| SR 22/26 Standards Development Service | Fixed, per year | $2420.00 |
| | | |
| **Unified Network Interface (UNI)** | | |
| AAMVA Technology Fee FY16 | Per record | $.02583 |
| AAMVA Technology Fee FY17 | Per record | $.01167 |
| UNI Maintenance Fee | Per month, per agency | $862.12 |
| UNI Windows Maintenance Fee | Per month, per agency | $862.12 |
| | | |
| **Information Exchange (IE) Services** | | |
| IE Message – Prime | Per message | $0.29 |
| IE Message – Non Prime | Per message | $0.145 |
| IE Interconnect Characters  - Prime | Per message | $0.068 |
| IE Interconnect Characters – Non Prime | Per message | $0.034 |

Pricing is derived from Exhibit D (Products and Services Catalog Government Rate Schedule, October 1st, 2016).  Pricing is subject to change upon 30 days written notice.

## EXHIBIT C – OPTION LETTER

| Date: | Original Contract CMS #: TAA 12/34445 | Option Letter # | CMS Routing # TAA 12/34445 |
|---|---|---|---|

1) **OPTIONS:** Choose all applicable options listed in §1 and in §2 and delete the rest.
   - **a.** Option to renew only *(for an additional term)*
   - **b.** Change in the amount of goods within current term
   - **c.** Change in amount of goods in conjunction with renewal for additional term
   - **d.** Level of service change within current term
   - **e.** Level of service change in conjunction with renewal for additional term

2) **REQUIRED PROVISIONS.** All Option Letters shall contain the appropriate provisions set forth below:
   - **a. For use with Options 1(a-e):** In accordance with Section(s) 5.C. of the Original Contract between the State of Colorado, Department of Revenue, Division of Motor Vehicles, and American Association of Motor Vehicle Administrators, the State hereby exercises its option for an additional term beginning Insert start date and ending on Insert ending date at a cost/price specified in Section 7.A., AND/OR an increase/decrease in the amount of goods/services at the same rate(s) as specified in Exhibit B.
   - **b. For use with all Options 1(a-f):** The amount of the current Fiscal Year contract value is increased/decreased by $ amount of change to a new contract value of Insert New $ Amt to as consideration for services/goods ordered under the contract for the current fiscal year indicate Fiscal Year. The first sentence in Section 7.A. is hereby modified accordingly. The total contract value including all previous amendments, option letters, etc. is Insert New $ Amt.

3) **Effective Date.** The effective date of this Option Letter is upon approval of the State Controller or designee.

**APPROVALS:**
**State of Colorado:**
John W. Hickenlooper, Governor


By: _____
Date: _____
For the Executive Director
Colorado Department of Revenue

## ALL CONTRACTS MUST BE APPROVED BY THE STATE CONTROLLER

CRS 24-30-202 requires that the State Controller approve all state contracts. This contract is not valid until the State Controller, or such assistant as he may delegate, has signed it. The contractor is not authorized to begin performance until the contract is signed and dated below. If performance begins prior to the date below, the State of Colorado may not be obligated to pay for goods and/or services provided.

**State Controller**
**David J. McDermott, CPA**

By: _____

Date: _____

Option Letter can now be used to renew for an additional term, change the amount of goods/services within the current term, or change in amount of goods/services in conjunction with renewal for additional term.

*THE REST OF THIS PAGE INTENTIONALLY LEFT BLANK*

**EXHIBIT D** – AAMVA PRODUCTS AND SERVICES CATALOG GOVERNMENT RATE SCHEDULE