**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| STATE OF ILLINOIS; DISTRICT OF COLUMBIA; STATE OF CALIFORNIA; COMMONWEALTH OF VIRGINIA; STATE OF ARIZONA; STATE OF COLORADO; STATE OF CONNECTICUT; STATE OF DELAWARE; STATE OF HAWAIʻI; STATE OF MAINE; STATE OF MARYLAND; COMMONWEALTH OF MASSACHUSETTS; STATE OF MICHIGAN; STATE OF MINNESOTA; STATE OF NEVADA; STATE OF NEW JERSEY; STATE OF NEW MEXICO; STATE OF NEW YORK; STATE OF OREGON; Governor of the COMMONWEALTH OF PENNSYLVANIA; STATE OF VERMONT; STATE OF WASHINGTON; STATE OF WISCONSIN; | No. 1:26-mc-19 |
| *Movants*, | |
| v. | |
| UNITED STATES DEPARTMENT OF HOMELAND SECURITY, | |
| *Respondent*. | |

**DECLARATION OF SHANTE A. HASTINGS**

I, Shanté A. Hastings, declare under penalty of perjury pursuant to 28 U.S.C. § 1746, as follows:

1.  I am a resident of the State of Delaware. I am over the age of 18, competent to testify as to the facts herein, and I testify based on personal knowledge, records kept in the ordinary course of business at the Delaware Department of Transportation ("DelDOT), and information I learned from DelDOT personnel whose work I rely upon and who have assisted me in gathering this information from our agency.

2.  I am currently employed by the Delaware Department of Transportation as Cabinet Secretary since January 2025. Before being confirmed as Cabinet Secretary for DelDOT, I served as Deputy Secretary and/or Chief Engineer for the five years prior. In total, I have over 26 years of experience with DelDOT.

3.  In my current role as Cabinet Secretary at the Delaware Department of Transportation, I am responsible for:

- Strategic Oversight: Setting the overall direction for DelDOT's policies, programs, and long-term transportation planning in alignment with the Governor's priorities.

- Policy Development: Advising the Governor on transportation policy, legislation, and long-term planning.

- Leadership and Management: Overseeing DelDOT's divisions and programs, including project development, finance, planning, and community relations. This includes supervising senior leadership and managing agency-wide priorities.

- Budget and Finance Management: Developing and managing DelDOT's multi-million-dollar capital and operating budgets, including alignment with state and federal funding sources.

- Public Engagement and Stakeholder Collaboration: Coordinating with local governments, regional planning organizations, and community stakeholders to ensure transportation initiatives align with statewide and regional goals.

1

DECLARATION OF SHANTÉ A. HASTINGS

- Emergency Response & Resilience: Leading the department's efforts in emergency preparedness and response, including infrastructure resilience and climate adaptation strategies.

- Data Privacy: Complying with state privacy law with respect to data that DelDOT receives from other entities or the citizens of the State.

4. In Delaware, the Division of Motor Vehicles ("DMV"), a division of the Department of Transportation, is the state driver licensing agency ("SDLA") and has powers and duties relating to issuing and renewing both commercial drivers' licenses ("CDLs") and non-commercial drivers' licenses. (See, for example, 21 *Del. C.* ch. 26 & 27.) Among other things, the DMV is responsible for verifying each drivers' license applicant's legal status eligibility, evaluating a driver's medical fitness to operate a motor vehicle pursuant to 21 *Del. C.* § 2718(c), identifying and taking appropriate action with problem drivers, and protecting the privacy of drivers' personal information.

**Delaware's Management of Driver Licensing**

5. DelDOT, through the DMV, is responsible for issuing and renewing CDLs and personal driver's licenses ("PDLs") to residents of Delaware.

