**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| STATE OF ILLINOIS; DISTRICT OF COLUMBIA; STATE OF CALIFORNIA; COMMONWEALTH OF VIRGINIA; STATE OF ARIZONA; STATE OF COLORADO; STATE OF CONNECTICUT; STATE OF DELAWARE; STATE OF HAWAI'I; STATE OF MAINE; STATE OF MARYLAND; COMMONWEALTH OF MASSACHUSETTS; STATE OF MICHIGAN; STATE OF MINNESOTA; STATE OF NEVADA; STATE OF NEW JERSEY; STATE OF NEW MEXICO; STATE OF NEW YORK; STATE OF OREGON; Governor of the COMMONWEALTH OF PENNSYLVANIA; STATE OF VERMONT; STATE OF WASHINGTON; STATE OF WISCONSIN; | No. 1:26-mc-19 |

*Movants*,

v.

UNITED STATES DEPARTMENT OF HOMELAND
SECURITY,

*Respondent*.

**DECLARATION OF SHENNA BELLOWS**

I, Shenna Bellows, declare under penalty of perjury pursuant to 28 U.S.C. § 1746, as follows:

1.      I am a resident of the State of Maine. I am over the age of 18, competent to testify as to the facts herein, and I testify based on personal knowledge, records kept in the ordinary course of business at the State of Maine, Department of the Secretary of State, Bureau of Motor Vehicles ("Maine BMV"), and information I learned from Maine BMV personnel whose work I rely upon and who have assisted me in gathering this information from our institution.

2.      I am currently the Secretary of State of the State of Maine, a position I have held since January 4, 2021, following my election by the Maine State Legislature in December 2020 and re-election by the Maine State Legislature in 2022 and 2024. I serve on the Executive Committee of the Election Infrastructure – Information Sharing and Analysis Center, a national organization of state and local elections officials and cybersecurity officials dedicated to election security and cybersecurity. I am a member of the National Association of Secretaries of State. I also serve on Maine's Cybersecurity Advisory Council, the Board of Visitors for the University of Maine at Augusta and the Informe Board. Prior to becoming Secretary of State, I served in the Maine State Senate. I also previously held multiple nonprofit leadership positions in the areas of human rights and civil liberties including eight years as Executive Director of the American Civil Liberties Union of Maine. As Secretary of State, I head the Department of Secretary of State, comprised of the Bureau of Motor Vehicles, the Bureau of Corporations, Elections and Commissions, and Maine State Archives.

3.    As Secretary of State, I am a constitutional officer whose duty as the keeper of all records of the state is outlined clearly in Article V, Section 2 of the Maine State Constitution: "The records of the State shall be kept in the office of the secretary, who may appoint deputies to that office, for whose conduct the secretary shall be accountable." Since the inception of the Bureau of Motor Vehicles (BMV), established by the Maine State Legislature in 1905, the Secretary of State has been vested with the sole power and authority to issue driver licenses in Maine. As such, I oversee all driver license issuance and control including but not limited to Maine commercial driver licenses. My powers and duties detailed in Maine law under Title 29-A include driver education, license qualifications and examinations, all aspects of driver license issuance, maintenance of all

