**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

|  |  |
|---|---|
| STATE OF ILLINOIS; DISTRICT OF COLUMBIA; STATE OF CALIFORNIA; COMMONWEALTH OF VIRGINIA; STATE OF ARIZONA; STATE OF COLORADO; STATE OF CONNECTICUT; STATE OF DELAWARE; STATE OF HAWAI'I; STATE OF MAINE; STATE OF MARYLAND; COMMONWEALTH OF MASSACHUSETTS; STATE OF MICHIGAN; STATE OF MINNESOTA; STATE OF NEVADA; STATE OF NEW JERSEY; STATE OF NEW MEXICO; STATE OF NEW YORK; STATE OF OREGON; Governor of the COMMONWEALTH OF PENNSYLVANIA; STATE OF VERMONT; STATE OF WASHINGTON; STATE OF WISCONSIN; | No. 1:26-mc-19 |
| *Movants*, | |
| v. | |
| UNITED STATES DEPARTMENT OF HOMELAND SECURITY, | |
| *Respondent*. | |

**DECLARATION OF JASEN CATALFAMO**

## <u>DECLARATION OF JASEN CATALFAMO</u>

I, Jasen Catalfamo, declare under penalty of perjury pursuant to 28 U.S.C. § 1746, as follows:

1.  I am a resident of the State of New York. I am over the age of 18, competent to testify as to the facts herein, and I testify based on personal knowledge, records kept in the ordinary course of business at the New York State Department of Motor Vehicles ("NYSDMV"), and information I learned from NYSDMV personnel whose work I rely upon and who have assisted me in gathering this information from our institution.

2.  I am currently employed by the NYSDMV as Director of Compliance, Vehicle Safety and Driver Licensing.  I have held that position since July 2024. My responsibilities include general oversight of NYSDMV's Commercial Driver's License Program and compliance with state and federal regulations.

3.  As the Director of Compliance, Vehicle Safety and Driver Licensing, I am familiar with the processes for issuing and renewing commercial driver's licenses in the State of New York, the requirements for doing so under federal and New York law, and the Annual Program Review conducted by the Federal Motor Carrier Safety Administration (FMCSA). I make this declaration as a representative of NYSDMV, in part based on NYSDMV business records and in part based on my personal knowledge and experience, as well as representations made by NYSDMV staff as to commercial driver's license/commercial learner's permit program requirements. In these capacities, I am familiar with, and if called upon to do so, would be competent to testify as to the facts and circumstances set forth herein.

4.  In New York, NYSDMV is the state driver licensing agency (SDLA) and has powers and duties relating to issuing and renewing both commercial drivers' licenses (CDLs) and non-commercial drivers' licenses. (See, for example, Vehicle and Traffic Law §§ 200, 501-518; see also, 15 N.Y.C.R.R. Part 3.) Among other things, NYSDMV is responsible for verifying each drivers' license applicant's legal eligibility and medical fitness, identifying and disciplining problem drivers, and protecting the privacy of drivers' personal information.

DECLARATION OF JASEN CATALFAMO

**New York's Management of Driver Licensing**

5.      NYSDMV is responsible for issuing and renewing commercial driver's licenses (CDLs) and personal driver's licenses (PDLs) to residents of New York.

6.      As part of New York's commitment to traffic safety, NYSDMV follows stringent procedures to ensure that drivers do not receive a license unless they can safely operate a vehicle and observe all traffic laws. In pursuit of that goal, and in accordance with state and federal laws and regulations, NYSDMV administers driving tests, assesses applicants' medical fitness, checks to ensure that each applicant is not the holder of a driver's license from any other state, and checks each applicant's driving history to ensure that the applicant has not been subject to discipline or had their license revoked. For CDLs, NYSDMV refers to federal databases, along with other sources, to verify the applicant's lawful immigration status.

7.      To comply with our legal obligations and ensure that each driver has a clean record, it is necessary for NYSDMV to have a means of checking each driver's history, not only in New York, but in other states where the applicant may have held a license.

8.      For CDLs, this check is conducted by, among other things, confirming an applicant's status in a database called the Commercial Driver's License Information System (CDLIS).

**The Commercial Driver's License Information System (CDLIS)**

9.      CDLIS is a database that contains driver records owned and maintained by the states. It operates as a clearinghouse where states can assist one another in verifying the identity and history of individual CDL applicants. CDLIS is operated on behalf of the states as a cooperative endeavor by the American Association of Motor Vehicle Administrators (AAMVA), a trade association for SDLAs, of which all states and some foreign jurisdictions are members.

10.     CDLIS does not contain a driver's full record. Rather, CDLIS contains a "Master Pointer Record" (MPR) for each CDL holder in the United States, which consists of each driver's: state of record, driver license number, name, date of birth, social security number (SSN), sex, the date and time the driver was added to CDLIS, the date and time the record was last updated, and indicators showing whether a change in the state of record is in progress, and whether the number in the SSN field is an SSN, a substitute SSN, or a pseudo SSN.

DECLARATION OF JASEN CATALFAMO

11.     If NYSDMV queries CDLIS and finds that an applicant has a Master Pointer Record, NYSDMV would then send the identified state of record for that driver a request for the driver's full history, called a "driver record" or "Driver History Record" (DHR) which the state of record would provide directly to the requesting state. Similarly, if another state queries CDLIS and finds a Master Pointer Record for a driver licensed in New York, NYSDMV would send that driver's record to the requesting state.

12.     To query CDLIS, a user must know either the driver's name and date of birth, the driver's license number, or the driver's SSN. Users cannot conduct indiscriminate batch searches, such as searching for all drivers born in 1987, or all drivers with the last name "Smith."

13.     As stated above, the data in CDLIS is owned and maintained by the states. NYSDMV has the power to add, delete, or change its own records maintained in CDLIS—and regularly does so, to ensure that our data remains accurate and up-to-date. Neither AAMVA nor the Federal Motor Carrier Safety Administration (FMCSA), on the other hand, has any power to make additions, deletions, or changes to New York's CDLIS data.

14.     Before issuing a CDL, New York, like all states, is required to use CDLIS to determine whether an applicant for a CDL already holds one, whether his or her license has been disqualified, and whether the applicant is disqualified from operating a motor vehicle. NYSDMV usually queries CDLIS approximately 30,000 times per day.

15.     NYSDMV has participated in and relied on CDLIS to operate its CDL program since first becoming operational in 1989. Even if we were not legally required to do so, we would use CDLIS or some other system like it in order to serve our public safety mission: knowing whether an applicant has a history of dangerous or unlawful driving is relevant to determining the applicant's fitness for a license and, in turn, to fulfilling NYSDMV's public safety mission. If CDLIS were to shut down, particularly on short notice, it would be a major impediment to the operation of our CDL program. New York and other states would have to develop a replacement system, which would be extraordinarily costly, if possible at all.

16.     NYSDMV also queries CDLIS before issuing a personal driver's license. Thus, our operation of our PDL program would also be impaired by the loss of CDLIS.

DECLARATION OF JASEN CATALFAMO

17.    NYSDMV participates in CDLIS pursuant to a contract with AAMVA. Attached as Exhibit A is a true and correct copy of New York's CDLIS contract with AAMVA.

18.    In addition to CDLIS, AAMVA also operates other critical programs that NYSDMV uses.  For example, AAMVA operates the Problem Driver Pointer System ("PDPS"). PDPS allows states to search the National Driver Registry ("NDR"), which contains information on problem drivers. By carrying out a PDPS search, NYSDMV obtains information that directs them to the jurisdiction that has a full record of a driver's history.  Based on this information, NYSDMV can determine whether an applicant for a driver's license is eligible.

19.    Like CDLIS, PDPS was created by statute and is a function of the National Highway Transportation Safety Administration ("NHTSA").

20.    NYSDMV participates in the following AAMVA operated systems: State to State (S2S) Verification Service, Commercial Skills Test Information Management System (CSTIMS), Driver's License Data Verification (DLDV), Help America Vote Verification (HAVV), National Motor Vehicle Title Information System (NMVTIS), Social Security Online Verification (SSOLV), U.S. Citizenship and Immigration Service (SAVE), U.S. Passport Verification Service (USPVS).

21.    NYSDMV queries at least one AAMVA system every time an individual applies for a driver's license.

## FMCSA's Demand for CDLIS Data

22.    On July 27, 2026, NYSDMV learned that FMCSA has demanded that AAMVA turn over to FMCSA the entire contents of CDLIS, including New York's records. AAMVA e-mailed NYSDMV a letter dated that day notifying NYSDMV of FMCSA's demand and AAMVA's intent to comply with it.

23.    I am unaware of FMCSA or any other federal agency ever previously requesting or demanding that AAMVA turn over the contents of CDLIS or any other database.

24.    I understand that FMCSA has asserted that it needs this data so that it can verify CDL validity and conduct motor carrier safety assessments. As described above, NYSDMV already carries out those functions, as is typical for state agencies, in accordance with federal and state statutes and regulations.

DECLARATION OF JASEN CATALFAMO

25. I also understand that FMCSA has asserted that, once it obtains this data, it could lawfully share it with any other federal agency for use in carrying out that agency's functions. I am not aware of any data-security protections that would ensure the security and confidentiality of this data once it is in the hands of either FMCSA or any other agency.

26. NYSDMV's concerns about redisclosure for prohibited uses are not merely speculative. On August 7, 2026, NYSDMV learned that the federal Department of Homeland Security (DHS) personally served upon AAMVA an "Immigration Enforcement Subpoena" calling for production of exactly the same information as FMCSA demanded. The stated purpose, according to AAMVA, "is production of documents 'in connection with an investigation or inquiry relating to the enforcement of U.S. immigration laws.'" AAMVA further reported that "FMCSA staff separately indicated via email that FMCSA and DHS had coordinated on their data demands and that the subpoena would be withdrawn due to AAMVA's efforts to cooperate with FMCSA." The timing of the DHS subpoena and the communication from FMCSA conceding coordination with DHS, as well as the knowledge that the DHS subpoena would be withdrawn, shows that the FMCSA demand is being used to obtain the data for federal immigration enforcement.

### Irreparable Harm of Disclosure to FMCSA

27. FMCSA's demand seeks New York's proprietary and confidential records and data.

28. Once New York's data is in FMCSA's hands, New York would lose control and oversight of its confidential records. To my knowledge, FMCSA has not made any commitments to AAMVA that it will maintain the confidentiality of this data; to the contrary, it has affirmatively stated that it is authorized to redisclose it to any other federal agency. And even if FMCSA made promises to AAMVA regarding the security and/or privacy of this data, New York would not be in a position to enforce those promises, and these new records, which would be federal and not state records, could be used for purposes that violate our state law and regulations regarding the confidentiality of information.

29. In particular, NYSDMV understands itself to be bound by New York laws requiring the protection of the privacy and maintenance of the confidentiality of driver information, as well as limitations on the scope, types of recipients, circumstances in which, and purposes for which it may

DECLARATION OF JASEN CATALFAMO

be redisclosed. Handing over New York's proprietary and confidential information to FMCSA is incompatible with those obligations.

30.   In addition to important New York State-specific legal limits, New York's agreement with AAMVA includes provisions requiring AAMVA to follow New York's requirements in regard to data security and confidentiality.

31.   Moreover, if the data were turned over to FMCSA, New York would not be able to update the data or ensure that it is accurate, creating the risk that out-of-date or erroneous data attributed to New York could form the basis or justification for federal action.

32.   Finally, residents of New York entrust the state with their personal data when they apply for a commercial driver's license.  That trust would be destroyed if the data is turned over to FMCSA without controls and without a clear statement of FMCSA's purpose in seeking it.

33.   A readily foreseeable result of this breach of trust is that fewer people will seek CDLs from New York. This means New York will lose revenue, as each applicant for a CDL must pay fees ranging between $214.50 and $230.50.

34.   There is also an acute risk that some individuals who are concerned about broadly disclosing their personal information to the federal government—such as individuals who are lawfully qualified to obtain a CDL but are part of mixed-status immigration families—may avoid the CDL process entirely and attempt to drive commercial motor vehicles without a license.  If that occurs in even a small number of cases, it would pose grave public-safety risks, as states would not be able to identify the drivers of those motor vehicles or ensure that they are properly qualified to drive commercial motor vehicles.

### **New York would be harmed if AAMVA's programs were impaired**

35.   I understand that FMCSA has threatened to terminate all of its funding to and contracts with AAMVA, including the funding that provides for the upkeep of CDLIS.

36.   New York would be seriously harmed if FMCSA carried out those threats.

37.   As stated above, NYSDMV heavily relies on CDLIS, the PDPS, and other resources and services operated by AAMVA. Disruption or elimination of the above-described systems and services would threaten nearly every aspect of NYSDMV's operations, including driver license and

registration issuance, identity verification, Social Security verification, document authentication, lawful status verification, voter registration, compliance with federal laws governing CDL programs and REAL ID issuance, and cooperation with other states.  In addition, AAMVA provides several other helpful services to jurisdictions, including website resources and white papers, the capacity to initiate, conduct, and participate in jurisdictional surveys, podcasts on various topics of interest; newsletters advising of current developments, trainings encompassing nearly every role and responsibility of licensing authorities, and conferences at which states engage in beneficial discussions of best practices, exchanges of information, and effective solutions to common issues.

38.    In particular, without an effective, functioning, and up-to-date CDLIS, NYSDMV may not be able to issue new CDLs or renew existing ones in compliance with federal law and regulations. This inability to comply with federal requirements could, in turn, result in future withholdings of federal highway funds or, possibly even  decertification of the State's CDL program.  At minimum, decertification would deprive the State of its role in overseeing the safety and training of commercial drivers who operate in New York, result in lost revenues to the State, and impose significant burdens on the approximately 17,992 New York CLP holders and 489,908 New York CDL holders in the State, who would need another source for their testing, issuance, renewals, and endorsements.  Even if those laws and regulations did not apply, the security and integrity of NYSDMV's CDL program would be severely undermined in the absence of a functioning CDLIS. New York would be harmed by losing access to an important public safety resource that helps keep unsafe drivers off of New York's, and the nation's, roads.

**NYSDMV participated in CDLIS on the understanding that its records would be kept secure**

39.    I understand that New York's participation in the CDLIS system is a condition to receiving certain federal highway funds.

40.    It has never been New York's understanding that FMCSA or any other federal agency has lawful authority to obtain the contents of CDLIS, nor that granting FMCSA the right to obtain and redisclose New York's records was a condition of participation in CDLIS

41.    New York has relied on the security and confidentiality of CDLIS records in designing its own information systems, in establishing practices relating to the maintenance of such records, and

7

DECLARATION OF JASEN CATALFAMO

in notifying applicants for CDLs about how their information would be used and shared. CDLIS records contain sensitive personally identifiable information that could be misused for identity theft, fraud, unauthorized profiling, or other harmful purposes if disclosed.  New York has therefore designed its systems and practices around limiting access and use.

42.    If FMCSA is able to obtain and redisclose New York's records whenever it wishes, New York will need to alter its practices.  Among other things, New York will need to revise the assurances of confidentiality it provides to CDL applicants, which will require the expenditure of substantial state resources. Broader redisclosure would increase the number of entities and systems handling the information, expanding the risk of unauthorized access, misuse, security incidents, and data breaches. It would also limit New York's ability to determine, monitor, and accurately represent how its records are subsequently used, protected, and further disclosed.

43.    If NYSDMV had been aware that those funds were conditioned on having to hand over driver data en masse as FMCSA is currently asking it to do, it would not have agreed to participate in CDLIS.

* * *

8

I declare under penalty of perjury under the laws of the United States that, to the best of my knowledge, the foregoing is true and correct.

Executed on August 10, 2026, in Albany, New York.

_____
JASEN CATALFAMO
DIRECTOR OF COMPLIANCE, VEHICLE SAFETY
AND DRIVER LICENSING
NEW YORK STATE DEPARTMENT OF MOTOR
VEHICLES

9

# Exhibit C

Contract #C000708
23000

## CONTRACT FOR AAMVA SERVICES

Agreement made this        day of                , 2011, between the New York State Department of Motor Vehicles, 6 Empire State Plaza, Contract Administration, Room 120B, Albany, New York 12228 (hereinafter referred to as the "Subscriber" or "DMV" or the "Department") and the American Association of Motor Vehicle Administrators, Inc., 4301 Wilson Boulevard, Suite 400, Arlington, Virginia 22203 ("Contractor" or "AAMVA").

RECITALS

The Insurance Information & Enforcement System (IIES), established by Chapter 678 of the Laws of 1977, and amended by Chapter 509 of the Laws of 1998, requires electronic communication between insurance companies and DMV, employing a standard ANSI ASCX12-811 electronic data interchange.

AAMVA has worked with the Federal Highway Administration to create a nationwide electronic data interchange for use by subscribers.

DMV wishes to subscribe for the use of the AAMVA electronic data interchange for communication between DMV and insurance companies that are trading partners with DMV.

## INDEX OF APPENDICES, AND FORMS TO BE COMPLETED BY CONTRACTOR:

| | |
|---|---|
| Appendix-A: Standard Clauses for All New York State Contracts | Page 13 |
| Appendix-B: Account NYMST- NYDMV625 Service | Page 20 |
| Appendix-C: Addendum | Page 21 |
| Appendix-D: Information Protective Measures Table | Page 31 |
| Appendix-E: State of New York Procurement Lobbying Policy and Procedures | Page 33 |
|     Form-C: Affirmation | Page 39 |
|     Form-D: Disclosure and Certification | Page 40 |
| Appendix-F: State Finance Laws §§ 139-j & 139-k | Page 41 |
| Appendix-G: Form ST-220-CA | Page 52 |
| Appendix-H: Form ST-220-TD | Page 54 |

**PARAGRAPH HEADINGS:** Paragraph headings contained in this Agreement are for convenience only and shall not be considered for any purpose in governing, limiting, modifying, construing or affecting the provisions of this Agreement, and shall not otherwise be given any legal effect.

