**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| STATE OF ILLINOIS; DISTRICT OF COLUMBIA; STATE OF CALIFORNIA; COMMONWEALTH OF VIRGINIA; STATE OF ARIZONA; STATE OF COLORADO; STATE OF CONNECTICUT; STATE OF DELAWARE; STATE OF HAWAI'I; STATE OF MAINE; STATE OF MARYLAND; COMMONWEALTH OF MASSACHUSETTS; STATE OF MICHIGAN; STATE OF MINNESOTA; STATE OF NEVADA; STATE OF NEW JERSEY; STATE OF NEW MEXICO; STATE OF NEW YORK; STATE OF OREGON; Governor of the COMMONWEALTH OF PENNSYLVANIA; STATE OF VERMONT; STATE OF WASHINGTON; STATE OF WISCONSIN; | No. 1:26-mc-19 |
| *Movants*,     v. | |
| UNITED STATES DEPARTMENT OF HOMELAND SECURITY, | |
| *Respondent*. | |

**DECLARATION OF DIOSDADO ARROYO**

I, Diosdado Arroyo, declare under penalty of perjury pursuant to 28 U.S.C. § 1746, as follows:

1.  I am a resident of the State of Pennsylvania. I am over the age of 18, competent to testify as to the facts herein, and I testify based on personal knowledge, records kept in the ordinary course of business at the Pennsylvania Department of Transportation (PennDOT), and information I learned from PennDOT personnel whose work I rely upon and who have assisted me in gathering this information from our agency.

2.  I am currently employed by PennDOT as Director of the Bureau of Driver Licensing since September 30, 2023. Prior to serving as the Director of the Bureau of Driver Licensing, I served as the Bureau of Driver Licensing's License Control Division Chief and held various roles with PennDOT for more than 37 years, most of which were within the Bureau of Driver Licensing.

3.  In my current role at PennDOT, I am responsible for all aspects of the issuance of and administration of Pennsylvania's driver licensing program. As the Director of the Bureau of Driver Licensing of PennDOT, I am responsible for the uniform issuance of all driver licenses in accordance with state and federal laws, including non-commercial and commercial driver licenses, including the IT systems and coordination between the states in furtherance of administering all of Pennsylvania's driver licensing programs. This includes not only the issuance of all types of driver licenses and identification cards, but I also oversee the personnel responsible for the receipt and processing of requests for driver and motor vehicle records, which requires significant IT safeguards and processes to ensure that all requests are received, vetted and fulfilled in strict conformity with applicable state and federal laws.

4.  In Pennsylvania, PennDOT is the state driver licensing agency (SDLA) and has powers and duties relating to issuing and renewing both commercial drivers' licenses (CDLs) and non-commercial drivers' licenses. (See, for example, 75 Pa.C.S. §§ 1501-1520 (relating to driver licensing generally) and 1601-1622 (relating to commercial drivers)) Among other things, PennDOT is responsible for verifying each drivers' license applicant's legal eligibility and medical fitness, identifying and disciplining problem drivers, and protecting the privacy of drivers' personal information.

DECLARATION OF DIOSDADO ARROYO

## Pennsylvania's Management of Driver Licensing

5. PennDOT is responsible for issuing and renewing commercial driver's licenses (CDLs) and personal driver's licenses (PDLs) to residents of Pennsylvania.

6. As part of Pennsylvania's commitment to traffic safety, PennDOT follows stringent procedures to ensure that drivers do not receive a license unless they can safely operate a vehicle and observe all traffic laws. In pursuit of that goal, and in accordance with state and federal laws and regulations, PenDOT administers driving tests, assesses applicants' medical fitness, checks to ensure that each applicant is not the holder of a driver's license from any other state, and checks each applicant's driving history to ensure that the applicant has not been subject to discipline or had their license revoked. For all drivers' licenses, including CDLs, Pennsylvania also verifies the applicant's immigration status.

7. To comply with our legal obligations and ensure that each driver has a clean record, it is necessary for PennDOT to have a means of checking each driver's history, not only in Pennsylvania, but in other states where the applicant may have held a license.

8. For CDLs, this check is conducted through a database called the Commercial Driver's License Information System (CDLIS).

## The Commercial Driver's License Information System (CDLIS)

9. CDLIS is a database that contains driver records owned and maintained by the states. It operates as a clearinghouse where states can assist one another in verifying the identity and history of individual CDL applicants. CDLIS is operated on behalf of the states as a cooperative endeavor by the American Association of Motor Vehicle Administrators (AAMVA), a trade association for SDLAs, of which all states and some foreign jurisdictions are members.

10. CDLIS does not contain a driver's full record. Rather, CDLIS contains a "Master Pointer Record" (MPR) for each CDL holder in the United States, which consists of each driver's: state of record, driver license number, name, date of birth, social security number (SSN), sex, the date and time the driver was added to CDLIS, the date and time the record was last updated, and indicators showing whether a change in the state of record is in progress, and whether the number in the SSN field is an SSN, a substitute SSN, or a pseudo SSN.

