**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF
VIRGINIA**

| | |
|---|---|
| STATE OF ILLINOIS, et al.,<br><br>*Movants,*<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY,<br><br>*Respondent.* | Case No. 1:26-mc-00019 (AJT/IDD) |

**GOVERNMENT'S BRIEF IN OPPOSITION TO MOVANT STATES' MOTION TO QUASH**


BRETT A. SHUMATE
Assistant Attorney General
Civil Division

BENJAMIN T. HAYES
Senior Counsel to the Assistant
Attorney General
Civil Division

NOAH T. KATZEN
Assistant Branch Director

EITAN R. SIRKOVICH
(D.C. Bar No. 90030102)
MICHAEL BRUNS
(D.C. Bar No. 1613394)
RYAN M. UNDERWOOD
(D.C. Bar No. 1656505)
Trial Attorneys
Civil Division, Federal Programs
Branch
U.S. Department of Justice
1100 L Street, N.W.
Washington, DC 20005
Tel. (202) 353-5525
Eitan.r.sirkovich@usdoj.gov

TODD BLANCHE
United States Attorney General

THEOPHANI K. STAMOS
First Assistant United States Attorney

MATTHEW J. MEZGER
Assistant United States Attorney
Office of the United States Attorney
2100 Jamieson Ave.
Alexandria, VA 22314
Tel: (703) 299-3741
Fax: (703) 299-3983
Email: Matthew.Mezger@usdoj.gov

# TABLE OF CONTENTS

INTRODUCTION .... 1

BACKGROUND .... 2

ARGUMENT .... 3

I. The Court Lacks Jurisdiction. .... 3

II. The Subpoena Was Lawful. .... 6

III. The Subpoena Does Not Violate the Driver's Privacy Protection Act. .... 11

IV. The Subpoena Does Not Violate the Privacy Act. .... 12

CONCLUSION .... 13

# INTRODUCTION

Movants, a coalition of States and the District of Columbia, ask the Court to quash an administrative subpoena the U.S. Department of Homeland Security ("DHS") issued to the American Association of Motor Vehicle Administrators ("AAMVA"). AAMVA maintains the Commercial Driver's License Information System ("CDLIS") under contract with the Department of Transportation, which contains records regarding the identification and qualifications of commercial vehicle operators. DHS issued that subpoena under its longstanding statutory authority to investigate potential violations of the immigration laws by commercial driver's license schools in the wake of a series of fatal crashes across the country by illegal aliens. That subpoena is valid and the Court should deny the motion.

Movants have no business seeking relief from this court through a motion to quash proceedings. Under longstanding precedent, courts may not entertain pre-enforcement challenges to administrative subpoenas—and DHS has not moved to enforce the subpoena. Indeed, as of this filing, the subpoena's return date had not yet passed. If DHS were to move to enforce the subpoena, then Movants could attempt to quash the subpoena then; until then, they have no recourse to federal court.

In any event, Movants have not identified any basis for quashing the DHS subpoena. The subpoena is plainly authorized by statute and seeks information clearly relevant to DHS's statutory authorities. Movants object that the subpoena is insufficiently specific and tailored—as if administrative subpoenas are valid only if they can satisfy the demands of strict scrutiny. The opposite is true: An agency can subpoena information to satisfy "official curiosity" or "investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." *United States v. Morton Salt Co.*, 338 U.S. 632, 642-43, 652 (1950). The DHS subpoena

fits well within the bounds of agency subpoena authority, and the Court should therefore deny the motion to quash.[1]

## BACKGROUND

The Immigration and Nationality Act ("INA"), as amended, authorizes DHS "to require by subpoena the attendance and testimony of witnesses before immigration officers and the production of books, papers, and documents relating to the privilege of any person to enter, reenter, reside in, or pass through the United States or concerning any matter which is material and relevant to the enforcement of this chapter and the administration of the Service . . . ." 8 U.S.C. § 1225(d)(4)(A); *see also id.* § 1103(a) (transferring powers from Attorney General to the Secretary of Homeland Security). This subpoena power "encompasses the full range of subjects covered by" the INA. *United States v. Minker*, 350 U.S. 179, 185-86 (1956).

Section 1225 further provides that DHS "may invoke the aid of any court of the United States" to enforce the subpoena. 8 U.S.C. § 1225(d)(4)(A). Specifically, "[a]ny United States district court within the jurisdiction of which investigations or inquiries are being conducted by an immigration officer may, in the event of neglect or refusal to respond to a subpoena issued" under that authority "issue an order requiring such persons to . . . produce books, papers, and documents if demanded." *Id.* § 1225(d)(4)(B). But the statute does not authorize any other person to invoke the aid of the court in relation to the subpoena.