6. As part of Delaware's commitment to traffic safety, when administering road exams, DelDOT, through the DMV, follows stringent procedures designed to assess whether applicants possess the ability to safely operate a motor vehicle and comply with applicable traffic laws. In pursuit of that goal, and in accordance with state and federal laws and regulations, DelDOT, through the DMV, administers road exams, evaluates a driver's medical fitness to operate a motor vehicle pursuant to 21 *Del. C.* § 2718(c), electronically verifies whether each applicant is the holder of a driver's license from any other state, checks each applicant's driving history to ensure that the applicant's driver license is not actively suspended, disqualified, or revoked, and verifies their legal presence status.

7. To comply with our legal obligations and ensure that each driver has valid driving authority, it is necessary for DelDOT to have a means of checking each driver's history, not only in Delaware, but in all states.

DECLARATION OF SHANTÉ A. HASTINGS

8.      For CDLs, this check is conducted through a database called the Commercial Driver's License Information System (CDLIS).

### The Commercial Driver's License Information System (CDLIS)

9.      CDLIS is a database that contains driver records owned and maintained by the states. It operates as a clearinghouse where states can assist one another in verifying the identity and history of individual CDL applicants. CDLIS is operated on behalf of the states as a cooperative endeavor by the American Association of Motor Vehicle Administrators ("AAMVA"), a trade association for SDLAs, of which all states and some foreign jurisdictions are members.

10.     CDLIS does not contain a driver's full record. Rather, CDLIS contains a "Master Pointer Record" ("MPR") for each CDL holder in the United States, which consists of each driver's: state of record, driver license number, name, date of birth, social security number ("SSN"), sex, the date and time the driver was added to CDLIS, the date and time the record was last updated, and indicators showing whether a change in the state of record is in progress, and whether the number in the SSN field is an SSN, a substitute SSN, or a pseudo SSN.

11.     If DelDOT, through the DMV, queries CDLIS and finds that an applicant has a Master Pointer Record, DelDOT would then send the identified state of record for that driver a request for the driver's full history, called a "driver record" or "Driver History Record" ("DHR") which the state of record would provide directly to the requesting state. Similarly, if another state queries CDLIS and finds a Master Pointer Record for a driver licensed in Delaware, DelDOT would send that driver's record to the requesting state.

12.     To query CDLIS, a user must know either the driver's name and date of birth, the driver's license number, or the driver's SSN. Users cannot conduct indiscriminate batch searches, such as searching for all drivers born in 1987, or all drivers with the last name "Smith."

13.     As stated above, the data in CDLIS is owned and maintained by the states. DelDOT, through the DMV, has the power to add, delete, or change its own records maintained in CDLIS—and regularly does so, to ensure that our data remains accurate and up-to-date. Neither AAMVA nor the Federal Motor Carrier Safety Administration ("FMCSA"), on the other hand, has any power to make additions, deletions, or changes to Delaware's CDLIS data.

DECLARATION OF SHANTÉ A. HASTINGS

14. Before issuing a CDL, Delaware, like all states, is required to use CDLIS to determine whether an applicant for a CDL already holds one, whether his or her license has been disqualified, and whether the applicant is disqualified from operating a motor vehicle. 49 CFR 383.73(b)(ii).

15. Delaware has participated in and relied on CDLIS to operate its CDL program since 1990. Even if we were not legally required to use CDLIS, we would need CDLIS or some other system like it in order to serve our public safety mission: DelDOT needs to know whether an applicant has a history of dangerous or unlawful driving in order to fulfill its public safety mission. If CDLIS were to shut down, particularly on short notice, it would be a major impediment to the operation of our CDL program.

16. DelDOT also queries CDLIS before issuing a PDL only if the individual is a previous CDL or Commercial Learner's Permit (CLP) holder. Thus, our operation of our PDL program would also be impaired by the loss of CDLIS.

17. DelDOT participates in CDLIS pursuant to a contract with AAMVA. Attached as Exhibit A is a true and correct copy of Delaware's CDLIS contract with AAMVA.