1

DECLARATION OF SHENNA BELLOWS

license holder information pertaining to the driver record and driver history, and suspension or revocation of the driver license pursuant to violations under the law; and all of these powers and duties extend to the Commercial Driver License Program. Pursuant to the Constitution and laws of the State of Maine, I am responsible for all driver license records including all commercial driver license information. I report to the Maine State Legislature on a regular basis, providing written reports and public testimony, and I ensure that my deputies provide all legally required information to federal authorities. When the Maine State Legislature or Congress pass new laws impacting any aspect of motor vehicles, I am directly responsible for implementation including technological changes to our systems and changes to policies and procedures to faithfully execute the law. I am charged with rulemaking pursuant to my statutory authority and responsibilities, and the rules safeguarding driver information security and privacy are promulgated under my authority. I am responsible for all aspects of the Maine BMV including our mission, strategic priorities, policies and faithful adherence to the Constitution and laws of the State of Maine and the United States of America. I appointed the Deputy Secretary of the Maine BMV in March, 2021 and was directly involved in hiring the Director of the Division of License Services for the Maine BMV in November, 2021. I receive regular reports from my Deputy Secretary of the Maine BMV and her staff including performance metrics and other data to monitor continuous improvement efforts to enhance efficiency, accountability and customer experience as well as ensure compliance with state and federal laws, high standards of customer service and operational excellence, and success in meeting our mission of protecting public safety on Maine roadways.  I meet frequently with BMV leadership and staff to engage in policy discussions, receive updates, and ensure that the BMV is accurate, timely and transparent in providing information to the Maine State Legislature, the Governor and the Executive Branch, Congress, federal government agencies, stakeholders, the media and the public about the activities of the BMV. I represent the BMV at statewide conferences and meetings, stakeholder gatherings, press conferences and before the Maine State Legislature. This includes oversight and implementation of Maine's Commercial Driver License Program.

4.      In Maine, the Maine BMV is the state driver licensing agency (SDLA) and executes the  powers and duties granted to the Secretary of State relating to issuing and renewing both

DECLARATION OF SHENNA BELLOWS

commercial drivers' licenses (CDLs) and non-commercial drivers' licenses. (See, for example, 29-A M.R.S. §§ 1251-1475.) Among other things, Maine BMV is responsible for verifying each driver license applicant's legal eligibility and medical fitness to obtain and retain a driver's license, identifying and disciplining problem drivers, and protecting the privacy of drivers' personal information.

**Maine's Management of Driver Licensing**

5.     Maine BMV is responsible for issuing and renewing commercial driver's licenses (CDLs) and personal driver's licenses (PDLs) to residents of Maine.

6.     As part of Maine's commitment to traffic safety, Maine BMV follows stringent procedures to ensure that drivers do not receive a license unless they can safely operate a vehicle and observe all traffic laws. In pursuit of that goal, and in accordance with state and federal laws and regulations, Maine BMV administers driving tests, assesses applicants' medical fitness, checks to ensure that each applicant is not the holder of a driver's license from any other state, and checks each applicant's driving history to ensure that the applicant has not been subject to discipline or had their license revoked. For all licenses including CDLs, Maine BMV requires documentation of identity, Maine residency and legal status. For CDLs, the Maine BMV verifies the applicant's immigration status.

7.     To comply with our legal obligations and ensure that each driver is eligible to be licensed in Maine, it is necessary for Maine BMV to have a means of checking each driver's history, not only in Maine, but in other states where the applicant may have held a license.

8.     For CDLs, this check is conducted through a database called the Commercial Driver's License Information System (CDLIS).

**The Commercial Driver's License Information System (CDLIS)**

9.     CDLIS is a database that contains driver records owned and maintained by the states. It operates as a clearinghouse where states can assist one another in verifying the identity and history of individual CDL applicants. CDLIS is operated on behalf of the states as a cooperative endeavor by the American Association of Motor Vehicle Administrators (AAMVA), a trade association for SDLAs, of which all states and some foreign jurisdictions are members.

DECLARATION OF SHENNA BELLOWS

10. CDLIS does not contain a driver's full record. Rather, CDLIS contains a "Master Pointer Record" (MPR) for each CDL holder in the United States, which consists of each driver's: state of record, driver license number, name, date of birth, social security number (SSN), sex, the date and time the driver was added to CDLIS, the date and time the record was last updated, and indicators showing whether a change in the state of record is in progress, and whether the number in the SSN field is an SSN, a substitute SSN, or a pseudo SSN.

11. If Maine BMV queries CDLIS and finds that an applicant has a Master Pointer Record, Maine BMV would then send the identified state of record for that driver a request for the driver's full history, called a "driver record" or "Driver History Record" (DHR) which the state of record would provide directly to the requesting state. Similarly, if another state queries CDLIS and finds a Master Pointer Record for a driver licensed in Maine, Maine BMV would send that driver's record to the requesting state.