Contract #C000708
23000

## SECTION 1:  GENERAL INFORMATION

### 1.1 Term:

This term of this Contract shall begin on June 11, 2010, subject to the approval of the Office of the Attorney General of the State of New York (AG) and the Office of the Comptroller of the State of New York (OSC), and shall expire five (5) years thereafter.

The parties shall have the option to renew this Contract, by mutual consent, and upon approval by the AG and OSC, for periods not to exceed a cumulative total of five (5) additional years.

### 1. 2 Compensation:

DMV agrees to pay for the use of AAMVAnet™ and the services on the basis of DMV's actual utilization of AAMVAnet™ and the services and/or applications in accordance with AAMVA's prevailing charges set forth in Appendix-B. DMV's actual use shall be as reflected on the records maintained by or under direction of AAMVA. The total cost of this agreement shall not exceed one million six hundred thousand dollars ($1,600,000.00) for the five year term.

DMV shall make monthly periodic payments for services rendered, as follows: (1) subject to receipt of an appropriate invoice and (2) subject to the regular processing of such payments by the State, in accordance with the NYS Finance Law. All fees are subject to change upon at least thirty (30) days written notice from AAMVA to DMV, and upon approval by AG and OSC.

### 1.3 Electronic Payment of Contractor's Billing Invoices:

AAMVA must provide complete and accurate billing invoices to DMV in order to receive payment. Billing invoices submitted to DMV must contain all information and supporting documentation required under the terms of this Contract, or as may be required by DMV and OSC.

DMV shall make electronic payment for invoices submitted by AAMVA. Payment by paper check will only be made, in the Commissioner's sole discretion, due to extenuating circumstances.

Such electronic payment shall be made in accordance with the State's procedures and practices.AAMVA shall comply with the OSC's procedures for the authorization of electronic payments.

Authorization forms are available at OSC's website, at: www.osc.state.ny.us/epay/index.htm; or by email, at epunit@osc.state.ny.us ; or by telephone, at 518-474-4032.

AAMVA acknowledges that it will not receive payment for any invoices submitted under this Contract if it fails to strictly comply with the OSC's electronic payment procedures,

Contract #C000708
23000

except where the Commissioner has expressly authorized payment by paper check as set forth above.

**1.4 Conflict of Terms:**
This Agreement incorporates the terms of the following documents. Any conflicts between the terms contained in the main body of this Agreement and the terms of such other documents shall be resolved in the following order of precedence, with Appendix-A being highest in order of priority:

a. **Appendix-A** (Standard Clauses for all NYS Contracts);
b. **Contract** including Appendices B, C, D, E, F, G and H; (except Appendix-A which shall, in all cases, take precedence);

**1.5 Notices:**
All notices required hereunder must be made in writing, and may be transmitted by any of the following methods:

(a) via certified or registered United States mail, return receipt requested;
(b) by facsimile transmission;
(c) by personal delivery;
(d) by expedited delivery service; or
(e) by e-mail.

Notices must be sent to the following:

New York State Department of Motor Vehicles
Name:  Maureen Younkin
Title:   Associate Director, Procurement Services
Address: 6 Empire State Plaza, Room120B
            Albany, NY  12228
Telephone Number: (518) 402-2441
Facsimile Number: (518) 486-4541
E-mail Address: Maureen.Younkin@dmv.ny.gov

American Association of Motor Vehicle Administrators
Name: Marc Saitta
Title: [Chief Financial Officer        ]
Address: 4301 Wilson Blvd, Suite 400,Arlington, VA 22203
Telephone Number: [(703) 908-5791        ]
Facsimile Number: [(703) 908-2851        ]
E-mail Address: [msaitta@aamva.org        ]

Notice shall be deemed to have been given upon receipt.

Each party must designate a specific employee to receive notices under this Agreement. The parties may also designate specific staff members who are responsible for responding to issues involving contract implementation and administration, billing, and resolving problems and disputes.

Contract #C000708
23000

## SECTION 2: CONTRACTOR AND SUBSCRIBER RESPONSIBILITIES

DMV wishes to purchase telecommunications services from AAMVA.

Upon acceptance of this Contract, AAMVA grants to DMV the right to utilize AAMVAnet™ with respect to such services as DMV elects in writing. DMV acknowledges that the right to use AAMVAnet™ permits DMV to use AAMVAnet™ to obtain access to such databases and other information systems to which DMV has separately been provided authorized access.

A service will conform to its description, however AAMVA does not warrant that any service will be free of interruption or error free. AAMVA will attempt to correct any deficiencies in services within a reasonable time and DMV agrees to permit AAMVA and its contractors to take all reasonable measures to restore service deficiencies.

### 2.1 Services:
DMV is responsible for the selection of, use of, and results obtained from AAMVA services. AAMVA shall not be responsible for programs, data, information or equipment provided by DMV, which DMV or other parties access over the network.

### 2.2 Additional Subscriber Responsibilities, Warranties, and Liability:
DMV agrees that it will comply with the requirements regarding, among other things, equipment, software, security, information transmitted over AAMVAnet™ , warranties, liability tenets, and other management or operational requirements provided in the AAMVAnet™ Subscriber Services Application Addendum ("Appendix-C").

### 2.3 Contractor Indemnification and Liability:
Contractor's obligation of indemnification and holding harmless specified hereunder shall survive the expiration of the Contract by termination or otherwise.

A. Contractor shall be solely responsible and answerable in damages for any and all accidents and/or injuries to persons (including death) or property arising out of or related to the services to be rendered by the Contractor or its subcontractors pursuant to this Agreement. The Contractor shall indemnify and hold harmless the State and its officers and employees from claims, suits, actions, damages and costs of every nature arising out of the provision of services pursuant to this Agreement.

B. Contractor is an independent contractor and may neither hold itself out nor claim to be an officer, employee or subdivision of the State nor make any claim, demand or application to or for any right based upon any different status.

C. Driver's Privacy Protection Act & New York State Information Security Breach and Notification Act: Contractor acknowledges that all DMV records containing personal information, as well as DMV-related processing information, is confidential and is the property of the Department and the State of New York, and should such information be used improperly, or become compromised the Contractor may be held liable for violating the federal Driver's Privacy Protection Act of 1994 (DPPA) (18 U.S.C. §2721,

Contract #C000708
23000

et seq.), and the New York State Information Security Breach and Notification Act (ISBNA) (General Business Law, §899-aa; State Technology Law, §208), and may be required to indemnify DMV for any such violation.

Contractor must report suspected or confirmed violations of the DPPA or ISBNA to the following, within one (1) business day of discovering any such violation:

> DMV Audit Services
> 6 Empire State Plaza, Room 321A
> Albany, NY 12228
> Tele: (518) 474-0881
> Fax: (518) 474-8358

(1) DPPA. A person who knowingly violates the DPPA shall be subject to criminal fines and liability for civil remedies. Contractor shall indemnify and hold harmless New York State, its employees and agents, from and against any claims, demands, loss, damage or expense related solely to a knowing violation of the DPPA committed by Contractor, its employees, officers, agents or sub-contractors. Contractor shall indemnify the Department and the State of New York even if Contractor did not have knowledge of such violation of the DPPA by its officers, employees, agents, or sub-contractors at the time such violation occurred.

(2) ISBNA. Contractor shall be responsible for complying with the provisions of the ISBNA with respect to any private information (as defined in the ISBNA) received by Contractor its officers, employees, agents, or sub-contractors. In the event of a breach of security, Contractor shall immediately commence an investigation, in cooperation with DMV, to determine the scope of the breach, and Contractor shall assist DMV in restoring the security of the related system in order to prevent any further breaches. Contractor shall notify DMV of any breach of security immediately following discovery of such breach.

Under the ISBNA, DMV is required to notify any individuals whose records have been accessed for unauthorized purposes from a system maintained by DMV.

In furtherance of the investigation of any breach of the ISBNA, the Contractor must receive written authorization from DMV prior to providing notice of such breach to any other entity. Contractor shall be responsible for all costs associated with providing notices required under the ISBNA. The Contract shall not impair the authority of the New York State Office of the Attorney General (OAG) to bring an action against Contractor to enforce the provisions of the ISBNA, or limit Contractor's liability for any violations of the ISBNA. Additional information concerning the ISBNA and the notification process is available at: http://www.cscic.state.ny.us/security/securitybreach.

**2.4 Directory:**
Unless DMV advises AAMVA in writing to the contrary within 30 days following AAMVA's acceptance of this Application, DMV authorizes AAMVA to include DMV's

5

name, contact information and other similar information in a directory of AAMVA subscribers. AAMVA reserves the right to produce and to determine the manner in which it will distribute such directory.

## SECTION 3: ADDITIONAL TERMS

### 3.1. Confidentiality:

AAMVA must safeguard the confidentiality of all DMV data, and infrastructure information, to which it has access under the terms of this Contract. AAMVA must promptly notify DMV if the confidentiality of DMV data is compromised at any time.

AAMVA acknowledges that all DMV data is confidential and the property of DMV and the State of New York. AAMVA shall comply with all federal and NYS laws, rules and regulations that pertain to any loss, misappropriation, compromise, or misuse of DMV data by AAMVA or its subcontractors, including, but not limited to, the Driver's Privacy Protection Act of 1994 (DPPA), the New York State Vehicle & Traffic Law (VTL), Commissioner's Rules and Regulations (15 NYCRR), and the Information Security Breach and Notification Act (ISBNA).

AAMVA shall be responsible for advising its personnel, who have access to confidential DMV data, of the criminal consequences for unauthorized access to, or use of, such data.

### 3.2 Appendix- A:

AAMVA shall comply with and be bound by the provisions of Appendix-A, "Standard Clauses for all New York State Contracts.

### 3.3 Assignment:

This agreement may only be assigned pursuant to the requirements of State Finance Law, Section 138. Assignment of the Contract, in whole or in part, shall not be permitted without the prior written approval of the Department, and subject to final approval by OSC. Only DMV's Contract Administration Unit may issue a valid and binding written approval on behalf of DMV for any such assignment. The Department is under no obligation to accept any assignment. Any unauthorized assignment of the Contract shall entitle the Department to terminate the Contract without incurring any penalty, liability, or being subject to other recourse by AAMVA in response to such termination. In the event that the Department agrees to an assignment of the Contract, an amendment to the Contract must be executed, subject to approval and execution by the Offices of the New York State Attorney General and State Comptroller.

### 3.4 Termination:

a. For Cause: The Commissioner of DMV may terminate this Contract, upon written notice to AAMVA, in the event that any material breach thereof remains uncured for more than thirty (30) days, or any other period specified by DMV. Such termination for cause shall be at AAMVA's expense in the event that AAMVA is incapable of performing its contractual obligations or meeting any requirements or qualifications set forth in this Contract, or for non-performance, or upon a determination that AAMVA is non-responsible or non-responsive. Such termination shall be upon

6

written notice to AAMVA. In such event, the Commissioner may complete the contractual requirements in any manner it deems advisable, and DMV may avail itself of all remedies provided by law.

**b.** For Convenience: This Contract may be terminated by DMV for convenience, at any time, upon thirty (30) days written notice (or other period specified) to AAMVA, without incurring any liability for breach of contract, or liability for payment of any charges beyond payment for conforming goods and/or services accepted by DMV up to and including the date of termination. AAMVA shall use due diligence, and shall provide any outstanding deliverables up to the date in which such termination shall be effective.

**c.** For Violation of the Sections 139-j and 139-k of the State Finance Law: The Commissioner reserves the right to terminate this Contract in the event it is found that the certification filed by AAMVA in accordance with Section 139-k of the State Finance Law was intentionally false or intentionally incomplete. Upon such finding, the Commissioner may exercise its termination right by providing written notification to AAMVA in accordance with the written notification terms of this Agreement.

**d.** Termination Without Prior Notice in the Event of a Security Breach: Notwithstanding the foregoing, DMV reserves the right to immediately terminate this Agreement in the best interests of the State, without providing prior notice of termination to AAMVA, in the event the Commissioner determines that a breach of security occurred or that a breach is imminent. In such event, DMV shall provide AAMVA with written notice of cancellation within a reasonable time.

## 3.5 Publicity:

Notwithstanding any provision to the contrary, no publicity or news releases pertaining to this procurement may be made without prior written approval and subsequent coordination of the Director of Communications, NYS Department of Motor Vehicles, Office of Communications, Room 411, 6 Empire State Plaza, Albany, NY 12228.

## 3.6 Amendment:

This Agreement may be amended to increase lease line connection capacity. Any amendment of the terms of the Agreement must be made in writing, signed by both parties and may be subject to approval by the Offices of the New York State Attorney General and State Comptroller.

## 3.7 Savings/ Force Majeure:

A force majeure occurrence is an event or effect that cannot be reasonably anticipated or controlled. Force majeure includes, but is not limited to, acts of nature, acts of war, acts of public enemies, strikes, fires, explosions, actions of the elements, floods, or other similar causes beyond the control of the Contractor or the DMV in the performance of the Contract which non-performance, by exercise of reasonable diligence, cannot be

prevented. Contractor shall provide the Commissioner with written notice of any force majeure occurrence as soon as the delay is known.

Neither the Contractor nor the DMV shall be liable to the other for any delay in or failure of performance under the Contract due to a force majeure occurrence. Any such delay in or failure of performance shall not constitute default or give rise to any liability for damages. The existence of such causes of such delay or failure shall extend the period for performance to such extent as determined by the Contractor and the Commissioner to be necessary to enable complete performance by the Contractor if reasonable diligence is exercised after the cause of delay or failure has been removed.

Notwithstanding the above, at the discretion of the Commissioner where the delay or failure will significantly impair the value of the Contract to the State, the Commissioner may:

a.  Accept allocated performance or deliveries from the Contractor. The Contractor, however, hereby agrees to grant preferential treatment to DMV with respect to Product subjected to allocation; and/or

b.  Purchase from other sources (without recourse to and by the Contractor for the costs and expenses thereof) to replace all or part of the Products or services which are the subject of the delay, which purchases may be deducted from the Contract quantities without penalty or liability to the State; or

c.  Terminate the Contract or the portion thereof which is subject to delays, and thereby discharge any unexecuted portion of the Contract or the relative part thereof.

In addition, the Commissioner reserves the right, in his/her sole discretion, to make an equitable adjustment in the Contract terms and/or pricing should extreme and unforeseen volatility in the marketplace affect pricing or the availability of supply. "Extreme and unforeseen volatility in the marketplace" is defined as market circumstances which meet the following criteria: (i) the volatility is due to causes outside the control of Contractor; (ii) the volatility affects the marketplace or industry, not just the particular Contract source of supply; (iii) the effect on pricing or availability of supply is substantial; and (iv) the volatility so affects Contractor's performance that continued performance of the Contract would result in a substantial loss.

### 3.8 Severability:

Should any one or more provision(s) of the Contract be termed illegal or unenforceable, then such provision(s) shall be adjusted to conform to the requirements for validity as declared at such time. If the provision(s) invalidated is of such a nature that it cannot be so adjusted, the provision shall be deemed deleted from the Contract as though such provision(s) had never been included therein. In either case, the remaining provisions of the Contract shall remain in effect.

Contract #C000708
23000

### 3.9 Right to Audit:

The Contractor shall maintain accurate records and accounts of services performed under the Contract and, as required by the Office of the State Comptroller or by the Department, shall furnish or make such records available for audit purposes. Contractor shall keep such records for at least six (6) years following the date that final payment is made.

### 3.10 State Finance Law §§139-j and 139-k:

The parties to this Agreement are bound by the provisions of New York State Finance Law.

State Finance Law §139-j prohibits lobbying in governmental procurements conducted by governmental entities (e.g., state agencies, the Legislature, the Unified Court System, and public authorities, including local industrial development agencies and local public benefit corporations).

State Finance Law §139-j requires, in the undertaking of a governmental procurement by DMV, that DMV designate a specific person or persons for each procurement who will be responsible for receiving and maintaining a record of communications with DMV concerning the procurement. Such person(s), hereafter referred to as the "designated contact(s)", are the persons with whom bidders and persons acting in their behalf are authorized to communicate during the portion of the procurement process known as the "restricted period". The restricted period begins upon publication of the first written notice of the procurement, and terminates upon final approval of the Contract by OSC.

DMV is required to conduct the procurement process in a manner that comports with State Finance Law, and the Ethics provisions of New York State Public Officers Law.

DMV employees identified in section 1.6 of this Contract are the "designated contacts" for the purpose of this procurement. Subject to certain statutory exceptions, Bidders (Offerers), or anyone acting on their behalf, may only communicate with such designated contact person(s) during the restricted period.

State Finance Law §139-j requires DMV to make a determination concerning the "responsibility" of the bidder to whom the Contract is proposed to be awarded. In the event that DMV finds that the Bidder knowingly and willfully violated such provision of State Finance Law, then DMV must determine that such bidder is "non-responsible". DMV may not award a Contract to a bidder who is deemed non-responsible. Any Contractor that knowingly and willfully violates such provision of State Finance Law, within four years of a prior violation, may be debarred from governmental procurements for a period of four years.

State Finance Law §139-k provides for disclosure of communications between Contractors and DMV. State Finance Law §139-k requires Contractors to disclose whether any government agency has previously deemed the Contractor to be "non-responsible". Contractors that fail to disclose prior findings of non-responsibility or

9

Contract #C000708
23000

intentionally provide false or incomplete information may be disqualified from award of a procurement Contract. State Finance Law §139-k requires DMV to maintain a record of persons who contact DMV employees about a procurement during the restricted period.