DECLARATION OF DIOSDADO ARROYO

11.     If PennDOT queries CDLIS and finds that an applicant has a Master Pointer Record, PenDOT would then send the identified state of record for that driver a request for the driver's full history, called a "driver record" or "Driver History Record" (DHR) which the state of record would provide directly to the requesting state. Similarly, if another state queries CDLIS and finds a Master Pointer Record for a driver licensed in Pennsylvania, PennDOT would send that driver's record to the requesting state.

12.     To query CDLIS, a user must know either the driver's name and date of birth, the driver's license number, or the driver's SSN. Users cannot conduct indiscriminate batch searches, such as searching for all drivers born in 1987, or all drivers with the last name "Smith."

13.     As stated above, the data in CDLIS is owned and maintained by the states. PennDOT has the power to add, delete, or change its own records maintained in CDLIS—and regularly does so, to ensure that our data remains accurate and up-to-date. Neither AAMVA nor the Federal Motor Carrier Safety Administration (FMCSA), on the other hand, has any power to make additions, deletions, or changes to Pennsylvania's CDLIS data.

14.     Before issuing a CDL, Pennsylvania, like all states, is required to use CDLIS to determine whether an applicant for a CDL already holds one, whether his or her license has been disqualified, and whether the applicant is disqualified from operating a motor vehicle. 49 CFR 383.73(b)(ii). PennDOT remains under pause for the issuance of non-domiciled commercial learner's permits and drivers' licenses but when  issuance is again proceeding normally, and in the ordinary course of business, PennDOT usually queries CDLIS multiple times per day to carry out its programs in compliance with state and federal law.

15.     PennDOT has participated in and relied on CDLIS to operate its CDL program since April 1, 1992. Even if we were not legally required to use CDLIS, we would need CDLIS or some other system like it in order to serve our public safety mission: PennDOT needs to know whether an applicant has a history of dangerous or unlawful driving in order to fulfill its public safety mission. If CDLIS were to shut down, particularly on short notice, it would be a major impediment to the operation of our CDL program.

16.     PennDOT participates in CDLIS pursuant to a contract with AAMVA.

3

DECLARATION OF DIOSDADO ARROYO

17.     In addition to CDLIS, AAMVA also operates other critical programs that PennDOT uses.  For example, AAMVA operates the Problem Driver Pointer System ("PDPS"). PDPS allows states to search the National Driver Registry ("NDR"), which contains information on problem drivers. By carrying out a PDPS search, PennDOT obtains information that directs them to the jurisdiction that has a full record of a driver's history.  Based on this information, PennDOT can determine whether an applicant for a driver's license is eligible.

18.     Like CDLIS, PDPS was created by statute and is a function of the National Highway Transportation Safety Administration ("NHTSA").

19.     PennDOT also relies on AAMVA's Driver's License Data Verification (DLDV) system to carry out motor vehicle titling transactions, the State-to-State Verification Service (S2S) and the Commercial Skills Test Information Management System (CSTIMS).

20.     PennDOT queries at least one AAMVA system every time it issues certain classes of driver's licenses or carries out a motor vehicle transaction.

### FMCSA's Demand for CDLIS Data

21.     On July 24, 2026, PennDOT learned that FMCSA has demanded that AAMVA turn over to FMCSA the entire contents of CDLIS, including Pennsylvania's records. PennDOT became aware of this information in view of an AAMVA Board of Directors meeting held on July 24th.

22.     I am unaware of FMCSA or any other federal agency ever previously requesting or demanding that AAMVA turn over the contents of CDLIS or any other database.

23.     I understand that FMCSA has asserted that it needs this data so that it can verify CDL validity and conduct motor carrier safety assessments. As described above, PennDOT already carries out those functions, as is typical for state agencies, in accordance with federal and state statutes and regulations.

24.     I also understand that FMCSA has asserted that, once it obtains this data, it could lawfully share it with any other federal agency for use in carrying out that agency's functions.  I am not aware of any data-security protections that would ensure the security and confidentiality of this data once it is in the hands of either FMCSA or any other federal agency.

DECLARATION OF DIOSDADO ARROYO

**Irreparable Harm of Disclosure to FMCSA**

25. FMCSA's demand seeks Pennsylvania's proprietary and confidential records and data.

26. Once Pennsylvania's data is in FMCSA's hands, Pennsylvania would lose control and oversight of its confidential records.  To my knowledge, FMCSA has not made any commitments to AAMVA that it will maintain the confidentiality of this data; to the contrary, it has affirmatively stated that it is authorized to redisclose it to any other federal agency.  And even if FMCSA made promises to AAMVA regarding the security and/or privacy of this data, Pennsylvania would not be in a position to enforce those promises, and these new records, which would be federal and not state records, could be used for purposes that violate our state law and regulations regarding the confidentiality of information.