On August 11, 2026, DHS issued an administrative subpoena to the AAMVA pursuant to its authority under § 1225(d). AAMVA is charged by the Department of Transportation with

[1] Movants also filed an Emergency Motion for Interim Stay Order Pending Decision on Motion to Quash. ECF Nos 4, 5. Although Court did not rule on that motion, it granted a "administrative stay" effectively providing the requested relief, and ordered DHS to respond to the Motion to Quash without calling for a response to the emergency motion for interim relief. Order at 1-2, ECF No. 19. To the extent the motion for interim relief remains live, the Court should deny it for all the reasons set forth in this response.

maintaining the Commercial Driver's License Information System ("CDLIS"), "a clearinghouse and depository of information about the licensing, identification, and disqualification of operators of commercial motor vehicles." 49 U.S.C. § 31309(a). The subpoena ordered AAMVA to produce "individual pointers found within [CDLIS] within the last 5 years[,]" to include registered commercial drivers' names, date of birth, State of record, license number, and Social Security Number. Ex. 1 at 6,[2] ECF No. 2 ("DHS Administrative Subpoena"). In a letter accompanying the subpoena, DHS explained that it seeks to compel AAMVA to produce this information for purposes of an investigation into "illegal practices in commercial driver's license (CDL) schools, identifying and addressing criminal fraud regarding the issuance of CDLs to illegal aliens, and conducting civil immigration enforcement." *Id.* at 3.

On August 13, 2026, the States moved this Court to quash the subpoena and stay enforcement pending resolution of the motion to quash. The next day, the Court issued an "administrative stay" and directed DHS to (1) "not receive any subpoena documents from the AAMVA pursuant to the Subpoena until further notice," (2) "immediately inform AAMVA that AAMVA should not produce the subpoenaed documents until further notice," and (3) if documents are produced, "immediately return such documents and not inspect any such documents until the Court rules on the" motion to quash. Order at 1-2.

## ARGUMENT

### I. The Court Lacks Jurisdiction.

No authority permits this pre-enforcement motion to quash a § 1225 administrative subpoena. Section 1225(d) specifies the sole mechanism by which the validity of that subpoena may come before a court: DHS "may invoke the aid of any court of the United States" *in enforcing*

[2] All pincites for this document refer to the ECF header page numbers.

the subpoena. 8 U.S.C. § 1225(d)(4)(A). If it does so, then the validity of the subpoena may be contested. But no provision of § 1225 permits a pre-enforcement motion to *quash* the subpoena. Nor does any other statute or rule.

"One of the most firmly established principles of administrative law is that courts cannot entertain pre-enforcement challenges to administrative subpoenas." *Lopes v. Resol. Tr. Corp.*, 155 F.R.D. 14, 15 (D.R.I. 1994) (citing *Fleet/Norstar Fin. Grp., Inc. v. SEC*, 769 F. Supp. 19, 20 (D. Me. 1991) (collecting cases)); *see* 13B Wright & Miller's Federal Practice & Procedure § 3532.6 (3d ed.). Applying that principle, courts have recognized that a challenge to a § 1225 subpoena is "not ripe" before the government seeks enforcement. *In re Ramirez*, 905 F.2d 97, 100 (5th Cir. 1990); *see also Bell Atl. Cash Balance Plan v. U.S. EEOC*, 976 F. Supp. 376, 381 n.10 (E.D. Va. 1997) ("It is well established that before an agency resorts to judicial enforcement of its own administrative subpoena, an anticipatory action by a party challenging the validity of the subpoena is not ripe; the subpoenaed party is not harmed by the absence of judicial review in this context since it has an adequate opportunity to object if, and when, the agency files an action to enforce its subpoena."), *aff'd*, 182 F.3d 906 (4th Cir. 1999).