18. In addition to CDLIS, AAMVA also operates other critical programs that DelDOT, through the DMV, uses. For example, AAMVA operates the Problem Driver Pointer System ("PDPS"). PDPS allows states to search the National Driver Registry ("NDR"), which contains information on problem drivers. By carrying out a PDPS search, DelDOT, through its DMV, obtains information that directs them to the jurisdiction that has a full record of a driver's history. Based on this information, DelDOT, through its DMV, can determine whether an applicant for a driver's license is eligible.

19. Like CDLIS, PDPS was created by statute and is a function of the National Highway Transportation Safety Administration ("NHTSA").

20. DelDOT, through its DMV, queries at least one AAMVA system every time an individual applies for a driver's license.

**FMCSA's Demand for CDLIS Data**

4

DECLARATION OF SHANTÉ A. HASTINGS

21.    On July 27, 2026, DelDOT learned that FMCSA has demanded that AAMVA turn over to FMCSA the entire contents of CDLIS, including Delaware's records, through a letter sent by AAMVA on that date.

22.    I am unaware of FMCSA or any other federal agency ever previously requesting or demanding that AAMVA turn over the contents of CDLIS or any other database.

23.    I understand that FMCSA has asserted that it needs this data so that it can verify CDL validity and conduct motor carrier safety assessments. As described above, DelDOT, through its DMV, already carries out those functions, as is typical for state agencies, in accordance with federal and state statutes and regulations.

24.    I also understand that FMCSA has asserted that, once it obtains this data, it could lawfully share it with any other federal agency for use in carrying out that agency's functions.  I am not aware of any data-security protections that would ensure the security and confidentiality of this data once it is in the hands of either FMCSA or any other agency.

**Irreparable Harm of Disclosure to FMCSA**

25. FMCSA's demand seeks Delaware's proprietary and confidential records and data.

26. Once data from DelDOT is in FMCSA's hands, DelDOT would lose control and oversight of those confidential records.  To my knowledge, FMCSA has not made any commitments to AAMVA that it will maintain the confidentiality of this data; to the contrary, it has affirmatively stated that it is authorized to redisclose it to any other federal agency.  And even if FMCSA made promises to AAMVA regarding the security and/or privacy of this data, Delaware would not be in a position to enforce those promises, and these new records, which would be federal and not state records, could be used for purposes that violate our state law and regulations regarding the confidentiality of information.  *See* 21 *Del. C.* § 305 (governing the privacy of motor vehicle driving history and license records).

27. In particular, DelDOT understands itself to be bound by Delaware laws requiring that it not disclose the confidential motor vehicle driving history and license records of individuals absent a permitted purpose under 21 *Del. C.* § 305.  Handing over Delaware's proprietary and confidential

DECLARATION OF SHANTÉ A. HASTINGS

information to potentially be disclosed by FMCSA for any number of purposes not necessarily permitted by Delaware law may be incompatible with those obligations.

28. Moreover, if the data were turned over to FMCSA, Delaware would not be able to continue to update that data or ensure that it is accurate, creating the risk that potentially out-of-date or erroneous data attributed to Delaware could form the basis or justification for federal action.

### Delaware would be harmed if AAMVA's programs were impaired

29. I understand that FMCSA has threatened to terminate all of its funding to and contracts with AAMVA, including the funding that provides for the upkeep of CDLIS.

30. Delaware would be seriously harmed if FMCSA carried out those threats.

31. As stated above, DelDOT heavily relies on CDLIS, the PDPS, and other resources and services operated by AAMVA. Delaware would have to expend resources to determine alternative procedures for issuing drivers' licenses in the event of any interruption in the provision of the services operated by AAMVA.

32. In particular, without an effective, functioning, and up-to-date CDLIS, DelDOT would not be able to issue new CDLs or renew or update existing ones in compliance with federal law and regulations. Delaware would be harmed by losing access to an important public safety resource that keeps unsafe drivers off of Delaware's roads.

### Delaware participated in CDLIS on the understanding that its records would be kept secure

33. It has never been Delaware's understanding that FMCSA or any other federal agency has lawful authority to obtain the contents of CDLIS for any purpose, nor that granting FMCSA the right to obtain and redisclose Delaware's records was a condition or consequence of participation in CDLIS. The system was designed to be queried by each state for the purpose of verifying the accuracy and status of the relevant data.