12. To query CDLIS, a user must know either the driver's name and date of birth, the driver's license number, or the driver's SSN. Users cannot conduct indiscriminate batch searches, such as searching for all drivers born in 1987, or all drivers with the last name "Smith."

13. As stated above, the data in CDLIS is owned and maintained by the states. Maine BMV has the power to add, delete, or change its own records maintained in CDLIS—and regularly does so, to ensure that our data remains accurate and up-to-date. Neither AAMVA nor the Federal Motor Carrier Safety Administration (FMCSA), on the other hand, has any power to make additions, deletions, or changes to Maine's CDLIS data.

14. Before issuing a CDL, Maine, like all states, is required to use CDLIS to determine whether an applicant for a CDL already holds one, whether his or her license has been disqualified, and whether the applicant is disqualified from operating a motor vehicle. [49 CFR 383.73(b)(ii)].

15. Maine BMV has participated in and relied on CDLIS to operate its CDL program since April 1992. Even if we were not legally required to use CDLIS, we would need CDLIS or some other system like it in order to serve our public safety mission: Maine BMV needs to know whether an applicant has a history of dangerous or unlawful driving in order to fulfill its public

4

DECLARATION OF SHENNA BELLOWS

safety mission. If CDLIS were to shut down, particularly on short notice, it would be a major impediment to the operation of our CDL program.

16. Maine BMV also queries CDLIS before issuing a personal driver's license. Thus, our operation of our PDL program would also be impaired by the loss of CDLIS.

17. Maine BMV participates in CDLIS pursuant to a contract with AAMVA.

18. In addition to CDLIS, AAMVA also operates other critical programs that Maine BMV is required to use. For example, AAMVA operates the Problem Driver Pointer System ("PDPS"). PDPS allows states to search the National Driver Registry ("NDR"), which contains information on drivers with an active suspension in any state. By carrying out a PDPS search, Maine BMV obtains information that directs them to the jurisdiction that has placed a suspension or revocation on an driver's license. Based on this information, Maine BMV can determine whether an applicant for a driver's license is eligible.

19. Like CDLIS, PDPS was created by statute and is a function of the National Highway Traffic Safety Administration ("NHTSA").

20. AAMVA also provides 2 digital platforms to help state licensing agencies meet two federally-required programs for commercial drivers. The Drug and Alcohol Clearinghouse II (DACH II) program ensures drivers who fail to meet FMCSA requirements on substance abuse issues temporarily lose their commercial driving privilege. Additionally, the National Registry of Certified Medical Examiners II (NRCME II) program requires doctors to digitally submit a commercial driver's medical certification to FMCSA, and the AAMVA platform allows state licensing agencies to receive digital notification of the driver's medical examination status before conducting licensing activities.

21. Additionally, Maine relies on AAMVA's digital State-to-State platform to meet the requirements of the federal REAL ID Act of 2005. This law requires states to "provide electronic access to all other states to information contained in the motor vehicle database of that state" for the purposes of ensuring one individual can possess only one REAL ID and one license from one state. AAMVA provides and operates the digital State-to-State service, and the federal government does not directly access information shared via the State-to-State platform.

DECLARATION OF SHENNA BELLOWS

22. Maine BMV queries multiple AAMVA systems every time an individual applies for an initial driver's license, a renewal, a duplicate or an inter-state transfer.

**FMCSA's Demand for CDLIS Data**

23. On July 23, 2026, Maine BMV learned that FMCSA has demanded that AAMVA turn over to FMCSA the entire contents of CDLIS, including Maine's records. Catherine Curtis, Deputy Secretary of State for the Department of Secretary of State, Maine BMV, is a member of AAMVA's board of directors, and learned about FMCSA's data demand via an email sent on July 23 at 3:59 pm from Ian Grossman, AAMVA President and CEO. Due to the extremely short notice, Deputy Curtis was unable to attend the emergency AAMVA board meeting that occurred on Friday, July 24, 2026.

24. I am unaware of FMCSA or any other federal agency ever previously requesting or demanding that AAMVA turn over the contents of CDLIS or any other database.