Communications with DMV by bidders, or anyone acting on their behalf, made during the restricted period, that constitute an attempt to improperly influence the procurement are prohibited, and may result in a finding that the Bidder/Offerer is non-responsible. Findings of non-responsibility result in the rejection of the Bidder for contract award. In the event of two findings of non-responsibility made by any governmental entity within a four year period, then such Bidder/Offerer will be deemed ineligible to submit a proposal on, or be awarded, any procurement contract for four years from the date of the second finding of non-responsibility.

New York State Finance Law §§ 139-j and 139-k are attached as Appendix-E. A summary of the Department's policy and procedures for implementing these sections of the State Finance Law is attached herein as Appendix-F. The required forms for the Bidder to complete and submit with its bid are attached as Forms "C" and "D" of Appendix-E.

### 3.11 Compliance with Laws:
In performing its obligations under this Contract, AAMVA shall comply with all applicable federal, state, and local statutes, ordinances, regulations, and rules, including, but not limited to, laws regulating the terms and conditions of employment, building and fire codes, zoning laws, privacy, public building requirements for use by the handicapped, and occupational safety and health rules.

### 3.12 Contractor Certification:
Contractor is required to complete and sign, under penalty of perjury, the "Contractor Certification Form", ST-220-TD (Appendix-H), in accordance with § 5-a of the NYS Tax Law. Contractor must also submit a copy of the Certificate of Authority, if available, for itself, any affiliates, any subcontractors and any affiliates of subcontractors required to register to collect state sales and compensating use tax.

Pursuant to Tax Law Section 5-a, Contractor is required to complete and sign, under penalty of perjury, the Contractor Certification Form ST-220-CA (Appendix-G) at time of contract execution.

Tax Law Section 5-a applies to all Agreements valued in excess of $100,000 for the sale of goods or services as defined in Article XI of the State Finance Law, and/or tangible personal property or taxable services as defined by the Tax Law.

The Department of Motor Vehicles is not authorized to address questions regarding the Tax Law or its interpretation. Any questions regarding the Law must be directed to the New York State Department of Taxation and Finance.

**A COMPLETED ST-220-CA MUST ACCOMPANY THE CONTRACT. IF**

10

Contract #C000708
23000

**REQUIRED, THE CONTRACTOR IS RESPONSIBLE FOR FILING THE ST-220-TD WITH THE NYS DEPARTMENT OF TAXATION & FINANCE.**

**3.13 Vendor Responsibility:**

Contractors are invited to file the required Vendor Responsibility Questionnaire online via the New York State VendRep System or may choose to complete and submit a paper questionnaire. To enroll in and use the New York State VendRep System, see the VendRep System Instructions available at www.osc.state.ny.us/vendrep or go directly to the VendRep System online at https://portal.osc.state.ny.us. For direct VendRep System user assistance, the OSC Help Desk may be reached at 866-370-4672 or 518-408-4672 or by email at helpdesk@osc.state.ny.us. Bidders opting to file a paper questionnaire can obtain the appropriate questionnaire from the VendRep website www.osc.state.ny.us/vendrep or may contact the DMV or the Office of the State Comptroller for a copy of the paper form.

DMV reserves the right to verify all information provided by the Contractor to whom an award of contract is made. DMV reserves the right to disqualify any contractor as "not responsible", in the event that the Contractor has intentionally provided false or incomplete information, or has intentionally failed to disclose pertinent information. DMV reserves the right to make further responsibility determinations at any time during the term of the Contract; and DMV will not award a contract to any contractor without evaluating that Contractor's Vendor Responsibility Questionnaire.

Contractor is invited to file the required Vendor Responsibility Questionnaire online via the New York State VendRep System or may choose to complete and submit a paper questionnaire. To enroll in and use the New York State VendRep System, see the VendRep System Instructions available at www.osc.state.ny.us/vendrep or go directly to the VendRep System online at https://portal.osc.state.ny.us. For direct VendRep System user assistance, the OSC Help Desk may be reached at 866-370-4672 or 518-408-4672 or by email at helpdesk@osc.state.ny.us. In the event that Contractor elects to file a paper questionnaire, Contractor can obtain the appropriate questionnaire from the VendRep website www.osc.state.ny.us/vendrep or may contact the DMV or the Office of the State Comptroller for a copy of the paper form.

DMV reserves the right to verify all information provided by the Contractor. DMV reserves the right to disqualify any contractor as "not responsible", in the event that the Contractor has intentionally provided false or incomplete information, or has intentionally failed to disclose pertinent information. DMV reserves the right to make further responsibility determinations at any time during the term of the Contract; and DMV will not award a contract to any contractor without evaluating that Contractor's Vendor Responsibility Questionnaire.

**3.14 Jurisdiction:**

All controversies concerning the Contract must be resolved by a court of competent jurisdiction in New York State.

11

Contract #C000708
23000

Agency Certification: Original copies of this signature page will be attached to all other exact copies of this contract.

| AMERICAN ASSOCIATION OF MOTOR VEHICLE ADMINISTRATORS. | NYS DEPARTMENT OF MOTOR VEHICLES |
|---|---|
| BY, _MMJM_ <br> (Please Sign Here) | BY, _Marnen Yamli_ <br> (Please Sign Here) |
| MARC SAITA <br> (Please Print Name) | <br> (Please Print Name) |
| CFO <br> (Title) | <br> (Title) |
| Date: 7 / 11 / 2011 <br> (mm/dd/yyyy) | Date: ___ / ___ / ___ <br> (mm/dd/yyyy) |
| **NYS ATTORNEY GENERAL** | **NYS OFFICE OF THE STATE COMPTROLLER** |
| BY, <br><br> APPROVED AS TO FORM <br> NYS ATTORNEY GENERAL <br><br> (Please Sign Here) <br> AUG - 3 2011 <br><br> (Please Print Name) LORRAINE I. REMO <br> PRINCIPAL ATTORNEY | BY, <br><br> (Please Sige Here) <br><br> (Please Print Name) **APPROVED** <br> **DEPT. OF AUDIT & CONTROL** <br> **SEP 06 2011** |
| (Title) | (Title) |
| Date: ___ / ___ / ___ <br> (mm/dd/yyyy) | Date: ___ / ___ **FOR THE STATE COMPTROLLER** <br> (mm/dd/yyyy) |

COMMONWEALTH OF VIRGINIA
~~STATE OF NEW YORK~~          )
                              ) s.s.:
COUNTY OF ARLINGTON           )

On the ___13___ day of ___JULY___ in the year 20_11_ before me personally came __MARC SAITTA__ to me known, who, being by me duly sworn, did depose and say that he/she/they reside(s) in 4301 WILSON BLVD, ARLINGTON VA (if the place of residence is in a city, include the street and street number, if any, thereof); that he/she/they is (are) the __CFO__ (president, or other officer, or director, or attorney in fact, duly appointed) of __AAMVA__ (name of corporation), the corporation described in and which executed the above instrument; and that he/she/they signed his/her/their name(s) thereto by authority of the board of directors of said corporation.

_Jann M. Kristiansen_
Notary Public

My Commission Expires: 12/31/2013
                        #132591

12

Contract #C000708
23000

## APPENDIX-A
## STANDARD CLAUSES FOR NEW YORK STATE CONTRACTS
(Revised, November, 2010)

**TABLE OF CONTENTS:**

1. Executory Clause
2. Non-Assignment Clause
3. Comptroller's Approval
4. Workers' Compensation Benefits
5. Non-Discrimination Requirements
6. Wage and Hours Provisions
7. Non-Collusive Bidding Certification
8. International Boycott Prohibition
9. Set-Off Rights
10. Records
11. Identifying Information and Privacy Notification
12. Equal Employment Opportunities For Minorities and Women
13. Conflicting Terms
14. Governing Law
15. Late Payment
16. No Arbitration
17. Service of Process
18. Prohibition on Purchase of Tropical Hardwoods
19. MacBride Fair Employment Principles
20. Omnibus Procurement Act of 1992
21. Reciprocity and Sanctions Provisions
22. Compliance with New York State Information
Security Breach and Notification Act
23. Compliance with Consultant Disclosure Law
24. Procurement Lobbying
25. Certification of Registration to Collect Sales and
Compensating Use Tax by Certain State Contractors,
Affiliates and Subcontractors

## STANDARD CLAUSES FOR NYS CONTRACTS

The parties to the attached contract, license, lease, amendment or other agreement of any kind (hereinafter, "the contract" or "this contract") agree to be bound by the following clauses which are hereby made a part of the contract (the word "Contractor" herein refers to any party other than the State, whether a contractor, licenser, licensee, lessor, lessee or any other party):

**1. EXECUTORY CLAUSE.** In accordance with Section 41 of the State Finance Law, the State shall have no liability under this contract to the Contractor or to anyone else beyond funds appropriated and available for this contract.

**2. NON-ASSIGNMENT CLAUSE.** In accordance with Section 138 of the State Finance Law, this contract may not be assigned by the Contractor or its right, title or interest therein assigned, transferred, conveyed, sublet or otherwise disposed of without the State's previous written consent, and attempts to do so are null and void. Notwithstanding the foregoing, such prior written consent of an assignment of a contract let pursuant to Article XI of the State Finance Law may be waived at the discretion of the contracting agency and with the concurrence of the State Comptroller where the original contract was subject to the State Comptroller's approval, where the assignment is due to a reorganization, merger or consolidation of the Contractor's business entity or enterprise. The State retains its right to approve an assignment and to require that any Contractor demonstrate its responsibility to do business with the State. The Contractor may,

13

however, assign its right to receive payments without the State's prior written consent unless this contract concerns Certificates of Participation pursuant to Article 5-A of the State Finance Law.

**3. COMPTROLLER'S APPROVAL.** In accordance with Section 112 of the State Finance Law (or, if this contract is with the State University or City University of New York, Section 355 or Section 6218 of the Education Law), if this contract exceeds $50,000 (or the minimum thresholds agreed to by the Office of the State Comptroller for certain S.U.N.Y. and C.U.N.Y. contracts), or if this is an amendment for any amount to a contract which, as so amended, exceeds said statutory amount, or if, by this contract, the State agrees to give something other than money when the value or reasonably estimated value of such consideration exceeds $10,000, it shall not be valid, effective or binding upon the State until it has been approved by the State Comptroller and filed in his office. Comptroller's approval of contracts let by the Office of General Services is required when such contracts exceed $85,000 (State Finance Law Section 163.6.a).

**4. WORKERS' COMPENSATION BENEFITS.** In accordance with Section 142 of the State Finance Law, this contract shall be void and of no force and effect unless the Contractor shall provide and maintain coverage during the life of this contract for the benefit of such employees as are required to be covered by the provisions of the Workers' Compensation Law.

**5. NON-DISCRIMINATION REQUIREMENTS.** To the extent required by Article 15 of the Executive Law (also known as the Human Rights Law) and all other State and Federal statutory and constitutional non-discrimination provisions, the Contractor will not discriminate against any employee or applicant for employment because of race, creed, color, sex, national origin, sexual orientation, age, disability, genetic predisposition or carrier status, or marital status. Furthermore, in accordance with Section 220-e of the Labor Law, if this is a contract for the construction, alteration or repair of any public building or public work or for the manufacture, sale or distribution of materials, equipment or supplies, and to the extent that this contract shall be performed within the State of New York, Contractor agrees that neither it nor its subcontractors shall, by reason of race, creed, color, disability, sex, or national origin: (a) discriminate in hiring against any New York State citizen who is qualified and available to perform the work; or (b) discriminate against or intimidate any employee hired for the performance of work under this contract. If this is a building service contract as defined in Section 230 of the Labor Law, then, in accordance with Section 239 thereof, Contractor agrees that neither it nor its subcontractors shall by reason of race, creed, color, national origin, age, sex or disability: (a) discriminate in hiring against any New York State citizen who is qualified and available to perform the work; or (b) discriminate against or intimidate any employee hired for the performance of work under this contract. Contractor is subject to fines of $50.00 per person per day for any violation of Section 220-e or Section 239 as well as possible termination of this contract and forfeiture of all moneys due hereunder for a second or subsequent violation.

**6. WAGE AND HOURS PROVISIONS.** If this is a public work contract covered by Article 8 of the Labor Law or a building service contract covered by Article 9 thereof, neither Contractor's employees nor the employees of its subcontractors may be required or permitted to work more than the number of hours or days stated in said statutes, except as otherwise provided in the Labor Law and as set forth in prevailing wage and supplement schedules issued by the State Labor Department. Furthermore, Contractor and its subcontractors must pay at least the prevailing wage rate and pay or provide the prevailing supplements, including the premium rates for overtime pay, as determined by the State Labor Department in accordance with the Labor Law. Additionally, effective April 28, 2008, if this is a public work contract covered by Article 8 of the Labor Law, the Contractor understands and agrees that the filing of payrolls in a manner consistent with Subdivision 3-a of Section 220 of the Labor Law shall be a condition precedent to payment by the State of any State approved sums due and owing for work done upon the project.

**7. NON-COLLUSIVE BIDDING CERTIFICATION.** In accordance with Section 139-d of the State Finance Law, if this contract was awarded based upon the submission of bids, Contractor affirms, under penalty of perjury, that its bid was arrived at independently and without collusion

Contract #C000708
23000

aimed at restricting competition. Contractor further affirms that, at the time Contractor submitted its bid, an authorized and responsible person executed and delivered to the State a non-collusive bidding certification on Contractor's behalf.

**8. INTERNATIONAL BOYCOTT PROHIBITION.** In accordance with Section 220-f of the Labor Law and Section 139-h of the State Finance Law, if this contract exceeds $5,000, the Contractor agrees, as a material condition of the contract, that neither the Contractor nor any substantially owned or affiliated person, firm, partnership or corporation has participated, is participating, or shall participate in an international boycott in violation of the federal Export Administration Act of 1979 (50 USC App. Sections 2401 et seq.) or regulations thereunder. If such Contractor, or any of the aforesaid affiliates of Contractor, is convicted or is otherwise found to have violated said laws or regulations upon the final determination of the United States Commerce Department or any other appropriate agency of the United States subsequent to the contract's execution, such contract, amendment or modification thereto shall be rendered forfeit and void. The Contractor shall so notify the State Comptroller within five (5) business days of such conviction, determination or disposition of appeal (2NYCRR 105.4).

**9. SET-OFF RIGHTS.** The State shall have all of its common law, equitable and statutory rights of set-off. These rights shall include, but not be limited to, the State's option to withhold for the purposes of set-off any moneys due to the Contractor under this contract up to any amounts due and owing to the State with regard to this contract, any other contract with any State department or agency, including any contract for a term commencing prior to the term of this contract, plus any amounts due and owing to the State for any other reason including, without limitation, tax delinquencies, fee delinquencies or monetary penalties relative thereto. The State shall exercise its set-off rights in accordance with normal State practices including, in cases of set-off pursuant to an audit, the finalization of such audit by the State agency, its representatives, or the State Comptroller.

**10. RECORDS.** The Contractor shall establish and maintain complete and accurate books, records, documents, accounts and other evidence directly pertinent to performance under this contract (hereinafter, collectively, "the Records"). The Records must be kept for the balance of the calendar year in which they were made and for six (6) additional years thereafter. The State Comptroller, the Attorney General and any other person or entity authorized to conduct an examination, as well as the agency or agencies involved in this contract, shall have access to the Records during normal business hours at an office of the Contractor within the State of New York or, if no such office is available, at a mutually agreeable and reasonable venue within the State, for the term specified above for the purposes of inspection, auditing and copying. The State shall take reasonable steps to protect from public disclosure any of the Records which are exempt from disclosure under Section 87 of the Public Officers Law (the "Statute") provided that: (i) the Contractor shall timely inform an appropriate State official, in writing, that said records should not be disclosed; and (ii) said records shall be sufficiently identified; and (iii) designation of said records as exempt under the Statute is reasonable. Nothing contained herein shall diminish, or in any way adversely affect, the State's right to discovery in any pending or future litigation.

**11. IDENTIFYING INFORMATION AND PRIVACY NOTIFICATION.** (a) FEDERAL EMPLOYER IDENTIFICATION NUMBER and/or FEDERAL SOCIAL SECURITY NUMBER. All invoices or New York State standard vouchers submitted for payment for the sale of goods or services or the lease of real or personal property to a New York State agency must include the payee's identification number, i.e., the seller's or lessor's identification number. The number is either the payee's Federal employer identification number or Federal social security number, or both such numbers when the payee has both such numbers. Failure to include this number or numbers may delay payment. Where the payee does not have such number or numbers, the payee, on its invoice or New York State standard voucher, must give the reason or reasons why the payee does not have such number or numbers.

15

Contract #C000708
23000

**(b) PRIVACY NOTIFICATION.** (1) The authority to request the above personal information from a seller of goods or services or a lessor of real or personal property, and the authority to maintain such information, is found in Section 5 of the State Tax Law. Disclosure of this information by the seller or lessor to the State is mandatory. The principal purpose for which the information is collected is to enable the State to identify individuals, businesses and others who have been delinquent in filing tax returns or may have understated their tax liabilities and to generally identify persons affected by the taxes administered by the Commissioner of Taxation and Finance. The information will be used for tax administration purposes and for any other purpose authorized by law. (2) The personal information is requested by the purchasing unit of the agency contracting to purchase the goods or services or lease the real or personal property covered by this contract or lease. The information is maintained in New York State's Central Accounting System by the Director of Accounting Operations, Office of the State Comptroller, 110 State Street, Albany, New York 12236.