27. In particular, PennDOT understands itself to be bound by Pennsylvania laws requiring PennDOT to ensure that all intended uses of personal identifying information obtained by third parties is consistent with Pennsylvania statutes and regulations.  Under state law and the federal Driver's Privacy Protection Act, 18 U.S.C. §§ 2721–2724, it is a criminal offense for PennDOT employees, not federal agencies such as FMCSA, that fail to adhere to these laws.  Handing over Pennsylvania's proprietary and confidential information to FMCSA is incompatible with those obligations.

28. Pennsylvania's agreement with AAMVA includes provisions requiring AAMVA to follow Pennsylvania's requirements in regard to data security and confidentiality, but those obligations would not run to FMCSA.

29. Moreover, if the data were turned over to FMCSA, Pennsylvania would not be able to update the data or ensure that it is accurate, creating the risk that out-of-date or erroneous data attributed to Pennsylvania could form the basis or justification for federal action.

30. Finally, residents of Pennsylvania entrust the state with their personal data when they apply for a commercial driver's license.  That trust would be destroyed if the data is turned over to FMCSA without controls and without a clear statement of FMCSA's purpose in seeking it.

31. A readily foreseeable result of this breach of trust is that fewer people will seek CDLs from Pennsylvania. This means Pennsylvania will lose revenue, as each applicant for a CDL must

5

pay at least an $84.50 fee, which is often more based on an applicant's request for additional CDL endorsements.

32. There is also an acute risk that some individuals who are concerned about broadly disclosing their personal information to the federal government—such as individuals who are lawfully qualified to obtain a CDL but are part of mixed-status immigration families—may avoid the CDL process entirely and attempt to drive commercial motor vehicles without a license. If that occurs in even a small number of cases, it would pose grave public-safety risks, as states would not be able to identify the drivers of those motor vehicles or ensure that they are properly qualified to drive commercial motor vehicles.

### Pennsylvania would be harmed if AAMVA's programs were impaired

33. I understand that FMCSA has threatened to terminate all of its funding to and contracts with AAMVA, including the funding that provides for the upkeep of CDLIS.

34. Pennsylvania would be seriously harmed if FMCSA carried out those threats.

35. As stated above, PennDOT heavily relies on CDLIS, the PDPS, and other resources and services operated by AAMVA. AAMVA's services are critical to PennDOT and our continued collaboration with AAMVA and federal partners is significantly impaired by FMCSA's unprecedented actions.

36. In particular, without an effective, functioning, and up-to-date CDLIS, PennDOT would not be able to issue new CDLs or renew existing ones in compliance with federal law and regulations. This would result in an immediate reduction in licensed CDL holders, which would further impair the movement of goods, further drive up the costs of consumer goods and strain an already shrinking pool of CDL holders. PennDOT would face legal challenges from individuals that cannot obtain or renew a CDL, increasing caseloads that are already growing due to other unprecedented actions of FMCSA. Without CDLIS, PennDOT's CDL program would be halted as it could not comply with federal law and regulations. And even if those laws and regulations did not apply, Pennsylvania would be harmed by losing access to an important public safety resource that keeps unsafe drivers off of Pennsylvania's roads.

DECLARATION OF DIOSDADO ARROYO

**PennDOT participated in CDLIS on the understanding that its records would be kept secure**

37.     I understand that Pennsylvania's participation in the CDLIS system is a condition to receiving certain federal highway funds.

38.     It has never been Pennsylvania's understanding that FMCSA or any other federal agency has lawful authority to obtain the contents of CDLIS, nor that granting FMCSA the right to obtain and redisclose Pennsylvania's records was a condition of participation in CDLIS

39.     Pennsylvania has relied on the security and confidentiality of CDLIS records in designing its own information systems, in establishing practices relating to the maintenance of such records, and in notifying applicants for CDLs about how their information would be used and shared.

40.     If FMCSA is able to obtain and redisclose Pennsylvania's records whenever it wishes, Pennsylvania will need to alter its practices.  Among other things, Pennsylvania will need to revise the assurances of confidentiality it provides to CDL applicants, which will require the expenditure of substantial state resources.  Depending on what FMCSA does with Pennsylvania's records, any dereliction of generally accepted information security practices by FMCSA could expose Pennsylvania to costly obligations under federal and state laws governing data breaches.

41.     If PennDOT had been aware that those funds were conditioned on having to hand over driver data en masse as FMCSA is currently asking it to do, it would not have agreed to participate in CDLIS, or it certainly would have altered its interactions and its contractual relationship with AAMVA.

* * *

I declare under penalty of perjury under the laws of the United States that, to the best of my knowledge, the foregoing is true and correct.

Executed on August 8, 2026, in Harrisburg, Pennsylvania.


 /s/ Diosdado Arroyo

Diosdado Arroyo
Director, Bureau of Driver Licensing
Pennsylvania Department of Transportation

7

DECLARATION OF DIOSDADO ARROYO