Movants speculate that AAMVA will comply with the subpoena and thus deprive Movants of their ability to contest it. Br. in Supp. of Movant States' Mot. to Quash Subpoena at 11, ECF No. 3 ("Quash Mot."). That concern cannot be squared with Movants representations that they understood AAMVA to have represented that "it would not produce the requested records to either FMCSA or DHS by August 17." *See* Pl. States' Br. in Supp. of Mot. for TRO at 10, *Illinois v. U.S. Dep't of Transp.*, No. 1:26-cv-02547 (E.D. Va. Aug. 13, 2026), ECF No. 3. But even assuming that speculation could justify a properly commenced pre-enforcement *civil action* through the filing of a complaint, *see* Fed. R. Civ. P. 2, 3, there is no authority for this special proceeding. The

cases Movants cite as precedent for this proceeding, Quash Mot. at 11,[3] all concern administrative subpoenas issued under 18 U.S.C. § 3486, which (unlike § 1225(d)) expressly authorizes pre-enforcement "petition[s]" to quash, *see* 18 U.S.C. § 3486(a)(5). The availability of a pre-enforcement special proceeding under § 3486 shows only that Congress knows how to authorize such a proceeding when it wishes to. Here, it did not.

Lacking statutory authority, Movants rely on Federal Rule of Civil Procedure 45(d)(3)(A), which they say is applicable through Rule 81(a)(5). Quash Mot. at 9. But neither Rule authorizes a pre-enforcement motion to quash an administrative subpoena. Rule 81(a)(5) states only that the Federal Rules of Civil Procedure (including Rule 45) "apply to *proceedings to compel testimony or the production of documents* through a[n] [administrative] subpoena." Fed. R. Civ. P. 81(a)(5) (emphasis added). DHS has not initiated a proceeding asking this Court "to compel . . . the production of documents," *id.*, under the § 1225 subpoena. A subpoena is not a "proceeding." And if DHS *does* initiate a proceeding through an action to enforce the subpoena, Rule 45 will apply to *that* proceeding. At present, the only proceedings that exists is the one *Movants* initiated, and that proceeding is not one "to compel testimony or the production of documents." Thus, Rules 81 and 45 have no applicability here, and certainly do not provide an authority for Movants' chosen method of proceeding.

The Court should go no further. Unless and until the federal government enlists the Court's aid to compel enforcement, the Court has no authority to issue the relief requested.

---

[3] *In re Admin. Subpoenas to Child.'s Hosps.*, No. 8:26-CV-01834-JRR, 2026 WL 1660098, at *15 (D. Md. June 9, 2026); *In re Admin. Subpoena 25-1431-032 to R.I. Hosp.*, --- F. Supp. 3d ----, 2026 WL 1392565, at *10 (D.R.I. May 14, 2026), *appeal filed,* No. 26-1568 (1st Cir. May 18, 2026); Order, *In re Summons Issued to Meta Platforms, Inc.*, No. 3:25-MC-80325-PHK, ECF No. 3 (N.D. Cal. Oct. 17, 2025).

## II. The Subpoena Was Lawful.

If the Court reaches the merits (it should not), it should decline to quash this lawful and properly issued subpoena. The Fourth Circuit applies the "*Morton Salt*" factors when deciding whether to "generally enforce administrative subpoenas where, as an initial matter, the administrative agency shows that (1) it is authorized to make such investigation; (2) it has complied with statutory requirements of due process; and (3) the materials requested are relevant." *EEOC v. Am. & Efird Mills, Inc.*, 964 F.2d 300, 302-03 (4th Cir. 1992) (collecting cases). The subpoena here satisfies all requirements.

As described above, 8 U.S.C. § 1225(d)(4)(A) allows DHS to subpoena documents "relating to the privilege of any person to enter, reenter, reside in, or pass through the United States or concerning any matter which is material and relevant to the enforcement of [the INA] and the administration of [DHS]." In other words, it may seek documents relating to "the full range of subjects covered by the [INA]." *Minker*, 350 U.S. at 185. The DHS investigation for which the subpoena was issued here has a legitimate purpose: to investigate "illegal practices in commercial driver's license (CDL) schools, identifying and addressing criminal fraud regarding the issuance of CDLs to illegal aliens, and conducting civil immigration enforcement." DHS Administrative Subpoena at 3. Investigating driving schools for issuing CDL's to illegal aliens, and the accompanying civil immigration enforcement as a result of that investigation, falls within the scope of the INA. For example, based on the level of knowledge or culpability, the CDL driving schools could be liable for alien harboring, *i.e.*, encouraging the alien to reside in the United States, which falls under 8 U.S.C. § 1324(a)(1)(A)(iv). The information is also relevant to investigating improper entry, *see* 8 U.S.C. § 1325, improper reentry, *id.* § 1326, and whether an alien is deportable, *id.* § 1227, or inadmissible, *id.* § 1182.