34. Delaware has relied on the security and confidentiality of CDLIS records in accordance with governing law in designing its own information systems, in establishing practices relating to the maintenance of such records, and in notifying applicants for CDLs about how their information would be used and shared.

DECLARATION OF SHANTÉ A. HASTINGS

35. If FMCSA is able to obtain and redisclose Delaware's records whenever it wishes, Delaware may need to alter its practices. Among other things, Delaware may need to revise the assurances of confidentiality it provides to CDL applicants, which will require the expenditure of state resources.

\* \* \*

DECLARATION OF SHANTÉ A. HASTINGS

I declare under penalty of perjury under the laws of the United States that, to the best of my knowledge, the foregoing is true and correct.

Executed on August 10, 2026, in Dover, DE.

_____

SHANTÉ A. HASTINGS
SECRETARY
DELAWARE DEPARTMENT OF
TRANSPORTATION

8

DECLARATION OF SHANTÉ A. HASTINGS

# Exhibit A

ASSIGNMENT OF AAMVAnet, INC. SUBSCRIPTION AGREEMENT

BETWEEN

STATE OF NEBRASKA DEPARTMENT OF MOTOR VEHICLES

AND

AAMVAnet, INC.

AND

DEPARTMENT OF PUBLIC SAFETY, STATE OF DELAWARE


For value received, the State of Nebraska, Department of Motor Vehicles, assigns, transfers, and sets over to AAMVAnet, Inc., a Virginia nonstock corporation, the assignee herein, all rights, titles, interests, and obligations in the AAMVAnet, Inc. Subscription Agreement between the State of Nebraska Department of Motor Vehicles, AAMVAnet, Inc., and the Department of Public Safety, State of Delaware, made on the 5th day of December, 1989.

The effective date of this Assignment Of AAMVAnet, Inc. Subscription Agreement shall be November 1, 1990.

In witness whereof, the undersigned has executed this assignment as a fully authorized official on ____ October 18 ____, 19 90

Margaret J. Higgins
Director, Department of Motor Vehicles


## ACCEPTANCE OF ASSIGNMENT

AAMVAnet, Inc., a Virginia nonstock corporation, hereby accepts the foregoing Instrument, subject to all the terms and conditions thereof, and in addition indemnifies and holds harmless the State of Nebraska, Department of Motor Vehicles, for any cause of action, loss, claim, and expenses (including reasonable attorney's fees), that arises directly or indirectly under the assigned AAMVAnet, Inc. Subscription Agreement after the date of this assignment.

AAMVAnet, Inc.

Dated ____ Oct 19 ____, 1990.


## DUPLICATES

This Assignment Of AAMVAnet, Inc. Subscription Agreement may be executed in several duplicate copies each of which so executed shall be deemed to be an original, and all duplicates so executed shall constitute but one agreement binding on all parties hereto, notwithstanding that all parties are not signatories of this original or same duplicate.

AANVAnet, INC.

SUBSCRIPTION AGREEMENT

THIS SUBSCRIPTION AGREEMENT is made this ___5th___ day of
___December___, 19_89_, by and among AANVAnet, INC., a Virginia nonstock
corporation (the "Operator"), the STATE OF NEBRASKA, DEPARTMENT OF MOTOR
VEHICLES (the "Nebraska DMV") and the undersigned subscriber (the
"Subscriber") in the State of _____DELAWARE_____ (the
"State").

RECITALS

A.   Section 12007 of the Commercial Motor Vehicle Safety Act of 1986, 49
     U.S.C. app. 2701 et seq. (the "Act") mandated the establishment of an
     information system which will serve as a clearinghouse and depository
     of information pertaining to the licensing and identification of
     operators of commercial motor vehicles and the disqualification of
     such operators from operating commercial vehicles (hereinafter, the
     "Commercial Drivers License Information System" or "CDLIS").