25. I understand that FMCSA has asserted that it needs this data so that it can verify CDL validity and conduct motor carrier safety assessments. As described above, Maine BMV already carries out those functions, as is typical for state agencies, in accordance with federal and state statutes and regulations.

26. I also understand that FMCSA has asserted that, once it obtains this data, it could lawfully share it with any other federal agency for use in carrying out that agency's functions. I am not aware of any data-security protections that would ensure the security and confidentiality of this data once it is in the hands of either FMCSA or any other agency.

27. I understand that FMCSA has asserted that this information is required for the purposes of auditing state commercial driver licensing programs. Based on my job responsibilities, I am aware that FMCSA officials have the ability to access CDLIS data tied to a specific driver as part of a driver look-up function. FMCSA officials require this data to perform field inspections and in their work alongside state licensing agencies and state law enforcement agencies as part of shared responsibility for roadway safety. It is also my understanding that FMCSA officials do not, however, have the ability to pull state driver data in a mass or bulk format.

DECLARATION OF SHENNA BELLOWS

28. I am aware that, in order to enable FMCSA's federal oversight of state CDL programs, FMCSA currently receives a significant trove of anonymized monthly trend data taken from AAMVA's CDLIS platform that shows how states are performing across a dozen functional areas. These reports include conviction and suspension timeliness and multiple data quality assessments of how a state licensing agency maintains commercial driver pointer information. This data is aggregated and coded to show positive and negative trends by state, for each program, and it reflects how closely states are following federal CDL standards. It is also formatted to show a comparison between all states on all reports, allowing both federal and state officials to detect trends and deviations. In the event that FMCSA has concerns about any given state's performance, FMCSA works directly with that state to obtain additional information about specific drivers. Given that FMCSA already has this detailed data regarding a state's CDL program performance from AAMVA, it is unclear how the driver-specific pointer information would contribute to how FMCSA would audit a state's CDL program.

29. Additionally, FMCSA is requiring AAMVA to release bulk master pointer records that only contain an individual's personal information. These records do not contain underlying driving history or qualification information, which seem to be the more critical data sets related to FMCSA's role of ensuring highway safety. The absence of such a request calls into question the motives of FMCSA's demand that AAMVA release master pointer records en masse.

30. I also understand FMCSA may intend to further share state master pointer data to other federal agencies.

### DHS's Subpoena for CDLIS Data

31. On August 11, 2026, I received an email from AAMVA addressed to all SDLAs, notifying states that, "AAMVA received a new administrative subpoena from the Department of Homeland Security that is identical to the one that we indicated had previously been withdrawn." AAMVA further stated that it is working with its counsel to respond to the subpoena in a manner that is consistent with the letter sent to FMCSA, that AAMVA previously shared with states on August 7, 2026. A true and accurate copy of the DHS subpoena is attached as **Ex. 1**.

DECLARATION OF SHENNA BELLOWS

32. The subpoena AAMVA received on August 11, 2026 from the Department of Homeland Security (DHS) seeks, "all individual pointers found within the CDLIS within the last 5 years: driver name; date of birth; state of record; license number; Social Security Number (if available. If not, please provide date when this data was removed from records retained by AAMVA)."

33. In other words, the DHS subpoena seeks the identical data that FMCSA demanded from AAMVA, which, as set forth herein, belongs to the states.

34. The DHS subpoena is an administrative immigration enforcement subpoena issued pursuant to 8 U.S.C. §§ 1225(d); 8 C.F.R. § 287.4.

35. The DHS subpoena demands that AAMVA produce the data by 8:00am EST on August 17, 2026 to Matthew Kyle, a criminal investigator and CBP Officer or ICE Special Agent.

36. The cover letter enclosing the DHS subpoena to AAMVA explains that Homeland Security Investigations is "investigating illegal practices in CDL schools, identifying and addressing criminal fraud regarding the issuance of CDLs to illegal aliens, and conducting civil immigration enforcement."