**12. EQUAL EMPLOYMENT OPPORTUNITIES FOR MINORITIES AND WOMEN.** In accordance with Section 312 of the Executive Law, if this contract is: (i) a written agreement or purchase order instrument, providing for a total expenditure in excess of $25,000.00, whereby a contracting agency is committed to expend or does expend funds in return for labor, services, supplies, equipment, materials or any combination of the foregoing, to be performed for, or rendered or furnished to the contracting agency; or (ii) a written agreement in excess of $100,000.00 whereby a contracting agency is committed to expend or does expend funds for the acquisition, construction, demolition, replacement, major repair or renovation of real property and improvements thereon; or (iii) a written agreement in excess of $100,000.00 whereby the owner of a State assisted housing project is committed to expend or does expend funds for the acquisition, construction, demolition, replacement, major repair or renovation of real property and improvements thereon for such project, then:

(a) The Contractor will not discriminate against employees or applicants for employment because of race, creed, color, national origin, sex, age, disability or marital status, and will undertake or continue existing programs of affirmative action to ensure that minority group members and women are afforded equal employment opportunities without discrimination. Affirmative action shall mean recruitment, employment, job assignment, promotion, upgradings, demotion, transfer, layoff, or termination and rates of pay or other forms of compensation;

(b) at the request of the contracting agency, the Contractor shall request each employment agency, labor union, or authorized representative of workers with which it has a collective bargaining or other agreement or understanding, to furnish a written statement that such employment agency, labor union or representative will not discriminate on the basis of race, creed, color, national origin, sex, age, disability or marital status and that such union or representative will affirmatively cooperate in the implementation of the contractor's obligations herein; and (c) the Contractor shall state, in all solicitations or advertisements for employees, that, in the performance of the State contract, all qualified applicants will be afforded equal employment opportunities without discrimination because of race, creed, color, national origin, sex, age, disability or marital status.

Contractor will include the provisions of "a", "b", and "c" above, in every subcontract over $25,000.00 for the construction, demolition, replacement, major repair, renovation, planning or design of real property and improvements thereon (the "Work") except where the Work is for the beneficial use of the Contractor. Section 312 does not apply to: (i) work, goods or services unrelated to this contract; or (ii) employment outside New York State; or (iii) banking services, insurance policies or the sale of securities. The State shall consider compliance by a contractor or subcontractor with the requirements of any federal law concerning equal employment opportunity which effectuates the purpose of this section. The contracting agency shall determine whether the imposition of the requirements of the provisions hereof duplicate or conflict with any such federal law and if such duplication or conflict exists, the contracting agency shall waive the applicability

16

of Section 312 to the extent of such duplication or conflict. Contractor will comply with all duly promulgated and lawful rules and regulations of the Governor's Office of Minority and Women's Business Development pertaining hereto.

**13. CONFLICTING TERMS.** In the event of a conflict between the terms of the contract (including any and all attachments thereto and amendments thereof) and the terms of this Appendix A, the terms of this Appendix A shall control.

**14. GOVERNING LAW.** This contract shall be governed by the laws of the State of New York except where the Federal supremacy clause requires otherwise.

**15. LATE PAYMENT.** Timeliness of payment and any interest to be paid to Contractor for late payment shall be governed by Article 11-A of the State Finance Law to the extent required by law.

**16. NO ARBITRATION.** Disputes involving this contract, including the breach or alleged breach thereof, may not be submitted to binding arbitration (except where statutorily authorized), but must, instead, be heard in a court of competent jurisdiction of the State of New York.

**17. SERVICE OF PROCESS.** In addition to the methods of service allowed by the State Civil Practice Law & Rules ("CPLR"), Contractor hereby consents to service of process upon it by registered or certified mail, return receipt requested. Service hereunder shall be complete upon Contractor's actual receipt of process or upon the State's receipt of the return thereof by the United States Postal Service as refused or undeliverable. Contractor must promptly notify the State, in writing, of each and every change of address to which service of process can be made. Service by the State to the last known address shall be sufficient. Contractor will have thirty (30) calendar days after service hereunder is complete in which to respond.

**18. PROHIBITION ON PURCHASE OF TROPICAL HARDWOODS.** The Contractor certifies and warrants that all wood products to be used under this contract award will be in accordance with, but not limited to, the specifications and provisions of Section 165 of the State Finance Law, (Use of Tropical Hardwoods) which prohibits purchase and use of tropical hardwoods, unless specifically exempted, by the State or any governmental agency or political subdivision or public benefit corporation. Qualification for an exemption under this law will be the responsibility of the contractor to establish to meet with the approval of the State.

In addition, when any portion of this contract involving the use of woods, whether supply or installation, is to be performed by any subcontractor, the prime Contractor will indicate and certify in the submitted bid proposal that the subcontractor has been informed and is in compliance with specifications and provisions regarding use of tropical hardwoods as detailed in §165 State Finance Law. Any such use must meet with the approval of the State; otherwise, the bid may not be considered responsive. Under bidder certifications, proof of qualification for exemption will be the responsibility of the Contractor to meet with the approval of the State.

**19. MACBRIDE FAIR EMPLOYMENT PRINCIPLES.** In accordance with the MacBride Fair Employment Principles (Chapter 807 of the Laws of 1992), the Contractor hereby stipulates that the Contractor either (a) has no business operations in Northern Ireland, or (b) shall take lawful steps in good faith to conduct any business operations in Northern Ireland in accordance with the MacBride Fair Employment Principles (as described in Section 165 of the New York State Finance Law), and shall permit independent monitoring of compliance with such principles.

**20. OMNIBUS PROCUREMENT ACT OF 1992.** It is the policy of New York State to maximize opportunities for the participation of New York State business enterprises, including minority and women-owned business enterprises as bidders, subcontractors and suppliers on its procurement contracts.

Information on the availability of New York State subcontractors and suppliers is available from:
NYS Department of Economic Development
Division for Small Business
30 South Pearl St -- 7th Floor
Albany, New York 12245

Contract #C000708
23000

Telephone: 518-292-5220
Fax: 518-292-5884
http://www.empire.state.ny.us
A directory of certified minority and women-owned business enterprises is available from:

NYS Department of Economic Development
Division of Minority and Women's Business Development
30 South Pearl St -- 2nd Floor
Albany, New York 12245
Telephone: 518-292-5250
Fax: 518-292-5803
http://www.empire.state.ny.us

The Omnibus Procurement Act of 1992 requires that by signing this bid proposal or contract, as applicable, Contractors certify that whenever the total bid amount is greater than $1 million:

(a) The Contractor has made reasonable efforts to encourage the participation of New York State Business Enterprises as suppliers and subcontractors, including certified minority and women-owned business enterprises, on this project, and has retained the documentation of these efforts to be provided upon request to the State;

(b) The Contractor has complied with the Federal Equal Opportunity Act of 1972 (P.L. 92-261), as amended;

(c) The Contractor agrees to make reasonable efforts to provide notification to New York State residents of employment opportunities on this project through listing any such positions with the Job Service Division of the New York State Department of Labor, or providing such notification in such manner as is consistent with existing collective bargaining contracts or agreements. The Contractor agrees to document these efforts and to provide said documentation to the State upon request; and

(d) The Contractor acknowledges notice that the State may seek to obtain offset credits from foreign countries as a result of this contract and agrees to cooperate with the State in these efforts.

**21. RECIPROCITY AND SANCTIONS PROVISIONS.** Bidders are hereby notified that if their principal place of business is located in a country, nation, province, state or political subdivision that penalizes New York State vendors, and if the goods or services they offer will be substantially produced or performed outside New York State, the Omnibus Procurement Act 1994 and 2000 amendments (Chapter 684 and Chapter 383, respectively) require that they be denied contracts which they would otherwise obtain. NOTE: As of May 15, 2002, the list of discriminatory jurisdictions subject to this provision includes the states of South Carolina, Alaska, West Virginia, Wyoming, Louisiana and Hawaii. Contact NYS Department of Economic Development for a current list of jurisdictions subject to this provision.

**22. COMPLIANCE WITH NEW YORK STATE INFORMATION SECURITY BREACH AND NOTIFICATION ACT.** Contractor shall comply with the provisions of the New York State Information Security Breach and Notification Act (General Business Law Section 899-aa; State Technology Law Section 208).

**23. COMPLIANCE WITH CONSULTANT DISCLOSURE LAW.** If this is a contract for consulting services, defined for purposes of this requirement to include analysis, evaluation, research, training, data processing, computer programming, engineering, environmental, health, and mental health services, accounting, auditing, paralegal, legal or similar services, then, in accordance with Section 163 (4-g) of the State Finance Law (as amended by Chapter 10 of the Laws of 2006), the Contractor shall timely, accurately and properly comply with the requirement to submit an annual employment report for the contract to the agency that awarded the contract, the Department of Civil Service and the State Comptroller.

**24. PROCUREMENT LOBBYING.** To the extent this agreement is a "procurement contract" as defined by State Finance Law Sections 139-j and 139-k, by signing this agreement the contractor certifies and affirms that all disclosures made in accordance with State Finance Law Sections

139-j and 139-k are complete, true and accurate. In the event such certification is found to be intentionally false or intentionally incomplete, the State may terminate the agreement by providing written notification to the Contractor in accordance with the terms of the agreement.

25. **CERTIFICATION OF REGISTRATION TO COLLECT SALES AND COMPENSATING USE TAX BY CERTAIN STATE CONTRACTORS, AFFILIATES AND SUBCONTRACTORS.** To the extent this agreement is a contract as defined by Tax Law Section 5-a, if the contractor fails to make the certification required by Tax Law Section 5-a or if during the term of the contract, the Department of Taxation and Finance or the covered agency, as defined by Tax Law 5-a, discovers that the certification, made under penalty of perjury, is false, then such failure to file or false certification shall be a material breach of this contract and this contract may be terminated, by providing written notification to the Contractor in accordance with the terms of the agreement, if the covered agency determines that such action is in the best interest of the State.

Contract #C000708
23000

## APPENDIX-B: ACCOUNT NYMST- NYDMV625 SERVICE

Detailed pricing is provided in the attached Product and Services Catalog – Govt. Rate Schedule October 1st, 2010. The parties acknowledge that the prices in the AAMVA Catalog are effective only though 09/30/2011 and are subject to change thereafter on 30-days prior written notice.

**ACCOUNT NYMST- NYDMV625
SERVICE**

IE Messages Prime ($0.29 per message)

IE Messages Non-Prime ($0.145 per message)

IE Messages Characters Prime ($0.068 per 1,000 characters)

IE Messages Characters Non-Prime ($0.034 per 1,000 characters)

IE Interconnect Characters Prime ($0.136 per 1,000 characters)

IE Interconnect Characters Non-Prime ($0.068 per 1,000 characters)

IE Archive Storage ($0.0042 per 1,000 characters)

Contract #C000708
23000

## APPENDIX-C: SUBSCRIBER SERVICES APPLICATION ADDENDUM

### 1. Introduction

This addendum sets forth the terms under which a Subscriber may access services and applications provided by AAMVA, and under which a Subscriber may send certain data to or receive certain data from other subscribers, by means of AAMVAnet™.

### 2. Subscriber Security Obligations

The Subscriber agrees that complying with the security measures required by AAMVA shall not relieve the Subscriber of its obligation and responsibility to exercise its own independent judgments about security and additional steps or procedures needed to prevent fraud, unauthorized access or other unauthorized use of AAMVAnet™ connections. Accordingly, the Subscriber agrees to take reasonable security measures when establishing connections with AAMVAnet™ to prevent disruption to the operations of AAMVA's, and other Subscribers', computers, networks, systems and software. AAMVA recommends that the Subscriber's internal security program should include, but not be limited to:

- Documented security controls including policies, procedures, standards, guidelines and references
- Ongoing or periodic risk assessments
- Formal program governance which involves senior management representatives
- Clearly articulated security responsibilities for management and technical personnel
- Metrics which are adequate to gauge and improve the effectiveness of the program
- A procedure to ensure that relevant security records (i.e., relevant to the Subscriber and AAMVA) are maintained, to include security incidents, requests for policy exceptions, and audit findings

The Subscriber is responsible for ensuring that its computer(s) and associated equipment and software comply with AAMVA requirements (which AAMVA may change from time to time) and for maintaining its own equipment. AAMVA reserves the right to approve or disapprove the use of the Subscriber's equipment and software, and/or to make recommendations regarding the equipment and software that the Subscriber uses. AAMVA does not have any obligation for, and does not make any warranty or representation of any kind with respect to, any communication facility, network, browser, operating system, server, or any other equipment or software not supplied, owned or operated by AAMVA.

### 3. AAMVAnet™ Right to Use

AAMVA's approval is required before the Subscriber uses AAMVAnet™ to access any of AAMVA's services and applications, or extends the Subscriber's access to other parties. In every case, the Subscriber must provide written notice before it:

- Shares the use of AAMVAnet™ with another Subscriber or entity

21

Contract #C000708
23000

⊙ Sublicenses, assigns, delegates or transfers to a third party any of its rights, duties or obligations under this agreement and associated addendum

AAMVA reserves the right to reject any of the arrangements the Subscriber proposes in the sharing/sublicensing situations given above.

## 4. AAMVAnet™ Interconnections

### 4.1 Connection Options

AAMVA provides three distinct AAMVAnet™ connection options - leased line, VPN and dial-up - for each of these options the Subscriber must select network features (e.g., bandwidth and backup) applicable to the connection method requested. AAMVA reserves the right to specify the type of connection necessary to support the volume and type of the Subscriber's transactions.

### 4.2 Equipment

AAMVA will arrange for the delivery and/or installation of AAMVA-supplied or designated equipment necessary for establishing an AAMVAnet™ connection.

Minimum requirements for the interconnection of the Subscriber's internal network and AAMVAnet™ have been established to provide a reasonable level of confidence in the security of the entire infrastructure. The purpose is to protect the entire infrastructure from vulnerabilities in any particular Subscriber's environment, minimizing the risks to AAMVA's facilities and services, and to other Subscribers. It is therefore incumbent upon the Subscriber to provide protection for the AAMVA-provided network and customer premises equipment (CPE) as follows:

⊙ The Subscriber must supply a detailed diagram of the network it plans to interconnect to the AAMVA-provided network, showing all external network connections, including the Internet

⊙ The Subscriber must provide protection for the AAMVA-provided CPE and connection in the form of a fully functioning firewall performing stateful packet inspection

⊙ The AAMVA-provided CPE must be installed either on the secure side of the customer firewall or on an isolated segment off that firewall

⊙ The Subscriber must ensure that sessions initiated from the Internet or other unauthorized external networks cannot be established to the secure side/LAN segment where the AAMVA-provided CPE connection terminates

⊙ IP addresses to be routed/accessed across the AAMVA-provided network must be issued by AAMVA or its network-supplier

⊙ The devices and interconnections associated with the Subscriber/AAMVA interface must be located in a secure room, equipment cage or cabinet

22

- ① Access to the devices and interconnections must be controlled and limited to a small number of authorized personnel based on the Principle of Least Privilege
- ② Access to the devices and interconnections by any personnel including service or equipment vendors must be controlled and logged
- ③ Changes to the environment, equipment or configuration of the interconnection with AAMVA must be planned and scheduled using a formal change control procedure, and coordinated with AAMVA

To facilitate out-of-band maintenance and management of the AAMVA-provided CPE the subscriber shall provide an analog, dial tone enabled telephone (POTS) circuit for use by AAMVA and its network provider.

AAMVA-supplied or designated equipment may not be altered, encumbered, relocated, removed or transferred to a third party, except with the AAMVA's prior written approval. The Subscriber is liable for any loss of or damage to AAMVA-supplied or designated equipment, ordinary wear and tear excepted.

### 4.3 Software
Where appropriate, AAMVA will provide software (including documentation) to enable a connection to the AAMVA network.

## 5. Legal Obligations, Warranties, Disclaimer of Warranty, and Liability

### 5.1 AAMVAnet™ Software
In the event AAMVA provides software or access to software, except as otherwise provided in a written agreement specifically referencing the AAMVA provided software, AAMVA grants the Subscriber a personal, nontransferable, nonexclusive license to use the software solely for the purposes stated in this agreement and in compliance with applicable security requirements.

AAMVA warrants that it owns or has the right to license or sublicense the software, and AAMVA shall indemnify and hold the Subscriber harmless from any loss or expense arising from any claim that the software alone, and not in combination with any other party's products, software or activities, infringes a patent, copyright, trademark or other proprietary right of any third party, provided AAMVA is given prompt written notice of the claim, has sole control of the defense of the claim and of any settlement negotiations, and the Subscriber cooperates fully with AAMVA in the defense and negotiations. The State/Subscriber reserves the right to join such action, at its sole expense, when it determines there is an issue involving a significant public interest. In the event of a claim that the software infringes any third party proprietary right, AAMVA reserves the right in its sole discretion to:

- ① Replace the software with a non-infringing product
- ① Modify the software to avoid the infringement
- ① Obtain a license for the Subscriber to continue use of the software

23

Contract #C000708
23000

⊕ Terminate the use of the software

The Subscriber may not, except with AAMVA's prior written consent:

⊕ Modify, add to, translate, reverse assemble, reverse compile, decompile or otherwise attempt to derive the source code from any AAMVA-provided software

⊕ Copy, sublicense or transfer the Software for any reason except that the software may be copied for back-up, testing or archival purposes

⊕ Remove any copyright or trademark notice contained in the software

AAMVA-provided software includes trade secrets and proprietary information of AAMVA and others, which may be copyrighted or patented, and must be handled in accordance with the controls set forth in AAMVA's Information Protective Measures Table (**Appendix D**) and associated guidelines. Where the sensitivity of data has not been determined, it must be treated as though it were AAMVA RESTRICTED. Where data of different levels of sensitivity are co-mingled and cannot be secured independently, the collection will be considered to be the sensitivity of its most sensitive component.

If the Subscriber uses AAMVAnet™ for services not provided by AAMVA (e.g., to copy, download, display, distribute or execute programs or perform other works), the Subscriber is responsible for obtaining all required permissions.