Movants allege that the subpoena falls outside Section 1225(d)(4)(A) for four reasons: (a) the subpoena is a *John Doe* subpoena, *i.e.*, one that is not tied to a specific target; (b) the subpoena's stated purpose falls outside of the statute and are not related to DHS's demand, (c) the subpoena was issued for an improper purpose, and (d) the subpoena is procedurally invalid. All four arguments fail.

*First*, relying on an out-of-circuit opinion, Movants state that DHS improperly issued subpoenas that request "information concern[ing] individuals whose identity is currently unknown to [the agency]." Quash Mot. at 12 (quoting *Peters v. United States*, 853 F.2d 692, 698–99 & 695 n.3 (9th Cir. 1988)). First, *Peters* does not control here and was wrongly decided. In *Peters*, the court acknowledged "INS's concededly broad subpoena and investigatory authority" under § 1225 but was "reluctant to assume the existence of the power to issue third-party subpoenas directed at unidentified targets where Congress ha[d] not provided for them specifically, nor provided procedural safeguards." 853 F.2d at 696 (interpreting an earlier version of the INA's subpoena authority, 8 U.S.C. § 1225(a) (1952), which is now found, essentially unchanged, at § 1225(d)(4)). The court concluded that "it was improper to *expand* the INS' subpoena power by analogizing from IRS summons law without a statutory basis other than INS subpoena power being broad." *Id.* at 699 (emphasis added).

But *Peters* did not decline to *expand* the subpoena power, it incorrectly restricted it. Courts may not "engraft" judicial limitations (including a prohibition on "fishing expeditions") on administrative investigations. *Morton Salt*, 338 U.S. at 641. An agency can subpoena information to satisfy "official curiosity" or "investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." *Id.* at 642-43, 652. In short, agencies *can* "go fishing," provided that their actions comply with the *Morton Salt* requirements and are not an abuse

of the judicial process. *See id.* at 642; *United States v. Powell*, 379 U.S. 48, 57-58 (1964). The subpoena here satisfies the *Morton Salt* requirements, and courts may not impose additional restrictions on an agency's statutory subpoena power. Accordingly, Movants' reliance on *Peters* is misplaced.

*Peters* is especially unavailing to Movants because its analogy to IRS summons law is predicated on a misreading of *United States v. Bisceglia*, 420 U.S. 141 (1975). According to *Peters*, *Bisceglia* allowed the enforcement of an IRS John Doe subpoena based on the unique features of the tax code. *Peters*, 853 F.2d at 696. In truth, *Bisceglia* relied on statutory language not meaningfully different from the language in § 1225(d)(4). The provision at issue in *Bisceglia* authorized "the summoning of 'any . . . person' for the taking of testimony and examination of books which may be relevant for 'ascertaining the correctness of any return, . . . determining the liability of any person . . . or collecting any such liability . . . .'" *Bisceglia*, 420 U.S. at 149 (quoting 26 U.S.C. § 7602). The Court found that language "inconsistent with an interpretation that would limit the issuance of summonses to investigations which have already focused upon a particular return, a particular named person, or a particular potential tax liability." *Id.* Similarly, DHS may subpoena documents "relating to the privilege of *any* person to enter, reenter, reside in, or pass through the United States or concerning *any* matter which is material and relevant to the enforcement of this chapter and the administration of the Service . . . ." 8 U.S.C. § 1225(d)(4)(A) (emphases added).

*Second*, Movants argue that the purposes of the subpoena fall outside DHS's statutory authority and the information requested is not connected to the purposes of the subpoena. Quash Mot. at 14-15. Movants are legally and factually mistaken. A § 1225(d) subpoena need only be "relevant to *some* (any) inquiry that [DHS] is authorized to undertake." *See United States v.*

*Oncology Servs. Corp.*, 60 F.3d 1015, 1020 (3d Cir. 1995) (quoting *Dole v. Trinity Indus., Inc.*, 904 F.2d 867, 872 (3d Cir. 1990)) (emphasis in original). In other words, the Court "must enforce the subpoena unless the information [demanded] is 'plainly incompetent or irrelevant to *any* lawful purpose of [DHS].'" *See id.* (quoting *Dole* 904 F.2d at 872) (emphasis in original). For the reasons stated, the information is related to lawful purposes of DHS. *See supra*, p. 6.