B.   The operator is working in cooperation with the Nebraska DMV,
     representatives of the States (as such term is used in the Act) and
     the Federal Highway Administration with respect to the creation of a
     nationwide telecommunications network ("AANVAnet") to support the
     operation of CDLIS.

C.   The Federal Highway Administration, Acting for the U.S. Secretary of
     Transportation, pursuant to the Act, has designated the Operator as
     the operator of CDLIS.

D.   The Nebraska DMV has entered into certain third party contractual
     obligations relating to the development and operation of AANVAnet.

E.   The Nebraska DMV therefore desires to enter into this contract between
     AANVAnet and the Subscriber to clarify its right to recover

1

RECEIVED

DEC 14 1989

NE DEPT MOTOR VEHICLES

subscription fees directly from the Subscriber for services rendered by the Operator and the third party contractor (the "Third Party Obligations") until such time as Nebraska DMV assigns its rights and obligations under this Agreement.

F. The Subscriber desires to contract for the use of AAMVAnet for the purpose of obtaining access to CDLIS and other telecommunication services which may be available over AAMVAnet and which it may desire to utilize from time to time (the "Services"), all as set forth herein.

**AGREEMENTS**

NOW THEREFORE, the parties hereby agree as follows:

1. Use of AAMVAnet. Operator and Nebraska DMV hereby grant to Subscriber the right to utilize AAMVAnet for the purpose of obtaining access to CDLIS and such other Services as Subscriber shall elect from time to time.

2. Fees. Subscriber agrees to pay for use of AAMVAnet and the Services on the basis of Subscriber's actual utilization of network services and/or applications in accordance with the charges set forth in Attachment A. All fees, less credits approved, are exclusive of any applicable state or local sales, use or other taxes of a similar nature and are subject to change upon at least thirty (30) days written notice from Operator to Subscriber.

3. Billing and Payment. Following the end of each calendar month, Nebraska DMV will cause to be sent to Subscriber an invoice setting forth charges incurred during such month by the Subscriber. Upon receipt of the invoice, the Subscriber shall pay the full amount due. Amounts remaining due for more than sixty (60) days shall accrue interest at the rate per annum of fourteen percent (14%). Amounts remaining due for more than ninety (90) days shall result in termination of services to the Subscriber as provided in Paragraph 8

2

of the Agreements. Remittances shall be made payable to "Nebraska Department of Motor Vehicles" and shall be mailed to Nebraska Department of Motor Vehicles, CDL Division, P.O. Box 94789, Lincoln, Nebraska 68509 or such other payee and/or address as shall be designated by the Nebraska DMV.

4. Equipment. The Subscriber will be connected to AAMVAnet through equipment provided by the Subscriber as delineated in Attachment B of this Agreement. The Operator, the Nebraska DMV or their designee shall have the right to inspect and test such equipment to confirm the compatibility of such equipment with AAMVAnet.

5. Compliance with Certain Policies and procedures. The Subscriber agrees that it will, unless prohibited by state law, comply fully with the Operator's policies and procedures, set forth in Attachment C, in effect from time to time regarding the disclosure to and access of State agencies and other third parties of information transmitted over AAMVAnet, including, policies with regard to the structure and coding of transactions and billing policies and procedures.

6. Compliance with Nebraska DMV Billing and Payment Procedures. The Subscriber agrees that payment is due upon receipt of invoice. The Subscriber further agrees and acknowledges the authority of the Nebraska DMV to seek recovery of any financial obligations incurred by the Subscriber for services provided under this agreement.

7. Term. This Subscription Agreement is effective as of the date set forth above and shall continue in force until terminated by the Subscriber, Operator or Nebraska DMV, except as stated in Agreements paragraphs number three (3) and number nine (9), upon at least thirty (30) days written notice.