### Irreparable Harm of Disclosure to FMCSA or DHS

37. FMCSA's and DHS's demand seeks Maine's proprietary and confidential records and data.

38. Once Maine's data is in FMCSA's or DHS's hands, Maine would lose control and oversight of its confidential records. To my knowledge, neither FMCSA nor DHS have made any commitments to AAMVA that they will maintain the confidentiality of this data; to the contrary, FMCSA has affirmatively stated that it is authorized to redisclose it to any other federal agency. And even if FMCSA or DHS made promises to AAMVA regarding the security and/or privacy of this data, Maine would not be in a position to enforce those promises, and these new records, which would be federal and not state records, could be used for purposes that violate our state law and regulations regarding the confidentiality of information.

39. In particular, Maine BMV understands itself to be bound by state and federal laws requiring that personal information be protected. The Driver's Privacy and Protection Act ("DPPA")

8

DECLARATION OF SHENNA BELLOWS

generally prohibits Maine BMV and its contractors (here, AAMVA) from disclosing a driver's personal information without the driver's consent. 18 U.S.C. § 2721(a). Although there is a provision that gives Maine BMV discretion to disclose the personal information "for use by a government agency," my understanding is that this is a narrow exception that should be read narrowly, consistent with the privacy purposes behind DPPA. 18 U.S.C. § 2721(b)(1). Based on the rationale provided by FMCSA to date, it does not appear that FMCSA has satisfied this DPPA exception. Additionally, I understand that information such as social security numbers are highly protected by the Social Security Act and regulations. Another statute protects Mainers' personal information and requires notice in the event that such confidentiality is breached. *See* 10 M.R.S. § 1347 (personal information means an individual's first name or initial, and last name in combination with any one or more of: social security number; driver's license number, or other data elements, if the data is not encrypted or redacted). Handing over Maine's proprietary and confidential information to FMCSA or DHS is incompatible with Maine's obligations.

40. Maine's agreement with AAMVA includes provisions requiring AAMVA to follow Maine requirements in regard to data security and confidentiality, including compliance with the DPPA and all of our State IT policies.[1] Additionally, AAMVA agreed to take all steps necessary to protect confidential information regarding all persons served by Maine BMV, including the proper care, custody and use of records that reveal confidential information of Maine citizens. *See* Contract, Compl. Ex. 4 at pg. 41, Dkt. No. 1 (Rider B-IT, Sec. 30(B)). AAMVA is only permitted to use Maine's confidential information for purposes of its Contract with Maine BMV. *Id*. But those obligations would not run to FMCSA or to DHS.

41. Moreover, if the data were turned over to FMCSA or DHS, Maine would not be able to update the data or ensure that it is accurate, creating the risk that out-of-date or erroneous data attributed to Maine could form the basis or justification for federal action.

42. Finally, residents of Maine entrust the state with their personal data when they apply for a commercial driver's license. That trust would be destroyed if the data is turned over to

[1] https://www.maine.gov/oit/policies-standards (last visited Aug. 5, 2026).

9

DECLARATION OF SHENNA BELLOWS

FMCSA or DHS without controls and without a clear statement of FMCSA's or DHS's purpose in seeking it.

43.    A readily foreseeable result of this breach of trust is that fewer people may seek CDLs from Maine. This means Maine risks losing a critical workforce resource essential to maintaining the safe and efficient movement of goods through interstate and intrastate commerce.  If people cannot get CDLs in Maine, there is a risk that they could become unemployed, and need to rely upon state government benefit programs for essential needs, such as healthcare and food. This scenario also risks lost revenue to the State of Maine, including but not limited to application fees. For example, each applicant for a CDL must pay a $70 fee for each initial application or transfer, and an additional $34 fee for each endorsement upgrade.

44.    There is also an acute risk that some individuals who are concerned about broadly disclosing their personal information to the federal government—such as individuals who are lawfully qualified to obtain a CDL but are part of mixed-status immigration families—may avoid the CDL process entirely and attempt to drive commercial motor vehicles without a license.  If that occurs in even a small number of cases, it would pose grave public-safety risks, as states would not be able to identify the drivers of those motor vehicles or ensure that they are properly qualified to drive commercial motor vehicles.