**5.2 Use of Services**
The Subscriber will use AAMVA-provided services and facilities only as intended and as provided for in this agreement and addendum. The Subscriber is responsible for ensuring that the Subscriber's use of a service will not:

⊕ Breach any laws, regulations or conventions related to, but not limited to, data privacy, international communications and exportation of technical or personal data

⊕ Place any unusually heavy processing loads on the network or applications without prior coordination with AAMVA

⊕ Institute any significant changes associated with access to AAMVA supported networks, applications, or other computing functions without notifying AAMVA in advance

The Subscriber is also responsible for obtaining the necessary governmental, regulatory or statutory approvals for the Subscriber's use of the services and is responsible for any record keeping or tracking of data that may be required due to state or federal disclosure laws.

If the Subscriber provides access to data, programs or other material, for use with a service, the Subscriber warrants that:

⊕ AAMVA, in the course of providing the service, will not as a result of the Subscriber's actions be put in the position of violating the rights of any third parties

⊕ The disclosure or use of such material during the course of the service will not involve a breach of any confidential or contractual

24

Contract #C000708
23000

relationship, excepting any data which is protected from unauthorized access, disclosure or dissemination under the DPPA or ISBNA.

## 5.3 AAMVAnet™ Foreign Access

Use of AAMVAnet™ from outside of the U.S. and its territories must be in compliance with applicable laws and regulations.

## 5.4 Disclaimer of Warranty

AAMVA-supplied or designated equipment and software (including documentation), along with any recommendations, security procedures, operating instructions, user manuals, guidelines and specifications for an AAMVAnet™ connection are furnished strictly on an "as-is" basis. AAMVA does not warrant or represent that operation of any AAMVA supplied equipment or software or use of an AAMVAnet™ connection will meet the Subscriber's planned applications, that AAMVA-supplied equipment or software will be compatible with the Subscriber's equipment, or that any defect in AAMVA-supplied equipment or software can be corrected. AAMVA does not warrant or represent that use of an AAMVAnet™ connection, regardless of whether used in conjunction with any access control features and/or in compliance with any recommendations, security procedures, operating instructions, user manuals, guidelines, other documentation, and specifications for an AAMVAnet™ connection that AAMVA specifies will be uninterrupted, free from interception, timely, secure or error free.

AAMVA's sole obligation in the event of a malfunction in AAMVA-supplied equipment or software is to provide a remedy in the form of either providing reasonable assistance in resolving problems or replacing defective or damaged equipment or software:

- That the Subscriber returns to AAMVA
- About which the Subscriber informs AAMVA

AAMVA shall have sole authority to select the form of the remedy, if any, to satisfy that obligation.

AAMVA shall have no obligation for equipment or software that is purchased by the Subscriber from a third party vendor, even if AAMVA requires the use of that equipment or software or arranges for the purchase from said vendor.

THE OBLIGATIONS AND THE WARRANTY SET FORTH IN THE *AAMVAnet™ SERVICES APPLICATION AGREEMENT* AND THIS ADDENDUM ARE EXCLUSIVE AND IN LIEU OF ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO ALL IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE AND ANY OTHER WARRANTY ARISING BY STATUTE OR FROM A COURSE OF DEALING OR USAGE OF TRADE. NO ORAL OR WRITTEN INFORMATION OR ADVICE GIVEN BY AAMVA SHALL CREATE A WARRANTY OR IN ANY WAY INCREASE THE SCOPE OF AAMVA'S OBLIGATIONS.

Contract #C000708
23000

### 5.5 Liability

AAMVA is not liable for loss or damage resulting from a problem beyond its reasonable control. This includes, but is not limited to:

- Loss or damage resulting from any delay, error or omission in the transmission of any message to or from a Subscriber
- Alteration of any data, instruction or notice sent to or from AAMVA through an AAMVAnet™ connection
- Any third party's interception and/or use of any data conveyed using an AAMVAnet™ connection
- The services provided by an internet service provider
- A virus, malicious code or other defect received from or introduced by any entity other than AAMVA
- Technology provided by AAMVA if the technology was not developed by AAMVA, even if AAMVA requires the use of such technology
- Any loss of data, information or programs of any kind whatsoever as the Subscriber is solely responsible for developing and/or maintaining procedures, external to the service, to safeguard Subscriber's programs, information, data, and for the back up and reconstruction of lost data, information, programs or procedures
- Alteration of Subscriber's programs or data or information or their acquisitions by another party, except for AAMVA's failure to implement those aspects of the security procedures which are under AAMVA's control
- Transmission errors, corruption of data or the security of data during transmission via public telecommunications facilities

Additionally, AAMVA is not liable for loss or damage resulting from unavailability of an AAMVAnet™ connection due to security or other concern which AAMVA, at its sole discretion, may conclude justifies making such AAMVAnet™ connections unavailable, or from labor disputes or civil unrest, acts of war, riots, acts of terrorism, acts of God or acts of nature.

Further, AAMVA is not liable for any loss or damage arising from the Subscriber's use of any access control feature, or from a third party's reliance on any access control feature, for any purposes other than those expressly authorized by AAMVA. AAMVA is not liable for any loss or damage arising from the theft or compromise of a private key or the password that protects a private key, whether detected or undetected, the storage of any private keys on the Subscriber's computer's hard drive(s) or other storage device, or any loss caused by a third party's use or duplication of a private key.

### 6. Compliance

The Subscriber agrees to conform to the security requirements, operating and management tenets and specifications applicable to an AAMVAnet™ connection that AAMVA specifies from time to time, including the need for the Subscriber to exercise its own independent judgment about the adequacy of existing security measures. Notwithstanding the above, the Subscriber is required and agrees to implement appropriate physical

Contract #C000708
23000

security to protect from unauthorized use the access control features, software, computer(s) and any associated equipment that are used to exchange data with AAMVA.

## 7. Confidentiality

"Restricted Information" shall include all information, provided in writing, electronically or orally, which is designated by AAMVA herein or by other means as "Restricted." All trade secrets, proprietary information or security information, including information regarding access control features and security procedures, whether or not it is labeled as "Restricted," *is hereby designated as "Restricted,"* unless AAMVA makes such information generally available to the public (i.e., places it on its unrestricted public Web site or otherwise publishes it to the general public).

The Subscriber agrees to take all reasonable measures to protect, ensure the secrecy of, and affirmatively avoid disclosure and unauthorized use of Restricted Information. Without limiting the foregoing, the Subscriber shall protect the Restricted Information in accordance with the controls set forth in AAMVA's Information Protective Measures Table (**Appendix D**) and associated guidelines. The Subscriber is responsible for destroying or returning any Restricted Information to AAMVA upon the request of AAMVA or when the Restricted Information is no longer needed.

The Subscriber shall disclose the Restricted Information to its employees or third parties only on a "need to know" basis. The Subscriber shall maintain a written record of all third parties to whom Restricted Information is disclosed (indicating the recipient, date and description of content of the disclosure), and shall provide such record to AAMVA upon request. Before disclosure to any third party, the Subscriber must have a written agreement with such party sufficient to require that party to treat the Restricted Information with the controls set forth in AAMVA's Information Protective Measures Table (**Appendix D**). The Subscriber is liable for any unauthorized disclosure of Restricted Information by any of its employees or third parties to whom it has disclosed Restricted Information.

In the event the Subscriber becomes aware of any unauthorized disclosure or use of the Restricted Information, the Subscriber must immediately notify AAMVA of the unauthorized disclosure or use, and must use its best efforts to prevent further unauthorized disclosure or use. Such notification must be by telephone, with written confirmation to AAMVA.

The Subscriber must notify AAMVA immediately by telephone, with follow-up written confirmation, of any suspected fraud, infringement, or security breach relating to its AAMVAnet™ connection.

## 8. Management and Operations

### 8.1 Management of AAMVAnet™ Connections

The Subscriber will appoint a service administrator to act as a coordinator between the end users of a Service and AAMVA. The service administrator's responsibilities are primarily to act as the single point of contact and coordinator in operational matters related to AAMVA services. Only the service administrator has the authority to request changes, additions, or deletions for the account. The written notification of cancellation can only come from the service administrator.

27

The Subscriber must manage its AAMVAnet™ connection so as to permit AAMVA and other subscribers to send data to the Subscriber, and to permit the Subscriber to receive data from AAMVA and other subscribers, on a timely basis throughout the day. AAMVA is not responsible for any delay in sending data (or for notifying any party of such a delay) if the delay results from the Subscriber's failure to so manage its connection(s), or from any cause other than AAMVA's failure to exercise ordinary care or to act in good faith. The AAMVA records shall be determinative of when data has been received by AAMVA or when AAMVA sends data to, or makes it retrievable by, the Subscriber.

AAMVA will provide to the Subscriber one or more userID(s) or other means to enable access to the services. The Subscriber is responsible for the control and distribution of Subscriber's userID(s) to its end users. AAMVA shall have no liability for any misuse of these userID(s) by any party not under AAMVA's control. In addition, the Subscriber agrees to pay for any resulting loss, damage or expense for any misuse by the Subscriber's end users or third parties.

AAMVA shall make best efforts to provide notice (which may be in electronic form) of changes to system requirements. The Subscriber must also update in a timely manner all applicable workstation operating systems, anti-virus software and any other software used in connection with or as a component of the Subscriber's AAMVAnet™ connection. AAMVA shall not be responsible nor liable in any manner for any loss or damage to the Subscriber that could have been prevented had an update been installed when such update was made available.

**8.2 Responsibility for Access Control Features**
The Subscriber:

- Except as otherwise provided as between Subscriber and AAMVA in this agreement, assumes sole responsibility and the entire risk of use and operation of its AAMVAnet™ connection
- Except as otherwise provided in this agreement, is responsible for unauthorized physical and network access to its AAMVAnet™ connection
- Is responsible for establishing, instituting and enforcing policies and procedures for controlling, detecting and preventing unauthorized physical and network access to all applicable systems and equipment, and for immediately contacting AAMVA if it has a reasonable basis to suspect that any applicable service has been compromised or shows evidence of tampering

AAMVA may act on any message, utilizing either technical or procedural methods, that it receives through an AAMVAnet™ connection that AAMVA authenticates as the Subscriber's, as if the message consisted of a written instruction bearing the manual signature of one of the Subscriber's duly authorized officers.

28

## 8.3 AAMVnet™ Availability

AAMVAnet™ will be unavailable during such hours as are established from time to time by the third party vendor providing telecommunications services to AAMVA. AAMVAnet™ may be unavailable from time to time as the result of the need to perform system maintenance, and reasonable efforts will be made to minimize inconvenience to Subscribers. The typical network maintenance schedule is every Sunday from 3:00am to 5:00am. There are also extended maintenance times from 12:00am to 8:00am Eastern Standard Time, every 3rd Sunday of each month. These scheduled times may vary and change at the discretion of the vendor providing telecommunications services to AAMVA.

## 8.4 Reporting and Monitoring

The Subscriber agrees to allow network and application vendors to provide statistics, management information, and financial information, to AAMVA.

## 8.5 Incident Response and Contingency Plans for Disruption of AAMVAnet™

It is in the interests of both AAMVA and its Subscribers to cooperate in investigating and responding to any security breaches or other incidents affecting AAMVA's Subscriber services and facilities. Each party has a responsibility to promptly notify the other if it becomes aware of a security incident involving the other's interests or assets.

Incidents affecting the Subscriber's AAMVAnet™ connection or any service the subscriber is using must be reported to AAMVA immediately. Such incidents may include but are not limited to unauthorized access, misuse, theft, fraud, abuse of privilege, worms and viruses.

To effectively deal with such an incidents it is AAMVA's expectation that the Subscriber agrees in principle with the following:

- The Subscriber will coordinate its incident handling process with that of AAMVA.
- The Subscriber's incident handling process will include early notification to AAMVA of every incident directly involving AAMVA's data or systems, and also of any other incidents which might reasonably be of concern to AAMVA.
- The Subscriber will take appropriate action in the event that any of its employees or contractors misuse AAMVA customer data or violate this policy in any substantive way.
- To the extent the Subcriber determines it is in the public interest, the Subscriber will cooperate with and support AAMVA in any legal actions AAMVA chooses to take in response to incidents involving its systems, services or assets.

Non-incident related problems with hardware, software, or data transmission may on occasion delay or prevent AAMVA from sending or receiving messages electronically. Where appropriate, the Subscriber should be prepared to use

Contract #C000708
23000

alternate facilities to send or receive messages until such time as the AAMVAnet™ connection becomes available. Where alternate facilities have been provisioned the Subscriber agrees to establish and regularly test business continuity and disaster recovery plans for use in the event of the loss of an AAMVAnet™ connection.

## 9. Return of AAMVA-Supplied or Designated Equipment and Software; Survival of Obligations

Upon termination, the Subscriber promptly must:

- Disable (by removing the battery or otherwise) any encryption card, or other card that supports encryption and communication, but only after the workstation has been disconnected from production network connections
- Return all AAMVA-supplied or designated equipment (or properly dispose of it, if AAMVA authorizes it to do so).
- Destroy or return, as required herein, any Software and Confidential information provided by AAMVA to the Subscriber and its Service Provider
- Delete as required herein any installed copies of such Software or saved copies (including backups) of Restricted information
- Upon request of AAMVA, provide written certification that all relevant Software and Confidential information, including any that have been provided by the Subscriber to third parties, has been returned, destroyed or deleted.

Notwithstanding the foregoing, AAMVA retains the right to require that a Subscriber promptly return all relevant software, hardware and Restricted information upon termination. The Subscriber's obligations pertaining to confidentiality, nondisclosure and cooperation with AAMVA's defense of any software infringement claim survive any termination of this Subscriber agreement.

30

Contract #C000708
23000

## Appendix D: Information Protective Measures Table

| | INFORMATION CLASS | | |
|---|---|---|---|
| | **AAMVA - CONFIDENTIAL** | **AAMVA - OFFICIAL USE ONLY** | **AAMVA - PUBLIC** |
| **DEFINITION** | The most sensitive class of Confidential Information requiring the highest level of protection in accordance with regulatory and commercial requirements. This information can only be shared on a need-to-know basis. Examples include, but are limited to, social security numbers, credit card numbers, patent information, driver license information, network IP addresses and passwords, electronically protected health information (EPHI), customer information covered under contract and other information so designated by the owner or originator of the information. | The least sensitive class of Confidential Information requiring a basic level of protection. Examples include, but are not limited to, customer-supplier communications and non-personally identifiable employee information. | A class of information, which applies to information falling outside the definition of Confidential Information. Examples include, but are not limited to, information commonly available to the public or that which may be found on the AAMVA Internet website or elsewhere in the public domain |
| **HANDLING METHOD:** | | | |
| **MARKING REQUIREMENTS** | "AAMVA – Confidential" should be used in the headings or footers of paper and electronic documents, and on files or folders in cases of a collection of data. See the Appendix for E-mail taglines (Section 8.2.1) and document confidentiality notice (Section 8.2.3) that should be used. | "AAMVA – Official Use Only" should be used in the headings or footers of paper and electronic documents and on files or folders in cases of a collection of data. See the Appendix for E-mail taglines (Section 8.2.1) and document confidentiality notice (Section 8.2.3) that should be used. | No marking is required, although the marking "Public" or "AAMVA – Public" may be used to clarify the designation wherever that is deemed useful. |
| **STORAGE** | Stored in locked drawers or cabinets; electronic data must be encrypted; backups in locked, fireproof safe. | Stored in locked drawers or cabinets; electronic data must be password protected; backups in locked, fireproof safe. | No restricted storage requirements. |
| **DISTRIBUTION (within AAMVA HQ)** | Due care should be exercised (e.g., to not leave materials with PII in plain sight, etc.) to restrict information to those with a need to know, although no specific packaging or handling is required. May be transmitted *internally* using AAMVA's E-mail system, although discretion should be applied. Consideration should be given to using encryption or a more secure means of communication where the information is known to be an attractive target for theft. Materials must be locked away when left unattended and during non-business hours. | No restrictions on distribution within AAMVA in paper or internal format. Due care should be exercised to prevent documents from being inadvertently released or disclosed to people who are not AAMVA employees or contractors. | No restrictions on distribution within AAMVA. |
| **DISTRIBUTION (outside of** | Requires use of secure courier service or registered | Control distribution so as to; (a) restrict availability to | No restrictions on distribution. |

31

Contract #C000708
23000

| Appendix D: **Information Protective Measures Table** | | | |
|---|---|---|---|
| | INFORMATION CLASS | | |
| | **AAMVA - CONFIDENTIAL** | **AAMVA - OFFICIAL USE ONLY** | **AAMVA - PUBLIC** |
| **AAMVA)** | post. Data must be encrypted during transmission over external networks. For data files, consideration must be given to encrypting at the file or record level unless there is strong business or technological reasons why this is impractical. Encryption keys – or passwords used as encryption keys -- must not be sent along with the encrypted material but must be communicated through a different channel. | the general public; (b) share with indication that data is sensitive (e.g., E-mail tagline and document markings are included); (c) use password protection or encryption where deemed necessary. | |
| **RETENTION** | AAMVA Records Retention Policy | AAMVA Records Retention Policy | AAMVA Records Retention Policy |
| **DISPOSAL** | Electronic copies must be wiped using approved utilities. USB memory sticks, hard drives and reusable media must be securely wiped prior to internal reuse and securely wiped or (preferably) destroyed prior to disposal, and may not be sold or donated to third parties. CDs, hard copies and other non-electronic material must be shredded. | Electronic copies must be deleted when no longer needed. USB memory sticks hard drives and reusable media must be securely wiped before leaving the company, or destroyed CDs, hard copies and other non-electronic material must be shredded. | Destroyed or deleted freely, using recycling facilities where available. |

32

Contract #C000708
23000

## APPENDIX-E: STATE OF NEW YORK PROCUREMENT LOBBYING POLICY AND PROCEDURES

March 2006

**FORM - A**
**Summary of**
**Policy and Procedure of the Department of Motor Vehicles**
**Relating to**
**State Finance Law §§139-j and 139-k**

Pursuant to State Finance Law §§139-j and 139-k, the Department of Motor Vehicles (hereinafter "DMV") imposes certain restrictions on communications between DMV and all potential bidders during the procurement process.[1] A bidder is restricted from making contacts from the earliest notice of intent to solicit bids through final award and approval of the Procurement Contract by DMV and the Office of the State Comptroller ("restricted period")[2] to other than designated staff[3] unless it is a contact that is included among certain statutory exceptions set forth in State Finance Law §139-j(3)(a).