Movants argue that, even if DHS could investigate driving schools, it must investigate specific driving schools for specific activity. Quash Mot. at 14. As stated above, searching for social security information will inform whether removable aliens were issued CDL's by these driving schools and whether these aliens were harbored or induced to immigrate by the CDLs. *Supra*, p. 6. And this is plainly connected to DHS's authority to investigate aliens for removal actions and U.S. entities for harboring. That the subpoena does not mention a specific school or activity does not undermine its validity. As the Supreme Court held in *Morton Salt*, "[w]hen investigative and accusatory duties are delegated by statute to an administrative body," that body "can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." 338 U.S. at 642-43.

Movants then rely on *In re Sealed Case (Administrative Subpoena*), 42 F.3d 1412, 1415–18 (D.C. Cir. 1994), to argue that DHS's invocation of investigating criminal fraud and immigration enforcement are insufficient to support the scope of the subpoena, and compels a conclusion that the subpoena is a fishing expedition. Quash Mot. at 14-15. But *In re Sealed Case* decided that a subpoena issued for the purpose to discover "other wrongdoing, as yet unknown" was unsupported by statutory authority, not that it was an illegal fishing expedition. *In re Sealed Case,* 42 F.3d at 1418. Here, in contrast, DHS has specifically identified the wrongdoing it seeks to investigate that falls under its statutory authority, and, as also explained, agencies are *permitted*

to "fish," as long as they comply with *Morton Salt*. *Supra*, pp. 7-8.

*Third*, Movants allege that the subpoena was issued in bad faith. Quash Mot. at 16-17. But when a subpoena satisfies *Morton Salt*, the respondent's burden of demonstrating an abuse of process "is a heavy one." *See United States v. LaSalle Nat'l Bank*, 437 U.S. 298, 316 (1978). Movants, however, state a different and incorrect burden: that a movant need only "point to specific facts or circumstances plausibly raising an inference of bad faith." *United States v. Clarke*, 573 U.S. 248, 254 (2014). That standard governs whether a taxpayer is entitled to *examine* an IRS agent in challenging a subpoena. *Id.* It is not a basis to quash an administrative subpoena, let alone one issued by DHS in connection with its authority to enforce the INA.

Movants thus fail to shoulder their "heavy burden" of showing bad faith. It is no secret that United States agencies cooperate and share information. That DHS is interested in the same information as FMCSA should come as no surprise, as this information is relevant to both DHS's interest in immigration enforcement and FMCSA's interest in commercial vehicle safety. If DHS could obtain the information from FMCSA, it would not need a subpoena. But without getting information from FMCSA, it was free to "investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." *Morton Salt*, 338 U.S. at 642-43; *see also id.* at 652 ("Even if one were to regard the [agency's] request for information in this case as caused by nothing more than official curiosity, nevertheless law-enforcing agencies have a legitimate right to satisfy themselves that corporate behavior [within the scope of their investigative authority] is consistent with the law and the public interest.").

*Fourth*, Movants allege the subpoena is procedurally invalid under 8 C.F.R. § 287.4(b) because the subpoena does not specify the title of the proceeding. Quash Mot. at 17. Movants are mistaken. Section 287.4(b) covers criminal and civil investigations (as here) or "proceedings,"

which would generally involve testimony or an appearance (Box A of the Subpoena), not production (Box B of the subpoena). *See* DHS Administrative Subpoena at 5. DHS is not seeking the appearance of a person as part of a titled "proceeding." Accordingly, the subpoena is properly formatted as seeking a Box B production, which does not refer back to the blank Box 2 on the subpoena.

**III. The Subpoena Does Not Violate the Driver's Privacy Protection Act.**

The DPPA does not prohibit the DHS from obtaining the information sought in the subpoena. The DPPA specifically allows disclosure "[f]or use by *any* government agency, including any court or law enforcement agency, in carrying out its functions, or any private person or entity acting on behalf of a Federal, State, or local agency in carrying out its functions." 18 U.S.C. § 2721(b)(1) (emphasis added). This exception applies regardless of whether the data is personal information or highly restricted personal information, which the DPPA affords greater protections. *Id*. § 2721(a)(2).

While the Supreme Court has cautioned that the DPPA exceptions must be construed carefully, the disclosures challenged here are of the kind Congress has "clear[ly] and explicit[ly]" permitted. *Maracich v. Spears*, 570 U.S. 48, 60, 64 (2013). DHS is plainly a "government agency," and (as explained above) the information it seeks will assist the agency "in carrying out its functions." 18 U.S.C. § 2721(b)(1). DHS's reliance upon § 2721(b)(1) employs a natural reading of the exception; it does not contort its language to "operate to the farthest reach of their linguistic possibilities" in "contraven[tion] [of] the statutory design." *Maracich*, 570 U.S. at 60.