8. Termination; Suspension of Services; Other Remedies. If Subscriber fails to fulfill any obligations under this Subscription Agreement,

3

then in addition to any other remedies which Operator and/or the Nebraska DMV may seek, the Operator and/or Nebraska DMV may suspend access to AAMVAnet on ten (10) days written notice. In addition to the foregoing, if the Subscriber fails to fulfill any obligations under this Subscription Agreement, the Operator and the Nebraska DMV may take whatever action at law or in equity which may appear necessary or desirable to enforce such obligations. No remedy set forth herein is intended to be exclusive of any other remedy or remedies, but each and every such remedy shall be cumulative and shall be in addition to every other remedy given under this Subscription Agreement or now or hereafter existing at law or in equity or by statute.

The Subscriber shall not be relieved of its liability to Nebraska DMV for any damages sustained by the Nebraska DMV as a result of any breach of this Subscription Agreement unless Nebraska DMV so releases the Subscriber and has determined for the purpose of set-off the exact amount of damage due the Nebraska DMV.

9.  Limitation on Liability of Nebraska DMV. The Nebraska DMV enters into this Agreement to provide specified network services based upon the Federal Highway Administration Supplemental Grant CDLIS-FY 88-002 dated August 23, 1988, and as amended on March 17, 1989, to provide the amount of $2,600,000 as the funding source for this project. If at any time the funding source fails to appropriate monies to the Nebraska DMV, the obligation of the Nebraska DMV shall cease immediately and performance of work under the Subscription Agreement by Nebraska DMV shall terminate effective as of the date specified in the notice without penalty.

In addition, when the funding from Federal Grants has been expended, then the Nebraska DMV shall not commit to the expenditure of State funds. At no time shall the Nebraska DMV commit to the expenditure of State funds.

4

Prior to the expenditure of all federal grants funds the Director of the Nebraska DMV at any time may assign the Nebraska DMV's rights and obligations under this Agreement to: a federal government agency, another state participating in AAMVAnet, or another agency of the State of Nebraska. Upon expenditure of all federal grants funds, Nebraska DMV may assign this Subscription Agreement to the Operator.

10. Force Majeure. Neither the Operator, nor the Nebraska DMV, nor the Subscriber shall have any liability to any party by reason of any delay or failure to perform any obligation or event occasioned by any act of God, force majeure, storm, fire, casualty, work stoppage, strike, lockout, labor dispute, civil disturbance, equipment failure, riot, national emergency, act of government, act of public enemy, mechanical or technical failure or other causes of similar or dissimilar nature beyond its or their control.

11. Choice of Law. This Agreement shall be construed and interpreted in accordance with the laws of the State of Nebraska.

12. The Subscriber may not reassign any rights or obligations under this Agreement without the express written approval of the Operator and Nebraska DMV. Upon the expenditure of all federal grant funds the Nebraska DMV may assign its rights hereunder to the Operator without the further consent of the Subscriber.

13. Notices. All notices required or permitted to be given under the terms of this Subscription Agreement, except as stated in Agreements paragraph number nine (9), shall be deemed given when delivered in person or on the third business day after being deposited in the United States mail, first class postage prepaid, addresses as follows:

5

| | |
|---|---|
| If to the Operator: | Richard G. Juve, Manager<br>AAMVAnet, Inc.<br>4200 Wilson Blvd., Ste. 600<br>Arlington, VA  22203 |
| If to the Nebraska DMV: | Paul N. Potadle, Attorney-Deputy<br>                                  Director<br>CDL Coordinator<br>P.O. Box 94789<br>Lincoln, NE  68509 |
| If to the Subscriber: | Robert J. Voshall, Director<br>Division of Motor Vehicles<br>P.O. Box 698<br>Dover, DE  19903 |

or to such other person or address which any party shall furnish to the others in writing.

14. Headings. The headings in this subscription Agreement are for convenience and reference purposes only and do not constitute part of the Agreement.

15. Entire Agreement. This Subscription Agreement constitutes the entire agreement among the parties and merges any and all prior agreements and representations respecting the matters contemplated in this Subscription Agreement, whether oral or written, by and among the parties hereto.