### Maine would be harmed if AAMVA's programs were impaired.

45.    I understand that FMCSA has threatened to terminate all of its funding to and contracts with AAMVA, including the funding that provides for the upkeep of CDLIS.

46.    Maine would be seriously harmed if FMCSA carried out those threats.

47.    As stated above, Maine BMV heavily relies on the FMCSA-funded CDLIS, DACH II and NRCME II platforms, and other resources and services operated by AAMVA. Beyond applications strictly relevant to commercial licensing, AAMVA also provides critical platforms that allow Maine to connect with other agencies for issuing REAL IDs, checking Social Security numbers with the Social Security Administration, and verifying immigration documentation with USCIS.  All of these related platforms directly enable Maine's ability to meet federal CDL requirements as outlined in federal laws and regulations.

DECLARATION OF SHENNA BELLOWS

48.     In particular, without an effective, functioning, and up-to-date CDLIS platform, Maine BMV would not be able to issue new CDLs or renew existing ones in compliance with federal law and regulations. This could result in a decertification of Maine's CDL program, and a de-licensure of all Maine CDL holders, in addition to a potential reduction of federal highway funding monies.  Maine motor carrier businesses would lose the ability to conduct interstate and international commerce (to and from Canada and Mexico), and commercial drivers would need to leave Maine to potentially re-earn a CDL in another state while looking for new employment. And even if those laws and regulations did not apply, Maine would be harmed by losing access to an important public safety resource that keeps unsafe drivers off of Maine roads.

**Maine participated in CDLIS on the understanding that its records would be kept secure**

49.     I understand that Maine's participation in the CDLIS system is a condition to receiving certain federal highway funds.

50.      It has never been Maine's understanding that FMCSA or any other federal agency has lawful authority to obtain the contents of CDLIS, nor that granting FMCSA or DHS the right to obtain and redisclose Maine's records was a condition of participation in CDLIS.

51.     Maine has relied on the security and confidentiality of CDLIS records in designing its own information systems, in establishing practices relating to the maintenance of such records, and in notifying applicants for CDLs about how their information would be used and shared.

52.     If FMCSA or DHS is able to obtain and redisclose Maine's records whenever they wish, Maine will need to alter its practices.  Among other things, Maine will need to revise the assurances of confidentiality it provides to CDL applicants, which will require the expenditure of substantial state resources.  For example, Maine may require commercial drivers to provide a new written attestation that they understand their personal data will be shared with FMCSA and/or DHS. This requirement could significantly slow processing, and increase data storage requirements related to each transaction.

53.     If Maine BMV had been aware that those funds were conditioned on having to hand over driver data en masse as FMCSA and DHS is currently asking it to do, it would not have agreed to participate in CDLIS.

DECLARATION OF SHENNA BELLOWS

I declare under penalty of perjury under the laws of the United States that, to the best of my knowledge, the foregoing is true and correct.

Executed on August 12, 2026, in Augusta, Maine.

Shenna Bellows
Secretary of State

12

DECLARATION OF SHENNA BELLOWS

**EXHIBIT 1**

END OF DOCUMENT

On August 11, 2026, at 12:17 pm SA Matthew Kyle served subpoena # HSI-DC-2026-081167-001 to the AAMVA, In the care of Charla Young, at the AAMVA office at 4250 Fairfax Drive, Suite 1000, Arlington, VA 22203.

x _Charla Young_    8/11/26

x _Matt Kyle_    8/11/26

U.S. Immigration
and Customs
Enforcement

DHS Form I-138 (6/09) - Page 4 of 4



*Homeland Security Investigations*
*Office of the Special Agent in Charge*

**U.S. Department of Homeland Security**
12200 Sunrise Valley Drive
Reston, VA 20191

August 11, 2026

Ian M. Grossman, President and CEO
American Association of Motor Vehicle Administrators
4250 Fairfax Drive., Suite 1000
Arlington, VA 22203

Mr. Grossman,

Homeland Security Investigations (HSI) is investigating illegal practices in commercial driver's license (CDL) schools, identifying and addressing criminal fraud regarding the issuance of CDLs to illegal aliens, and conducting civil immigration enforcement. HSI leverages its broad authorities to conduct investigations and enforcement actions that protect the American people.