Designated staff are identified in each bid solicitation.[4] DMV staff also obtain certain information from bidders[5] when contacted during the restricted period and make a determination of the responsibility[6] of the bidder pursuant to these two statutes. Certain findings of non-responsibility[7] may result in not awarding a contract to a bidder[8] and in the event of two findings within a four-year period; the bidder shall be debarred[9] from obtaining any New York State Procurement Contracts. DMV shall provide complete information about these requirements in every procurement package it issues.[10]

Generally, the law restricts communications between a potential vendor or a person acting on behalf of the vendor, including its lobbyist, to communications with the officers and employees of the procuring agency designated in each solicitation to receive such communications.[11] Further, the law prohibits a communication (a "Contact") which a reasonable person would infer as an attempt to improperly influence the award, denial or amendment of a contract.[12] These restrictions apply to each contract in excess of $15,000 during the "restricted period"[13] (the time commencing with the earliest written notice of the proposed procurement and ending with the later of approval by the agency, or, if applicable, the State Comptroller, of the final contract). The agency must

---

[1] 139-j (3)
[2] 139-j (1)(f)
[3] 139-j (2)(a)
[4] Id.
[5] 139-j (6)(b); 139-k (2), (4)
[6] 139-j (7)
[7] Id.
[8] 139-j (10)(b); 139-k (3)
[9] Id.
[10] 139-j (6)(a)
[11] 139-j (1), (2), (3)(a)
[12] 139-j (1), (3)(b); 139-k (1)
[13] Id.

Contract #C000708
23000

record all Contacts[14], and, generally, must deny an award of contract to a vendor involved in a knowing and willful impermissible Contact.[15]   Each agency must develop guidelines and procedures regarding Contacts and procedures for the reporting and investigation of impermissible Contacts.[16]   The agency's procurement record must demonstrate compliance with these requirements.[17]

Accordingly, neither a potential vendor nor a person acting on behalf of the vendor should contact any employee of DMV other than the person designated in this solicitation as DMV's Designated Contact, nor attempt to improperly influence award of the contract.[18]   DMV will make a record of all Contacts[19], and such records of Contact will become part of the procurement record.[20] A determination that a vendor or a person acting on behalf of the vendor has intentionally made an impermissible Contact or provided inaccurate or incomplete information as to its past compliance with State Finance Law §§139-j and 139-k is likely to result in denial of the award of contract to such vendor.[21]  Additional sanctions may apply.[22]

---

[14] 139-k (4)

[15] 139-j (10(b)

[16] 139-j (2)(b), (6)(a), (8), (9), (10)(a) & (b)

[17] 139-j (10)(b); 139-k (4), (5)

[18] 139-j (1), (3); 139-k (1)

[19] 139-j (1)(b); 139-k (4)

[20] Id.

[21] 139-j (10)(b); 139-k (3)

[22] 139-j (10(b); 139-k (4)

34

Contract #C000708
23000

**FORM - B**
**Policy and Procedure of the Department of Motor Vehicles**
**Relating to**
**State Finance Law §§139-j and 139-k**

**I. Policy:**[23]

It is the policy of DMV to comply with the provisions of State Finance Law §§139-j and 139-k and related guidance offered by the Advisory Council on Procurement Lobbying and the Office of the State Comptroller.[24]

**II. Procedure:**[25]

The procedure set forth hereafter applies to Governmental Procurements by DMV.

**III. Definitions:**

Capitalized terms used but not defined herein shall have the meaning ascribed to them in State Finance Law §§139-j and 139-k (copies attached). In addition, the following terms have the following meanings:

**"Contact"** means an oral, written or electronic communication made with respect to the related Governmental Procurement by the bidder, or person acting on behalf of the bidder, during the Restricted Period to an employee of DMV or of a Governmental Agency other than the DMV, who reasonably infers that the bidder intended to influence the related Governmental Procurement in any manner, including a manner which violates Public Officers Law §73(5) [offer of a gift of $75 or more] or §74 [code of ethics for public officers and employees].

The term "Contact" does not include (a) a communication described in State Finance Law §139-j(3)(a)(1)submission of written proposal[26], (2) submission of written questions[27], (3) participation in bidders conference[28], (4) complaints[29], (5) contract negotiations subsequent to notice of tentative award[30], (6) review of contract award[31], and (7)(a) protests, appeals or other review proceedings[32]; (b) a communication described in Legislative Law §1-t(e) by a bidder or subcontractor to a bidder qualified by education, training or experience to provide technical services to explain, clarify or demonstrate the qualities, characteristics or advantages of an article of procurement, who provides information to a Designated Contact to assist the Designated Contact in understanding and assessing the qualities, characteristics or anticipated performance of such article of procurement and who does not recommend or advocate contract provisions[33]; or (c) a communication by which the bidder seeks generally available information, including clarification and interpretation, with

---

[23] 139-j (2)
[24] 139-j (5)
[25] 139-j (1); 139-k (1)
[26] 139-j (3)(a)(1)
[27] 139-j (3)(a)(2)
[28] 139-j (3)(a)(3)
[29] 139-j (3)(a)(4)
[30] 139-j (3)(a)(5)
[31] 139-j (3)(a)(6)
[32] 139-j (3)(a)(7)
[33] 139-j (1), (3); 139-k (1)

35

respect to the solicitation documents or the Governmental Procurement process, including the status or timing of steps in the process[34].

**"Designated Contact"** means one or more employees of DMV identified in the solicitation for the related Governmental Procurement, or thereafter designated by the DMV's Contract Manager[35].

## IV. Solicitations:

Each written solicitation by DMV for a Procurement Contract shall contain the following[36]:

(1) The name of each Designated Contact, and a statement substantially in the following form: "Prior to approval by DMV, or, if applicable, the State Comptroller, of the contract for which this solicitation has been issued, a bidder shall not communicate with DMV other than with the person identified in this solicitation as Designated Contact, or with a person who the Designated Contact has advised the bidder is also a Designated Contact"[37];

(2) A summary of the policy and prohibitions regarding Contacts, in the form attached as **Form "A"**, and a copy of this statement of policy and procedure, in the form attached as **Form "B"**[38];

(3) The requirement that each bidder shall submit with its Proposal a written affirmation of its understanding of DMV's procurement lobbying procedures and agreement to comply with such procedures, in the form attached as **Form "C"**[39]; and

(4) The requirement that each bidder shall submit with its Proposal, in the form attached as **Form "D"**, written disclosure whether the bidder has been determined to be "non-responsible" within the previous four years by reason of having violated State Finance Law §139-j [40]or having intentionally provided false or incomplete information[41] to a Governmental Entity with respect to its compliance with State Finance Law §139-j; and certification and that the bidder has provided accurate and complete information with respect to the bidder's compliance with State Finance Law §§139-j and 139-k within the previous four years[42].

## V. Contracts:

Each Procurement Contract shall contain the following statement in substantially the following form: "DMV reserves the right to terminate this contract in the event it is determined that the certification filed by the Contractor in accordance with State Finance Law §§139-j and 139-k was intentionally false or intentionally incomplete[43]. Upon such determination, DMV may exercise its

---

[34] 139-j (3)
[35] 139-j (1), (2); 139-k (1)
[36] 139-j (2); 139-k (2)
[37] 139-j (6)
[38] Id.
[39] 139-j (6)(b); 139-k (2)
[40] 139-k (2)
[41] Id.
[42] Id.
[43] 139-j (10(b); 139-k (5)

Contract #C000708
23000

termination right by providing written notification to the Contractor in accordance with the written notification terms of the contract."[44]

## VI. Records of Contacts:[45]

Each DMV employee shall make a record of each Contact which such person receives or, in the case of a Contact made to another Governmental Entity, of which such person becomes aware, promptly upon the receipt of such Contact. Such record shall be made in the form attached as **Form "E"**. With respect to multiple Contacts by the same person within five business days, only one record of Contact need be made and forwarded. The recipient shall forward such record of Contact to the Contract Manager or employee authorized for such purpose. All records of Contact shall be made part of the procurement record[46]. If a bidder makes an impermissible contact to a DMV employee, such employee shall record such contact and immediately forward it to the Contracts Manager. The Contracts Manager shall promptly forward the record of such contact to the Office of the Deputy Commissioner and Counsel for review, as provided for in section VII.

## VII. Review and Investigation:[47]

Upon receipt of a record of an impermissible Contact, the Deputy Commissioner and Counsel or her or his designee ("Reviewer") shall, within 15 days of receipt of such information, review and investigate[48]. The Reviewer shall notify the bidder that an investigation is ongoing, give notice of the allegations of misconduct, and give the bidder an opportunity to respond in writing within 10 days of receipt of notification of the alleged violation[49]. The bidder shall not be entitled to representation by counsel. The Reviewer shall determine whether the bidder has made an impermissible Contact willfully and knowingly. The Reviewer shall advise the bidder and the Contracts Manager, or employee authorized for such purpose, of the final determination[50]. In the event the Reviewer determines that the bidder has made an impermissible Contact with a Governmental Entity other than DMV, the Reviewer shall so notify the ethics officer[51], inspector general or other appropriate official of such other Governmental Entity[52]. In the event the Reviewer determines that as the result of an impermissible Contact an employee of DMV has violated the provisions of Public Officers Law §73(5) [prohibition of acceptance of a gift of $75 or more] or §74 [code of ethics], the Reviewer shall so advise the Commissioner of Motor Vehicles, the State Ethics Commission and the Office of the Inspector General[53].

## VIII. Determinations of Non-Responsibility:[54]

The Reviewer, or employee authorized for such purpose, shall determine whether a bidder has been non-responsible either because (1) the bidder has made an impermissible Contact willfully and

---

[44] Id.
[45] 139-j (8), (10)(b); 139-k (4)
[46] Id.
[47] 139-j (9)
[48] Id.
[49] 139-j (10)(a)
[50] 139-j (10)(a)
[51] 139-j (8)(a), (c)
[52] 139-j (8)( c), (10(b)
[53] Legislative Law: POL §73(5); §74 (Code of Ethics)
[54] 139-j (7)

37

Contract #C000708
23000

knowingly[55], or (2) the bidder has failed intentionally to make accurate and complete disclosure of prior findings of non-responsibility with respect to Governmental Procurements made within the previous four years[56]. Upon making a determination of non-responsibility, the Contracts Manager, or employee authorized for such purpose, shall so notify the bidder and the Commissioner of Motor Vehicles[57]. A finding of non-responsibility under this section shall result in DMV not awarding the contract to such bidder unless DMV determines that the award of the contract is necessary to protect public property or public health or safety, and that the bidder is the only source capable of supplying the required article of procurement within the necessary timeframe provided.

---

[55] 139-j (10)(b)
[56] 139-j (10)(b); 139-k (5)
[57] 139-j (10)(a)

38

Contract #C000708
23000

**FORM - C**

**AFFIRMATION** [58]
**With respect to State Finance Law §§139-j and 139-k**

Procurement Description/ID No.: C000708

Name of Bidder:
Address:
Person Submitting Form:
  Name:
  Title:

Bidder **AFFIRMS** that it has received, reviewed and understands the Policy and Procedure of the Department of Motor Vehicles (DMV), relating to State Finance Law §§139-j and 139-k, and agrees to comply with DMV's procedure relating to Contacts with respect to this procurement.

In Witness Whereof.

Dated: 7/11    , 20 11

Bidder:

By, (x)_____    C Fo
                   , Title:

---

[58] 139-j (6)(b); 139-k (5)

39

Contract #C000708
23000

**FORM – D - DISCLOSURE and CERTIFICATION**[59]
**With respect to State Finance Law §§139-j and 139-k**

Procurement Description/ID No.: C000708

Name of Bidder:
Address:
Person Submitting Form:
  Name:
  Title:

Has a Governmental Entity, as defined in State Finance Law §139-j(1)(a), made a determination of non-responsibility with respect to the Bidder within the previous four years where such finding was due to a violation of State Finance Law §139-j or the intentional provision of false or incomplete information with respect to previous determinations of non-responsibility?

No __✓__
Yes ___

If yes, provide the following details:

Governmental Entity which made the finding:
Date of finding:
Basis of finding:

Has a Governmental Entity terminated or withheld a procurement contract with the Bidder because of violations of State Finance Law §139-j or the intentional provision of false or incomplete information with respect to previous determinations of non-responsibility?

No __✓__
Yes ___

If yes, identify the Governmental Entity, the date of termination or withholding, and related procurement contract:

Bidder **CERTIFIES** that all information provided by Bidder with respect to its compliance with State Finance Law §§139-j and 139-k is complete, true and accurate.

In Witness Whereof.

Dated: _7|__ , 20_1/_

Bidder:

By, (x)_____MMSM____ CFO_____
                              , Title:

_____

[59] 139-k (2)

40

Contract #C000708
23000

## APPENDIX-F:
## STATE FINANCE LAW §§ 139-J & 139-K

**State Finance Law §139-j**

### § 139-j.    Restrictions on contacts during the procurement process:

1.  For the purposes of this section, the following terms will have the following meanings unless specified otherwise.
    a.  "Governmental entity" shall mean:
        i.   any department, board, bureau, commission, division, office, council, committee or officer of the state, whether permanent or temporary;
        ii.  each house of the state legislature;
        iii. the unified court system;
        iv.  any public authority, public benefit corporation or commission created by or existing pursuant to the public authorities law;
        v.   any public authority or public benefit corporation, at least one of whose members is appointed by the governor or who serves as a member by virtue of holding a civil office of the state;
        vi.  a municipal agency, as that term is defined in paragraph (ii) of subdivision (s) of section one-c of the legislative law; or
        vii. a subsidiary or affiliate of such a public authority.

    b.  "Article of procurement" shall mean a commodity, service, technology, public work, construction, revenue contract, the purchase, sale or lease of real property or an acquisition or granting of other interest in real property, that is the subject of a governmental procurement.

    c.  "Contacts" shall mean any oral, written or electronic communication with a governmental entity under circumstances where a reasonable person would infer that the communication was intended to influence the governmental entity's conduct or decision regarding the governmental procurement.

    d.  "Proposal" shall mean any bid, quotation, offer or response to a governmental entity's solicitation of submissions relating to a procurement.

    e.  "Governmental procurement" shall mean:
        i.   the public announcement, public notice, or public communication to any potential vendor of a determination of a need for a procurement, which shall include, but not be limited to, the public notification of the specifications, bid documents, request for proposals, or evaluation criteria for a procurement contract,
        ii.  solicitation for a procurement contract,
        iii. evaluation of a procurement contract,
        iv.  award, approval, denial or disapproval of a procurement contract, or

41

Contract #C000708
23000

    v.  approval or denial of an assignment, amendment (other than amendments that are authorized and payable under the terms of the procurement contract as it was finally awarded or approved by the comptroller, as applicable), renewal or extension of a procurement contract, or any other material change in the procurement contract resulting in a financial benefit to the offerer.

**f.**  "Restricted period" shall mean the period of time commencing with the earliest written notice, advertisement or solicitation of a request for proposal, invitation for bids, or solicitation of proposals, or any other method for soliciting a response from offerers intending to result in a procurement contract with a governmental entity and ending with the final contract award and approval by the governmental entity and, where applicable, the state comptroller.

**g.**  "Procurement contract" shall mean any contract or other agreement including an amendment, extension, renewal or change order to an existing contract (other than amendments, extensions, renewals, or change orders that are authorized and payable under the terms of the contract as it was finally awarded or approved by the comptroller, as applicable), for an article of procurement involving an estimated annualized expenditure in excess of fifteen thousand dollars. Grants, article eleven-B state finance law contracts, program contracts between not-for-profit organizations, as defined in article eleven-B of this chapter, and the unified court system, intergovernmental agreements, railroad and utility force accounts, utility relocation project agreements or orders and eminent domain transactions shall not be deemed procurement contracts.

**h.**  "Offerer" shall mean the individual or entity, or any employee, agent or consultant or person acting on behalf of such individual or entity, that contacts a governmental entity about a governmental procurement during the restricted period of such governmental procurement.

**i.**  "Revenue contract" shall mean any written agreement between a governmental entity, as that term is defined in subparagraphs one, four, five, six or seven of paragraph a of this subdivision, and an offerer whereby the governmental entity gives or grants a concession or a franchise.

**j.**  "Unified court system" shall, for the purposes of this section only, mean the unified court system of the state of New York, or the office of court administration, where appropriate, other than town and village justice courts in jurisdictions with a population under fifty thousand, when it acts solely in an administrative capacity to engage in governmental procurements and shall not include the unified court system or any court of the state judiciary when it acts to hear and decide cases of original or appellate jurisdiction or otherwise acts in its judicial, as opposed to administrative, capacity.