The DPPA does not authorize or require a more exacting inquiry into how the agency intends to use each individual datapoint it obtains. *Cf.* Quash Mot. at 18. Even under the Seventh Circuit's approach that Movants' rely upon, "a number of permissible uses of the personal

information" is sufficient to satisfy the government-use exception. *Senne v. Vill. of Palatine*, 784 F.3d 444, 446 (7th Cir. 2015). That approach does not require that each individual piece of data be specifically paired with a specific use. To the contrary, "the personal information collected by [a government agency] was 'for use' in connection with the [agency's] duties, *whether or not each item of information . . . would ever be used*." *Id.* at 447 (emphasis added).

**IV. The Subpoena Does Not Violate the Privacy Act.**

Next, Movants contend that the subpoena violates three types of "core privacy protections in the Privacy Act." Quash Mot. at 19. Not so. The Privacy Act does not bar DHS from obtaining relevant records pursuant to lawful subpoena authority, and DHS's receipt and maintenance of the requested records would be consistent with the Privacy Act.

*First*, contrary to Movants' contentions, the subpoena does not violate "notice requirements for creating or modifying 'systems of records.'" *Id.*; *see* 5 U.S.C. § 552a(a)(5), (e)(4), (e)(11), (r). The records DHS has requested from AAMVA are covered by DHS's existing system of records, which covers "information related to external audits, inquiries, and investigations pertaining to suspected violations of laws regulating the movement of people and goods into and out of the United States," including "records pertaining to immigration status inquiries that do not constitute an official criminal investigation." Privacy Act of 1974; System of Records, 85 Fed. Reg. 74,362, 74,362 (Nov. 20, 2020). That Federal Register notice, moreover, notifies all operators of commercial motor vehicles that the records it contains includes Social Security Numbers and other personal information required for DHS's investigative activities. *Id.* at 74,364.

*Second*, the subpoena satisfies the Privacy Act's requirement that DHS "maintain in its records only such information about an individual as is relevant and necessary to accomplish a purpose of the agency required to be accomplished by statute or by executive order of the

President." 5 U.S.C. § 552a(e)(1). As explained above, the subpoena seeks information relevant and necessary to DHS's statutory law enforcement activities.

*Third*, the Privacy Act permits disclosure of covered records to another federal agency for a published routine use of the system. Here, DHS published a routine use:

> [A]ll or a portion of the records of information contained in this system may be disclosed outside DHS as a routine use pursuant to 5 U.S.C. [§] 552a(b)(3) as follows . . . To an appropriate federal, State, tribal, local, international, or foreign law enforcement agency or other appropriate authority charged with investigating or prosecuting a violation or enforcing or implementing a law, rule, regulation, or order, where a record, either on its face or in conjunction with other information, indicates a violation or potential violation of law, which includes criminal, civil, or regulatory violations and such disclosure is proper and consistent with the official duties of the person making the disclosure.

85 Fed. Reg. at 74,365. That routine use would be applicable to any sharing of information sought by this subpoena with the DOT.

## CONCLUSION

For the reasons stated above, the Court should deny Movants' motion to quash.

//

//

//

Dated: August 17, 2026

Respectfully submitted,

TODD BLANCHE
United States Attorney General

THEOPHANI K. STAMOS
First Assistant United States Attorney

/s/
MATTHEW J. MEZGER
Assistant United States Attorney
Office of the United States Attorney
2100 Jamieson Ave.
Alexandria, VA 22314
Tel: (703) 299-3741
Fax: (703) 299-3983
Email: Matthew.Mezger@usdoj.gov

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

BENJAMIN T. HAYES
Senior Counsel to the Assistant Attorney General
Civil Division

NOAH T. KATZEN
Assistant Branch Director

EITAN R. SIRKOVICH
(D.C. Bar No. 90030102)
MICHAEL BRUNS
(D.C. Bar No. 1613394)
RYAN M. UNDERWOOD
(D.C. Bar No. 1656505)
Trial Attorneys
Civil Division, Federal Programs Branch
U.S. Department of Justice
1100 L Street, N.W.
Washington, DC 20005
Tel. (202) 353-5525
Eitan.r.sirkovich@usdoj.gov

*Counsel for Respondent*