16. Counterparts. This Subscription Agreement may be executed in two or more fully executed counterparts, each of which shall be deemed an original binding the signer thereof against the other signing parties, but all counterparts together shall constitute one and the same

instrument.

17.  Severability; Nonwaiver.  Should any provisions of the Subscription
Agreement be held to be void, invalid, unenforceable or illegal by a
court, the validity and enforceability of the other provisions shall
not be affected thereby.  Failure of any party to enforce any
provision of this Subscription Agreement shall not constitute or be
construed as a waiver of such provisions or of the right to enforce
such provision.

IN WITNESS WHEREOF, the undersigned have caused the Agreement to be
executed by their fully authorized officials as of the date first written
above.

Subscriber

By:  _____
     Patrick V. Murray                              (name)
     Secretary, Department of Public Safety         (title)

AAMVAnet, Inc.

By:  _____
     Richard G. Juve
     Manager - AAMVAnet, Inc.

Nebraska Department of Motor Vehicles

By:  _____
     Margaret L. Higgins
     Director - Department of Motor Vehicles

7

## ATTACHMENT A

### AAMVAnet, Inc. Fee Schedule
### June 29, 1989

### CDLIS Fee Schedule

This fee schedule covers the equipment and services required for the CDLIS application.

| | | |
|---|---|---|
| Enrollment Fee for each new CDL Holder to CDLIS | | $4.00 |
| Traffic Usage Charges (per 1000 Characters) | | |
| Prime Time | | .015 |
| Non-Prime Time | | .008 |
| Monthly Fee per Invoiced Account | | 40.00 |

CDLIS Transaction Charges

| | Year | Rate |
|---|---|---|
| Adds and Changes | 1989 | .05883 |
| | 1990 | .05425 |
| | 1991 | .05046 |
| | 1992 | .04692 |
| Inquiries | 1989 | .04445 |
| | 1990 | .04099 |
| | 1991 | .03812 |
| | 1992 | .03534 |

The above fees cover all fees and charges to the extent required for CDLIS operations. Only one "PROFS" user ID is included in the above fees.

Federal grant funds and CDLIS enrollment fees will cover the cost of monthly host connectivity and common carrier charges for a 90 day period prior to CDLIS implementation. Any additional costs will be at the rates covered on page 2 of Attachment A.

The fees listed on the next page apply when the service does not relate to the CDLIS application. These rates can be used to determine the cost to connect additional host computers; to have additional capacity; or to use other network services.

8

**Attachment A**
**Page 2**

**Current AAMVAnet Rates**
**Effective June 29, 1989**

|  | Current AAMVAnet |
|---|---|
| **INSTALLATION:** | |
| Host administration (per host) | $1,328 |
| Enhanced Connectivity Service* | |
| - 9.6  Kbps line (per line) | 900 |
| - 14.4 Kbps line (per line) | 1,125 |
| - 56.6 Kbps line (per line) | 1,175 |
| Protocol conversion (non-LU6.2 States) | 4,000 |
| | |
| **HOST CONNECTIVITY (Monthly)** | |
| Host administration (per host) | 340 |
| Enhanced Connectivity Service* | |
| - 9.6  Kbps line (per line) | 778 |
| - 14.4 Kbps line (per line) | 1,237 |
| - 56.6 Kbps line (per line) | 3,111 |

* IBM will provide the modems, IBM Information Network
communications port and management of the line.

Common Carrier charges are charged as received from the Common Carrier.
They are not included in the above charges.  Prime time is from 8:00am to
8:00pm (Eastern time) Monday-Friday.