Among other authorities, HSI special agents are immigration officers authorized under section 287 of the Immigration and Nationality Act (INA), 8 U.S.C. § 1357, to perform duties relating to the enforcement of the immigration laws of the United States. Immigration officers have the authority to issue an administrative immigration enforcement subpoena to require "the attendance and testimony of witnesses before immigration officers and the production of books, papers, and documents relating to the privilege of any person to enter, reenter, reside in, or pass through the United States or concerning any matter which is material and relevant to the enforcement of [the Immigration and Nationality Act] . . . ." INA § 235(d)(4)(A), 8 U.S.C. § 1225(d)(4)(A). Immigration enforcement subpoenas may be used in criminal or civil investigations. 8 C.F.R. § 287.4(a)(1). Failure to comply with this subpoena will render the American Association of Motor Vehicle Administrators liable to proceedings in the district court of the United States to enforce obedience to the requirements of this subpoena, and to punish default or disobedience. INA § 235(d)(4)(B), 8 U.S.C. § 1225(d)(4)(B).

Please see the enclosed subpoena detailing the specific records requested pursuant to the above authorities, with a requested response date of August 17, 2026. We appreciate your attention to this matter.

Sincerely,

Eric Weindorf
Special Agent in Charge



*Homeland Security Investigations*
*Office of the Special Agent in Charge*

**U.S. Department of Homeland Security**
SAC Washington, D.C.
12200 Sunrise Valley Drive
Reston, VA

# Cover Sheet

| | | | |
|---|---|---|---|
| **To:** | Ian M. Grossman, President & CEO American Association of Motor Vehicle Administrators 4250 Fairfax Dr Ste 1000 Arlington, Virginia 22203 United States | **Date:** | 8/11/2026 |
| | | **Service Methods:** | Hard Copy Only |
| | | **Carrier Fax:** | |
| | | **Carrier Email:** | |
| | | **Agent Phone:** | (703) 424-6008 |
| | | **Agent Email:** | Matthew.R.Kyle@hsi.dhs.gov |
| **From:** | Matthew Kyle | | |

☐ Urgent        ☒ Action        ☐ Concurrence        ☐ FYI

**Comments:**

Attached is subpoena/summons #: HSI-DC-2026-081167-001

Please respond by 8/17/2026 8:00 AM Eastern

Please send response to SA Matthew Kyle at matthew.r.kyle@hsi.dhs.gov.

U.S. Immigration
and Customs
Enforcement

DHS Form I-138 (6/09) - Page 1 of 4

| 1. To (Name, Address, City, State, Zip Code)<br>Ian M. Grossman, President & CEO<br>American Association of Motor Vehicle Administrators<br>4250 Fairfax Dr Ste 1000<br>Arlington, Virginia 22203<br>United States | DEPARTMENT OF HOMELAND SECURITY<br><br>**IMMIGRATION ENFORCEMENT**<br>**SUBPOENA**<br><br>To Appear and/or Produce Records<br>8 U.S.C. § 1225(d), 8 C.F.R § 287.4 |
|---|---|

Summons Number: HSI-DC-2026-081167-001

**2.** In Reference To

_____(Title of Proceeding)_____    _____(File Number, if Applicable)_____

By the service of this summons upon you, **YOU ARE HEREBY SUMMONED AND REQUIRED TO:**

| (A) | ☐ | **APPEAR** before the U.S. Customs and Border Protection (CBP), U.S. Immigration and Customs Enforcement (ICE), or U.S. Citizenship and Immigration Services (USCIS) Official names in Block 3 at the place, date, and time specified, to testify and give information relating to the matter indicated in Block 2. |
|---|---|---|
| (B) | ☒ | **PRODUCE** the records (books, papers, or other documents) indicated in Block 4, to the CBP, ICE, or USCIS official named in Block 3 at the place, date, and time specified. |