2.  Every governmental entity that undertakes a governmental procurement shall:

42

a. At the same time that a restricted period is imposed, designate, with regard to each governmental procurement, a person or persons who are knowledgeable about the procurement and who may be contacted by offerers relative to the governmental procurement;

b. make any determinations on any governmental procurement:

  i. in a manner consistent with the principles provided for under subdivision two of section one hundred sixty-three of this chapter, or, if the governmental entity is a public benefit corporation, as that term is defined in section sixty-six of the general construction law, and the majority of the members consist of persons either appointed by the governor or who serve as members by virtue of holding a civil office of the state, the procurement guidelines adopted pursuant to section twenty-eight hundred seventy-nine of the public authorities law, and

  ii. free from any conduct that would be prohibited by subdivision five of section seventy-three or section seventy-four of the public officers law, or of other applicable ethics code provisions that are equivalent to subdivision five of section seventy-three or section seventy-four of the public officers law where the public officials that are involved in the governmental procurement are not subject to subdivision five of section seventy-three or section seventy-four of the public officers law;

3. Each offerer that contacts a governmental entity about a governmental procurement shall only make permissible contacts with respect to the governmental procurement, which shall mean that the offerer:

a. shall contact only the person or persons who may be contacted by offerers as designated by the governmental entity pursuant to paragraph a of subdivision two of this section relative to the governmental procurement, except that the following contacts are exempted from the provisions of this paragraph and do not need to be directed to a designated contact pursuant to section one hundred thirty-nine-k of this article:

  i. the submission of written proposals in response to a request for proposals, invitation for bids or any other method for soliciting a response from offerers intending to result in a procurement contract;

  ii. the submission of written questions by a method set forth in a request for proposals, or invitation for bids, or any other method for soliciting a response from offerers intending to result in a procurement contract, when all written questions and responses are to be disseminated to all offerers who have expressed an interest in the request for proposals, or invitation for bids, or any other method for soliciting a response from offerers intending to result in a procurement contract;

  iii. participation in a demonstration, conference or other means for exchange of information in a setting open to all potential bidders provided for in a request

43

for proposals, invitation for bids, or any other method for soliciting a response from offerers intending to result in a procurement contract;

iv. complaints by an offerer regarding the failure of the person or persons designated by the procuring governmental entity pursuant to this section to respond in a timely manner to authorized offerer contacts made in writing to the office of general counsel of the procuring governmental entity, provided that any such written complaints shall become a part of the procurement record;

v. offerers who have been tentatively awarded a contract and are engaged in communications with a governmental entity solely for the purpose of negotiating the terms of the procurement contract after being notified of tentative award;

vi. contacts between designated governmental entity staff of the procuring governmental entity and an offerer to request the review of a procurement contract award;

vii.

    a. contacts by offerers in protests, appeals or other review proceedings (including the apparent successful bidder or proposer and his or her representatives) before the governmental entity conducting the procurement seeking a final administrative determination, or in a subsequent judicial proceeding; or

    b. complaints of alleged improper conduct in a governmental procurement to the attorney general, inspector general, district attorney, or court of competent jurisdiction; or

    c. protests, appeals or complaints to the state comptroller's office during the process of contract approval, where the state comptroller's approval is required, provided that the state comptroller shall make a record of such communications and any response thereto which shall be entered into the procurement record pursuant to section one hundred sixty-three of this chapter; or

    d. complaints of alleged improper conduct in a governmental procurement conducted by a municipal agency or local legislative body to the state comptroller's office;

viii. communications between offerers and governmental entities that solely address the determination of responsibility by a governmental entity of an offerer;

ix. Any communications relating to a governmental procurement made under section one hundred sixty-two of the state finance law undertaken by (i) the non-profit-making agencies appointed pursuant to paragraph e of subdivision six of section one hundred sixty-two of the state finance law by the commissioner of the office of children and family services, the commission for the blind and visually handicapped, the commissioner of education, and (ii) the qualified charitable non-profit-making agencies for the blind, and qualified non-profit-making agencies for severely disabled persons as identified in subdivision two of section one hundred sixty-two of this chapter; provided, however, that any communications which

attempt to influence issuance or terms of the specifications that serve as the basis for the bid documents, requests for proposals, invitations for bids, or solicitations of proposals, or any other method for soliciting a response from offerers intending to result in a procurement contract with a state agency, the state legislature, the unified court system, a municipal agency or local legislative body shall not be exempt from the provisions of this paragraph; provided, however, that nothing in this subdivision shall be construed as recognizing or creating any new rights, duties or responsibilities or abrogating any existing rights, duties or responsibilities of any governmental entity as it pertains to implementation and enforcement of article eleven of this chapter or any other provision of law dealing with the governmental procurement process, and that nothing in this subdivision shall be interpreted to limit the authority of a governmental entity involved in a governmental procurement by exercise of an oversight function from providing information to offerers regarding the status of the review, oversight, or approval of a governmental procurement that has been submitted to or is under review by that governmental                                                       entity.

b.  shall not attempt to influence the governmental procurement in a manner that would result in a violation or an attempted violation of subdivision five of section seventy-three or section seventy-four of the public officers law, or of other applicable ethics code provisions that are equivalent to subdivision five of section seventy-three or section seventy-four of the public officers law where the public officials that are involved in the governmental procurement are not subject to subdivision five of section seventy-three or section seventy-four of the public officers law;

4.  Violations of paragraph a of subdivision three of this section shall include any contacts during the restricted period of a governmental procurement between the offerer and any member, officer or employee of any governmental entity other than the entity conducting the governmental procurement; provided, however, that nothing in this section shall be deemed to prohibit an offerer from communicating with a member of the state legislature or legislative staff about a governmental procurement being conducted by a governmental entity other than the state legislature, or a member of the state legislature or legislative staff contacting a governmental entity about a governmental procurement being conducted by a governmental entity other than the state legislature, provided that the member of the state legislature or legislative staff is acting in his or her official capacity.

5.  Governmental entity staff may consult the model guidelines that may be established by the advisory council on procurement lobbying pursuant to section one-t of the legislative law in implementing this section.

Contract #C000708
23000

**6.**

    **a.** Every governmental entity shall incorporate a summary of the policy and prohibitions regarding permissible contacts during a governmental procurement pursuant to subdivision three of this section, and copies of rules and regulations and applicable governmental entity guidelines and procedures regarding permissible contacts during a governmental procurement pursuant to subdivision three of this section into their solicitation of proposals or bid documents or specifications for all procurement contracts.

    **b.** Every governmental entity shall seek written affirmations from all offerers as to the offerer's understanding of and agreement to comply with the governmental entity's procedures relating to permissible contacts during a governmental procurement pursuant to subdivision three of this section. Such a written affirmation by an offerer shall be deemed to apply to any amendments to a procurement submitted by the governmental entity after an initial affirmation is received with an initial bid.

**7.** Notwithstanding any law to the contrary, prior to conducting an award of a procurement contract, a governmental entity conducting a governmental procurement shall make a final determination of responsibility of the proposed awardee in accordance with paragraph f of subdivision nine of section one hundred sixty-three of this chapter, or, if the governmental entity is a public benefit corporation, as that term is defined in section sixty-six of the general construction law, and the majority of the members consist of persons either appointed by the governor or who serve as members by virtue of holding a civil office of the state, according to the procurement guidelines adopted pursuant to subparagraph (iii) of paragraph (b) of subdivision three of section twenty-eight hundred seventy-nine of the public authorities law; provided, however, that nothing in this subdivision shall be construed as abrogating or diminishing any existing rights, duties or responsibilities of any governmental entity as it pertains to determinations of responsibility.

**8.** Any member, officer or employee of a governmental entity who becomes aware that an offerer has violated the provisions of subdivision three of this section with regard to permissible contacts during any governmental procurement shall immediately notify the ethics officer, inspector general, if any, or other official of the procuring governmental entity responsible for reviewing or investigating such matters. If an offerer violates the provisions of subdivision three of this section with regard to permissible contacts at a governmental entity other than the governmental entity conducting the governmental procurement, the member, officer or employee who becomes aware of the violation shall notify the ethics officer, inspector general, if any, or other official of the governmental entity responsible for reviewing or investigating such matters where that member, officer or employee works, who shall in turn notify the ethics officer, inspector general, if any, or other official of the procuring governmental entity responsible for reviewing or investigating such matters at the procuring governmental entity.

46

9. Every governmental entity shall establish a process for review by its ethics officer, inspector general, if any, or other official responsible for reviewing or investigating any allegations of violations of the provisions of subdivision three of this section with regard to permissible contacts on governmental procurements, and for the imposition of sanctions if such violations have been found to exist.

10.

    a. Upon notification of any allegation of a violation of the provisions of subdivision three of this section with regard to permissible contacts on governmental procurements, the governmental entity's ethics officer, inspector general, if any, or other official of the procuring governmental entity responsible for reviewing or investigating such matters shall immediately investigate such allegation and, if sufficient cause exists to believe that such allegation is true, shall give the offerer reasonable notice that an investigation is ongoing and an opportunity to be heard in response to the allegation.

    b. A finding that an offerer has knowingly and willfully violated the provisions of subdivision three of this section shall result in a determination of non-responsibility for such offerer, and such offerer and its subsidiaries, and any related or successor entity with substantially similar function, management, board of directors, officers and shareholders (hereinafter, for the purposes of this paragraph "offerer"), shall not be awarded the procurement contract, unless the governmental entity finds that the award of the procurement contract to the offerer is necessary to protect public property or public health or safety, and that the offerer is the only source capable of supplying the required article of procurement within the necessary timeframe, provided, that the governmental entity shall include in the procurement record a statement describing the basis for such a finding. Any subsequent determination of non-responsibility due to violation of this section within four years of a determination of non-responsibility due to a violation of this section shall result in the offerer being rendered ineligible to submit a proposal on or be awarded any procurement contract for a period of four years from the date of the second final determination. Every governmental entity shall ensure that its solicitations of proposals for procurement contracts require offerers to disclose findings of non-responsibility due to violations of the provisions of subdivision three of this section within the previous four years by any governmental entity. The failure of offerers to timely disclose accurate and complete information or otherwise cooperate with the governmental entity in administering this provision shall be considered by the governmental entity in its determination of responsibility; provided, further, that the governmental entity shall not award a contract to an offerer who fails to timely disclose accurate and complete information or otherwise cooperate with the governmental entity in administering this provision unless the governmental entity finds that the award of the procurement contract to the offerer is necessary to protect public property or public health or safety, and that the offerer is the only source capable of supplying the required article of procurement within the necessary timeframe, provided, that the governmental entity shall include in the procurement record a statement

describing the basis for such a finding. Upon a determination of non-responsibility or debarment due to a violation of this section, the governmental entity shall notify the office of general services, which shall keep a list of all offerers who have been determined to be non-responsible bidders or debarred due to violations of this section; the office of general services shall make publicly available such list and shall publish such list on its web site.

c. If a violation of the provisions of subdivision three of this section is found to have knowingly and willfully occurred, then the ethics officer or inspector general, if any, or other official of the procuring governmental entity responsible for reviewing or investigating such matters shall report instances of employee violation of the guidelines and procedures regarding implementation of subdivision two of this section to the governmental entity's head.

11. Nothing in this section shall be deemed to prevent:

a. contacts by offerers in protests, appeals or other review proceedings (including the apparent successful bidder or proposer and his or her representatives) before the governmental entity conducting the procurement seeking a final administrative determination, or in a subsequent judicial proceeding; or

b. complaints of alleged improper conduct in a governmental procurement to the attorney general, inspector general, district attorney, or court of competent jurisdiction; or

c. written protests, appeals or complaints to the state comptroller's office during the process of contract approval, where the state comptroller's approval is required by law, and where such communications and any responses thereto are made in writing and shall be entered in the procurement record pursuant to section one hundred sixty-three of this chapter; or

d. complaints of alleged improper conduct in a governmental procurement conducted by a municipal agency or local legislative body to the state comptroller's office;

provided, however, that nothing in this subdivision shall be construed as recognizing or creating any new rights, duties or responsibilities or abrogating any existing rights, duties or responsibilities of any governmental entity as it pertains to implementation and enforcement of article eleven of this chapter or any other provision of law dealing with the governmental procurement process.

§ 139-k. Disclosure of contacts and responsibility of offerers:

1. For purposes of this section, the following terms will have the following meanings unless specified otherwise.

a. "Governmental entity" shall mean:

Contract #C000708
23000

i. any department, board, bureau, commission, division, office, council, committee or officer of the state, whether permanent or temporary;

ii. each house of the state legislature;

iii. the unified court system;

iv. any public authority, public benefit corporation or commission created by or existing pursuant to the public authorities law;

v. a public authority or public benefit corporation, at least one of whose members is appointed by the governor or who serves as a member by virtue of holding a civil office of the state;

vi. municipal agency, as that term is defined in paragraph (ii) of subdivision (s) of section one-c of the legislative law; or

vii. a subsidiary or affiliate of such a public authority.

b. "Article of procurement" shall mean a commodity, service, technology, public work, construction, revenue contract, the purchase, sale or lease of real property or an acquisition or granting of other interest in real property, that is the subject of a governmental procurement.

c. "Contacts" shall mean any oral, written or electronic communication with a governmental entity under circumstances where a reasonable person would infer that the communication was intended to influence the governmental entity's conduct or decision regarding the governmental procurement.

d. "Proposal" shall mean any bid, quotation, offer or response to a governmental entity's solicitation of submissions relating to a procurement.

e. "Governmental procurement" shall mean:

i. the public announcement, public notice, or public communication to any potential vendor of a determination of a need for a procurement, which shall include, but not be limited to, the public notification of the specifications, bid documents, request for proposals, or evaluation criteria for a procurement contract,

ii. solicitation for a procurement contract,

iii. evaluation of a procurement contract,

iv. award, approval, denial or disapproval of a procurement contract, or

v. approval or denial of an assignment, amendment (other than amendments that are authorized and payable under the terms of the procurement contract as it was finally awarded or approved by the comptroller, as applicable), renewal or extension of a procurement contract, or any other material change in the procurement contract resulting in a financial benefit to the offerer.

f. "Restricted period" shall mean the period of time commencing with the earliest written notice, advertisement or solicitation of a request for proposal, invitation for bids, or solicitation of proposals, or any other method for soliciting a response from offerers intending to result in a procurement contract with a governmental

49

entity and ending with the final contract award and approval by the governmental entity and, where applicable, the state comptroller.

g. "Procurement contract" shall mean any contract or other agreement, including an amendment, extension, renewal, or change order to an existing contract (other than amendments, extensions, renewals, or change orders that are authorized and payable under the terms of the contract as it was finally awarded or approved by the comptroller, as applicable), for an article of procurement involving an estimated annualized expenditure in excess of fifteen thousand dollars. Grants, article eleven-B state finance law contracts, program contracts between not-for-profit organizations, as defined in article eleven-B of this chapter, and the unified court system, intergovernmental agreements, railroad and utility force accounts, utility relocation project agreements or orders, contracts governing organ transplants, contracts allowing for state participation in a trade show, and eminent domain transactions shall not be deemed procurement contracts.

h. "Offerer" shall mean the individual or entity, or any employee, agent or consultant or person acting on behalf of such individual or entity, that contacts a governmental entity about a governmental procurement during the restricted period of such governmental procurement whether or not the caller has a financial interest in the outcome of the procurement; provided, however, that a governmental agency or its employees that communicates with the procuring agency regarding a governmental procurement in the exercise of its oversight duties shall not be considered an offerer..

i. "Revenue contract" shall mean any written agreement between a governmental entity, as that term is defined in subparagraphs one, four, five, six or seven of paragraph a of this subdivision, and an offerer whereby the governmental entity gives or grants a concession or a franchise.

j. "Unified court system" shall, for the purposes of this section only, mean the unified court system of the state of New York, or the office of court administration, where appropriate, other than town and village justice courts in jurisdictions with a population under fifty thousand, when it acts solely in an administrative capacity to engage in governmental procurements and shall not include the unified court system or any court of the state judiciary when it acts to hear and decide cases of original or appellate jurisdiction or otherwise acts in its judicial, as opposed to administrative, capacity.

2. Each governmental entity shall ensure that solicitation of proposals or bid documents or specifications, or contract documents, as applicable, for procurement contracts shall require offerers to disclose findings of non-responsibility made within the previous four years by any governmental entity where such prior finding of non-responsibility was due to: (a) a violation of section one hundred thirty-nine-j of this article, or (b) the intentional provision of false or incomplete information to a governmental entity.

3. The failure of an offerer to timely disclose accurate or complete information to a governmental entity pursuant to subdivision two of this section shall be considered by such governmental entity in its determination of the responsibility of such offerer. No procurement contract shall be awarded to any such offerer, its subsidiaries, and any related or successor entity with substantially similar function, management, board of directors, officers and shareholders (hereinafter, for the purposes of this subdivision, "offerer"), unless the governmental entity finds that the award of the procurement contract to the offerer is necessary to protect public property or public health or safety, and that the offerer is the only source capable of supplying the required article of procurement within the necessary timeframe, provided, that the governmental entity shall include in the procurement record a statement describing the basis for such a finding.

4. Upon any contact in the restricted period, the governmental entity shall obtain the name, address, telephone number, place of principal employment and occupation of the person or organization making the contact and inquire and record whether the person or organization making such contact was the offerer or was retained, employed or designated by or on behalf of the offerer to appear before or contact the governmental entity about the governmental procurement. All recorded contacts shall be included in the procurement record for the procurement contract.

5. Any procurement contract award subject to the provisions of this section and section one hundred thirty-nine-j of this article shall contain a certification by the offerer that all information provided to the procuring governmental entity with respect to this section is complete, true and accurate, and each such procurement contract shall contain a provision authorizing the governmental entity to terminate such contract in the event such certification is found to be intentionally false or intentionally incomplete. The governmental entity shall include in the procurement record a statement describing the basis for any action taken pursuant to such termination provision.

Any communications received by a governmental entity from members of the state legislature, or legislative staffs, when acting in their official capacity, shall not be considered to be a "contact" within the meaning of this section and shall not be recorded by a governmental entity pursuant to this section.