| **TRAFFIC USAGE CHARGES** | |
|---|---|
| Prime time per 1,000 Characters | .015 |
| Non-Prime time per 1,000 Characters | .008 |

| **LOCAL DIAL ACCESS CHARGES (Per hour)** | |
|---|---|
| Class A city Prime time | 4.34 |
| Class A city Non-Prime time | 2.16 |
| Class B city Prime time | 6.37 |
| Class B city Non-Prime time | 3.18 |
| 800 Number surcharge to local class A city: | 15.90 |

| **INFORMATION EXCHANGE (IE) USAGE** | |
|---|---|
| Information Exchange message Prime time | .255 |
| Information Exchange message Non-prime time | .128 |
| IE Traffic, per 1,000 Characters Prime time | .060 |
| IE Traffic, per 1,000 Characters Non-Prime time | .030 |
| Storage, per Million Characters per day | 3.79 |

| **GENERAL CHARGES** | |
|---|---|
| Enrollment Charge per invoiced account (One item) | 150 |
| Attached network resources registration (per device) | 35 |
| PROFS USER ID (w/1 MB of Storage) per month | Variable 100 |
| Monthly fee per Invoiced Account | 40 |

| **SOFTWARE** | |
|---|---|
| IBM expEDIte/CICS (per month) | 95 |
| IE SNA Host Interface (per month) | 32 |
| IBM expEDIte/PC (per Copy) | 150 |
| INPCS-Entry (Dial support per copy) | 150 |

9

**ATTACHMENT B**

**AAMVAnet Equipment**
**June 29, 1989**

One pair of modems, one for each end of a leased line, are included in the AAMVAnet fee structure for CDLIS operations. The modems are the property of the Network.

The modems provided will be sufficient to process CDLIS Transactions and related management requirements such as E-Mail. If the subscriber requires modems with a greater capacity due to other network traffic, the subscriber will be charged for the difference in cost.

A protocol converter is included in the current AAMVAnet fee structure if required by the subscriber. If the subscriber desires a backup Protocol Converter it can be provided at additional cost.

All equipment required for telecommunications, to the point of the subscriber's side of the modem or protocol converter, is the subscriber's responsibility and cost.

10 -

Attachment C

AAMVAnet Policies and Procedures
June 12, 1989

## Network Management and Support

1. The subscriber agrees to allow network and application vendors to provide statistics, management information and financial information to AAMVAnet, Inc.

2. An IBM software package "NOTIFY", which is available to all network users, will be used to manage and track Network and application problems. The subscriber agrees to allow the network provider to provide AAMVAnet related network and application problem information to AAMVAnet Inc.

3. The subscriber agrees to have one AAMVAnet "PROFS" User ID for Electronic Mail and Bulletin Board purposes.

## CDLIS Management and Support

1. The subscriber is responsible for required changes and/or updates to pointer information relative to the subscriber.

## Billing Services

1. The subscriber agrees that network charges related to the CDLIS control site, Network Control Software (NCS) and NDR Traffic will be prorated back to the subscriber based on percentage of CDLIS Traffic.

2. The rebilling process utilized by AAMVAnet, Inc. will supply detailed network and CDLIS charges to the state as a part of the billing process. In those cases where charges are being paid by federal grant funds, the rebilling system will first provide the detailed charges and then credit the item back to the subscriber. This process will allow states to review the usage of the network and CDLIS in detail on an ongoing basis.

## Privacy and Disclosure

1. The subscriber is responsible for any record keeping or tracking of

11

data that may be required due to state or federal disclosure laws.

2.   The subscriber agrees that it will not provide data from another subscriber to a commercial user. The exception to this policy is, when a driver has moved from one jurisdiction to another jurisdiction and the Driver History Data was moved related to this driver.

## Confidentiality

1.   AAMVAnet, Inc. is also establishing and maintaining information which is utilized to assist Motor Vehicle Agencies perform their official business.

In order to protect the rights of the citizens in the use of this information, it is understood and agreed by the subscriber that is requesting and/or receiving:

information from another subscriber; or

information maintained by AAMVAnet, Inc.; or

information maintained by contractors on behalf of AAMVAnet and/or the subscriber;

that such information will be for the sole purpose of:

controlling the issuance of a motor vehicle drivers license or permit; or

official subscriber business related to the transfer of a vehicle's registration or title; or

official law enforcement business; or

other official business of the subscriber's motor vehicle department or division.

12