Your testimony and/or production of the indicated records is required in connection with an investigation or inquiry relating to the enforcement of U.S. immigration laws. Failure to comply with this subpoena may subject you to an order of contempt by a federal District Court, as provided by 8 U.S.C. § 1225(d)(4)(B).

| 3. (A) CBP Officer or ICE Special Agent | | | (B) Date and Time |
|---|---|---|---|
| Name<br>Title<br>Address | Matthew Kyle<br>Criminal Investigator<br>12200 Sunrise Valley Dr<br>Reston, VA 20191<br>United States | Telephone<br><br>(703) 424-6008<br>Fax | 8/17/2026 8:00 AM Eastern |

4. Records required to be produced for inspection

Please see attached continuation page.

| | 5. Authorized Official |
|---|---|
| <br><br><br>If you have any questions regarding this subpoena, contact the CBP, ICE, or USCIS Official Identified in Block3. | C̓ₚₒₓ<br><br>(Signature)<br><br>Christopher Dockx<br><br>(Printed Name)<br><br>Assistant Special Agent in Charge (Acting)<br><br>(Title)<br><br>8/11/2026 10:14 AM Eastern<br><br>(Date) |

Digitally Signed by: 'E=Title-IIISupport@ice.dhs.gov, CN=Homeland Security Investigations, O=Homeland Security Invest
Date: 2026.08.11 14:15:05 +00:00

 **U.S. Immigration and Customs Enforcement**

DHS Form I-138 (6/09) - Page 2 of 4

| 1. | To (Name, Address, City, State, Zip Code)<br>Ian M. Grossman, President & CEO<br>American Association of Motor Vehicle Administrators<br>4250 Fairfax Dr Ste 1000<br>Arlington, Virginia 22203<br>United States | DEPARTMENT OF HOMELAND SECURITY<br><br>**IMMIGRATION ENFORCEMENT<br>SUBPOENA (Continuation)**<br><br>To Appear and/or Produce Records<br>8 U.S.C. § 1225(d), 8 C.F.R § 287.4 |

Summons Number: HSI-DC-2026-081167-001

3. Records required to be produced for inspection (continued)

The following applies if checked.

| ☐ | **Child Exploitation**: This subpoena is in regard to an investigation involving Child Exploitation and/or transmission of Child Pornography via the internet. Please do not disclose/notify the user of the issuance of this subpoena. Disclosure to the user could impede an investigation or obstruct justice. |

Pursuant to an ongoing investigation by the Department of Homeland Security, Homeland Security Investigations, please provide all individual pointers found within the Commercial Driver's License Information System (CDLIS) within the last 5 years:
• Driver Name
• Date of Birth
• State of Record
• License Number
• Social Security Number (If available. If not, please provide date when this data was removed from records retained by American Association of Motor Vehicle Administrators (AAMVA).

**Method of Response:**

Preferred:

Return the requested records in an accessible data file format such as ".XLS", ".CSV", ".TXT", or ".PDF". The data file(s) should be delivered via e-mail to: Criminal Investigator Matthew Kyle

NOTE: The ICE e-mail system limits incoming messages containing file attachments to 10 MB. For larger files send the summons response in multiple e-mail messages.

Alternates:

The records should be delivered to Criminal Investigator Matthew Kyle at U.S. Immigration and Customs Enforcement: 12200 Sunrise Valley Dr , Reston, VA, 20191

If you have questions, please contact Criminal Investigator Matthew Kyle at (703) 424-6008.

*You are requested not to disclose the existence of this summons for an indefinite period of time. Any such disclosure will impede the investigation and thereby interfere with the enforcement of federal law.*

 **U.S. Immigration and Customs Enforcement**

DHS Form I-138 (6/09) - Page 3 of 4

END OF DOCUMENT

 U.S. Immigration
and Customs
Enforcement

DHS Form I-138 (6/09) - Page 4 of 4