51

Contract #C000708
23000

## APPENDIX G: ST-220-CA

New York State Department of Taxation and Finance

# Contractor Certification to Covered Agency

(Pursuant to Section 5-a of the Tax Law, as amended, effective April 26, 2006)

## ST-220-CA
(6/06)

For information, consult Publication 223, *Questions and Answers Concerning Tax Law Section 5-a* (see *Need Help?* on back).

| Contractor name | For covered agency use only |
|---|---|
| American Association of motor Vehicle admin (AAMVA) | Contract number or description |

| Contractor's principal place of business · City · State · ZIP code | |
|---|---|
| 4301 Wilson Blvd Suite 400 Arlington VA 22203 | |

| Contractor's mailing address *(if different than above)* | Estimated contract value over the full term of contract (but not including renewals) |
|---|---|
| | $ |

| Contractor's federal employer identification number (EIN) | Contractor's sales tax ID number *(if different from contractor's EIN)* | |
|---|---|---|
| 53-0172317 | | |

| Contractor's telephone number | Covered agency name | |
|---|---|---|
| 703-522-4200 | | |

| Covered agency address | Covered agency telephone number |
|---|---|
| | |

I, MARC SITTA _____ , hereby affirm, under penalty of perjury, that I am ___CFO___

    (name)                                                                    (title)

of the above-named contractor, that I am authorized to make this certification on behalf of such contractor, and I further certify that:

*(Mark an X in only one box)*

☑ The contractor has filed Form ST-220-TD with the Department of Taxation and Finance in connection with this contract and, to the best of contractor's knowledge, the information provided on the Form ST-220-TD, is correct and complete.

☐ The contractor has previously filed Form ST-220-TD with the Tax Department in connection with _____

                                                                              *(insert contract number or description)*

and, to the best of the contractor's knowledge, the information provided on that previously filed Form ST-220-TD, is correct and complete as of the current date, and thus the contractor is not required to file a new Form ST-220-TD at this time.

Sworn to this 13 day of July, 20 11

_____          _____
    (sign before a notary public)                              (title) CFO

## Instructions

### General information

Tax Law section 5-a was amended, effective April 26, 2006. On or after that date, in all cases where a contract is subject to Tax Law section 5-a, a contractor must file (1) Form ST-220-CA, *Contractor Certification to Covered Agency* with a covered agency, and (2) Form ST-220-TD with the Tax Department before a contract may take effect. The circumstances when a contract is subject to section 5-a are listed in Publication 223, Q&A 3. This publication is available on our Web site, by fax, or by mail. (See *Need help?* for more information on how to obtain this publication.) In addition, a contractor must file a new Form ST-220-CA with a covered agency before an existing contract with such agency may be renewed.

If you have questions, please call our information center at 1 800 698-2931.

**Note:** Form ST-220-CA must be signed by a person authorized to make the certification on behalf of the contractor, and the acknowledgement on page 2 of this form must be completed before a notary public.

### When to complete this form

As set forth in Publication 223, a contract is subject to section 5-a, and you must make the required certification(s). If:

i.  The procuring entity is a *covered agency* within the meaning of the statute (see Publication 223, Q&A 5);

ii. The contractor is a *contractor* within the meaning of the statute (see Publication 223, Q&A 6); and

iii. The contract is a *contract* within the meaning of the statute. This is the case when it (a) has a value in excess of $100,000 and (b) is a contract for *commodities* or *services*, as such terms are defined for purposes of the statute (see Publication 223, Q&A 8 and 9).

Furthermore, the procuring entity must have begun the solicitation to purchase on or after January 1, 2005, and the resulting contract must have been awarded, amended, extended, renewed, or assigned on or after April 26, 2006 (the effective date of the section 5-a amendments).

Contract #C000708
23000

Page 2 of 2   ST-220-CA (6/06)

**Individual, Corporation, Partnership, or LLC Acknowledgment**

COMMONWEALTH OF ~~STATE OF~~ VIRGINIA    }
:    SS.:
COUNTY OF ARLINGTON

On the 13 day of JULY in the year 20 11, before me personally appeared MARC SAITTA .

known to me to be the person who executed the foregoing instrument, who, being duly sworn by me did depose and say that

_he resides at 4301 WILSON BLVD, SUITE 400 ,

Town of ARLINGTON .

County of ARLINGTON

State of VIRGINIA ; and further that:

[Mark an *X* in the appropriate box and complete the accompanying statement.]

☐ (If an individual): _he executed the foregoing instrument in his/her name and on his/her own behalf.

☒ (If a corporation): _he is the CFO

of AAMVA , the corporation described in said instrument; that, by authority of the Board of Directors of said corporation, _he is authorized to execute the foregoing instrument on behalf of the corporation for purposes set forth therein; and that, pursuant to that authority, he executed the foregoing instrument in the name of and on behalf of said corporation as the act and deed of said corporation.

☐ (If a partnership): _he is a _____

of_____ , the partnership described in said instrument; that, by the terms of said partnership, _he is authorized to execute the foregoing instrument on behalf of the partnership for purposes set forth therein; and that, pursuant to that authority, _he executed the foregoing instrument in the name of and on behalf of said partnership as the act and deed of said partnership.

☐ (If a limited liability company): _he is a duly authorized member of _____ ;
LLC, the limited liability company described in said instrument; that _he is authorized to execute the foregoing instrument on behalf of the limited liability company for purposes set forth therein; and that, pursuant to that authority, _he executed the foregoing instrument in the name of and on behalf of said limited liability company as the act and deed of said limited liability company.

_____
Notary Public

Registration No. 132591    My Comm. Exps. 12/31/2013

**Privacy notification**

The Commissioner of Taxation and Finance may collect and maintain personal information pursuant to the New York State Tax Law, including but not limited to, sections 5-a, 171, 171-a, 287, 308, 429, 475, 505, 697, 1096, 1142, and 1415 of that Law; and may require disclosure of social security numbers pursuant to 42 USC 405(c)(2)(C)(i).

This information will be used to determine and administer tax liabilities and, when authorized by law, for certain tax offset and exchange of tax information programs as well as for any other lawful purpose.

Information concerning quarterly wages paid to employees is provided to certain state agencies for purposes of fraud prevention, support enforcement, evaluation of the effectiveness of certain employment and training programs and other purposes authorized by law.

Failure to provide the required information may subject you to civil or criminal penalties, or both, under the Tax Law.

This information is maintained by the Director of Records Management and Data Entry, NYS Tax Department, W A Harriman Campus, Albany NY 12227; telephone 1 800 225-5829. From areas outside the United States and outside Canada, call (518) 485-6800.

**Need help?**

| | |
|---|---|
| Internet access: www.nystax.gov (for information, forms, and publications) | |
| Fax-on-demand forms: | 1 800 748-3676 |
| Telephone assistance is available from 8:00 A.M. to 5:00 P.M. (eastern time). Monday through Friday. | 1 800 698-2931 |
| To order forms and publications: | 1 800 462-8100 |
| From areas outside the U.S. and outside Canada: | (518) 485-6800 |
| Hearing and speech impaired (telecommunications device for the deaf (TDD) callers only): | 1 800 634-2110 |
| Persons with disabilities: In compliance with the Americans with Disabilities Act, we will ensure that our lobbies, offices, meeting rooms, and other facilities are accessible to persons with disabilities. If you have questions about special accommodations for persons with disabilities, please call 1 800 972-1233. | |

Contract #C000708
23000

## APPENDIX H: ST-220-TD



New York State Department of Taxation and Finance
# Contractor Certification
(Pursuant to Section 5-a of the Tax Law, as amended,
effective April 26, 2006)

**ST-220-TD**
(6/06)

For information, consult Publication 223, *Questions and Answers Concerning Tax Law Section 5-a (see Need help? below).*

Contractor name
*American Association of Motor Vehicle Administrators ( AAMVA )*

Contractor's principal place of business — City — State — ZIP code
*4301 Wilson Blvd, Suite 400    Arlington VA    22203*

Contractor's mailing address *(if different than above)*

| Contractor's federal employer identification number (EIN) *53-0172317* | Contractor's sales tax ID number *(if different from contractor's EIN)* | Contractor's telephone number *(703) 522-4200* |
|---|---|---|
| Covered agency name | Contract number or description | Estimated contract value over the full term of contract (but not including renewals) S |
| Covered agency address | | Covered agency telephone number |

## General Information

Section 5-a of the Tax Law, as amended, effective April 26, 2006, requires certain contractors awarded certain state contracts valued at more than $100,000 to certify to the Tax Department that they are registered to collect New York State and local sales and compensating use taxes, if they made sales delivered by any means to locations within New York State of tangible personal property or taxable services having a cumulative value in excess of $300,000, measured over a specified period. In addition, contractors must certify to the Tax Department that each affiliate and subcontractor exceeding such sales threshold during a specified period is registered to collect New York State and local sales and compensating use taxes. Contractors must also file a Form ST-220-CA, certifying to the procuring state entity that they filed Form ST-220-TD with the Tax Department and that the information contained on Form ST-220-TD is correct and complete as of the date they file Form ST-220-CA.

For more detailed information regarding this form and section 5-a of the Tax Law, see Publication 223, *Questions and Answers Concerning Tax Law Section 5-a, (as amended, effective April 26, 2006)*, available at *www.nystax.gov.* Information is also available by calling the Tax Department's Contractor Information Center at 1 800 698-2931.

**Note:** Form ST-220-TD must be signed by a person authorized to make the certification on behalf of the contractor, and the acknowledgement on page 4 of this form must be completed before a notary public.

Mail completed form to:

**NYS TAX DEPARTMENT
DATA ENTRY SECTION
W A HARRIMAN CAMPUS
ALBANY NY 12227**

## Privacy notification

The Commissioner of Taxation and Finance may collect and maintain personal information pursuant to the New York State Tax Law, including but not limited to, sections 5-a, 171, 171-a, 287, 308, 429, 475, 505, 697, 1096, 1142, and 1415 of that Law; and may require disclosure of social security numbers pursuant to 42 USC 405(c)(2)(C)(i).

This information will be used to determine and administer tax liabilities and, when authorized by law, for certain tax offset and exchange of tax information programs as well as for any other lawful purpose.

Information concerning quarterly wages paid to employees is provided to certain state agencies for purposes of fraud prevention, support enforcement, evaluation of the effectiveness of certain employment and training programs and other purposes authorized by law.

Failure to provide the required information may subject you to civil or criminal penalties, or both, under the Tax Law.

This information is maintained by the Director of Records Management and Data Entry, NYS Tax Department, W A Harriman Campus, Albany NY 12227; telephone 1 800 225-5829. From areas outside the United States and outside Canada, call (518) 485-6800.

### Need help?

 Internet access: *www.nystax.gov*
(for information, forms, and publications)

Fax-on-demand forms: 1 800 748-3676

Telephone assistance is available from 8:00 A.M. to 5:00 P.M. (eastern time), Monday through Friday.

To order forms and publications: 1 800 462-8100

Sales Tax Information Center: 1 800 698-2909

From areas outside the U.S. and outside Canada: (518) 485-6800

Hearing and speech impaired (telecommunications device for the deaf (TDD) callers only): 1 800 634-2110

**Persons with disabilities:** In compliance with the Americans with Disabilities Act, we will ensure that our lobbies offices, meeting rooms, and other facilities are accessible to persons with disabilities. If you have questions about special accommodations for persons with disabilities, please call 1 800 972-1233.

54

Contract #C000708
23000

Page 2 of 4   ST-220-TD (6/06)

I, _MARL SAITH_____ , hereby affirm, under penalty of perjury, that I am __CFO_____
(name)                                                                                      (title)

of the above-named contractor, and that I am authorized to make this certification on behalf of such contractor.

Make only one entry in each section below.

## Section 1 — Contractor registration status

☐ The contractor has made sales delivered by any means to locations within New York State of tangible personal property or taxable services having a cumulative value in excess of $300,000 during the four sales tax quarters which immediately precede the sales tax quarter in which this certification is made. The contractor is registered to collect New York State and local sales and compensating use taxes with the Commissioner of Taxation and Finance pursuant to sections 1134 and 1253 of the Tax Law, and is listed on Schedule A of this certification.

☒ The contractor has not made sales delivered by any means to locations within New York State of tangible personal property or taxable services having a cumulative value in excess of $300,000 during the four sales tax quarters which immediately precede the sales tax quarter in which this certification is made.

## Section 2 — Affiliate registration status

☐ The contractor does not have any affiliates.

☐ To the best of the contractor's knowledge, the contractor has one or more affiliates having made sales delivered by any means to locations within New York State of tangible personal property or taxable services having a cumulative value in excess of $300,000 during the four sales tax quarters which immediately precede the sales tax quarter in which this certification is made, and each affiliate exceeding the $300,000 cumulative sales threshold during such quarters is registered to collect New York State and local sales and compensating use taxes with the Commissioner of Taxation and Finance pursuant to sections 1134 and 1253 of the Tax Law. The contractor has listed each affiliate exceeding the $300,000 cumulative sales threshold during such quarters on Schedule A of this certification.

☐ To the best of the contractor's knowledge, the contractor has one or more affiliates, and each affiliate has not made sales delivered by any means to locations within New York State of tangible personal property or taxable services having a cumulative value in excess of $300,000 during the four sales tax quarters which immediately precede the sales tax quarter in which this certification is made

## Section 3 — Subcontractor registration status

☐ The contractor does not have any subcontractors.

☐ To the best of the contractor's knowledge, the contractor has one or more subcontractors having made sales delivered by any means to locations within New York State of tangible personal property or taxable services having a cumulative value in excess of $300,000 during the four sales tax quarters which immediately precede the sales tax quarter in which this certification is made, and each subcontractor exceeding the $300,000 cumulative sales threshold during such quarters is registered to collect New York State and local sales and compensating use taxes with the Commissioner of Taxation and Finance pursuant to sections 1134 and 1253 of the Tax Law. The contractor has listed each subcontractor exceeding the $300,000 cumulative sales threshold during such quarters on Schedule A of this certification.

☐ To the best of the contractor's knowledge, the contractor has one or more subcontractors, and each subcontractor has not made sales delivered by any means to locations within New York State of tangible personal property or taxable services having a cumulative value in excess of $300,000 during the four sales tax quarters which immediately precede the sales tax quarter in which this certification is made.

Sworn to this 13 day of __July_____ , 20 11

_____                          _C Fo_____
(sign before a notary public)                                    (title)

55

Contract #C000708
23000

ST-220-TD (6/06)  **Page 3** of 4

## Schedule A — Listing of each person (contractor, affiliate, or subcontractor) exceeding $300,000 cumulative sales threshold

List the contractor, or affiliate, or subcontractor in Schedule A only if such person exceeded the $300,000 cumulative sales threshold during the specified sales tax quarters. See directions below. For more information, see Publication 223.

| A Relationship to Contractor | B Name | C Address | D Federal ID Number | E Sales Tax ID Number | F Registration in progress |
|---|---|---|---|---|---|
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |

Column A – Enter *C* in column A if the contractor; *A* if an affiliate of the contractor; or *S* if a subcontractor.

Column B – Name - If person is a corporation or limited liability company, enter the exact legal name as registered with the NY Department of State, if applicable. If person is a partnership or sole proprietor, enter the name of the partnership and each partner's given name, or the given name(s) of the owner(s), as applicable. If person has a different DBA (doing business as) name, enter that name as well.

Column C – Address - Enter the street address of person's principal place of business. Do not enter a PO box.

Column D – ID number - Enter the federal employer identification number (EIN) assigned to the person or person's business, as applicable. If the person is an individual, enter the social security number of that person.

Column E – Sales tax ID number - Enter only if different from federal EIN in column D.

Column F – If applicable, enter an X if the person has submitted Form DTF-17 to the Tax Department but has not received its certificate of authority as of the date of this certification.

Contract #C000708
23000

Page 4 of 4  ST-220-TD (6/06)

## Individual, Corporation, Partnership, or LLC Acknowledgment

Commonwealth
~~STATE~~ OF  VIRGINIA

         :       SS.:

COUNTY OF ARLINGTON

On the 13 day of JULY _____ in the year 20_11_, before me personally appeared _MARC SAITTA_,

known to me to be the person who executed the foregoing instrument, who, being duly sworn by me did depose and say that

_he resides at _4301 WILSON BLVD., SUITE 400_,

Town of _ARLINGTON_,

County of _ARLINGTON_,

State of _VIRGINIA_; and further that:

[Mark an X in the appropriate box and complete the accompanying statement.]

☐ (If an individual): _he executed the foregoing instrument in his/her name and on his/her own behalf.

☒ (If a corporation): _he is the_ CFO _____

of_ AAMVA _____, the corporation described in said instrument; that, by authority of the Board
of Directors of said corporation, _he is authorized to execute the foregoing instrument on behalf of the corporation for
purposes set forth therein; and that, pursuant to that authority, _he executed the foregoing instrument in the name of and on
behalf of said corporation as the act and deed of said corporation.

☐ (If a partnership): _he is a _____

of_____, the partnership described in said instrument; that, by the terms of said
partnership, _he is authorized to execute the foregoing instrument on behalf of the partnership for purposes set forth
therein; and that, pursuant to that authority, _he executed the foregoing instrument in the name of and on behalf of said
partnership as the act and deed of said partnership.

☐ (If a limited liability company): _he is a duly authorized member of _____
LLC, the limited liability company described in said instrument; that _he is authorized to execute the foregoing instrument
on behalf of the limited liability company for purposes set forth therein; and that, pursuant to that authority, _he executed
the foregoing instrument in the name of and on behalf of said limited liability company as the act and deed of said limited
liability company.

_____
Notary Public

Registration No. _132591_    My Comm. Exp. _12/31/2013_

57